2/4/2025 8:31 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 96941994
By: Wanda Chambers
Filed: 2/4/2025 8:31 AM

**EXHIBIT A**

## CAUSE NO. _____

| | | |
|---|---|---|
| **SHEPHERD-HULDY DEVELOPMENT I, LLC,** | § § § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § § | |
| v. | § § | **HARRIS COUNTY, TEXAS** |
| **GREENBERG FINANCE, LLC,** | § § § | |
| *Defendant.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUCTION, AND PERMANENT INJUNCTION

**TO THE HONORABLE COURT,**

Plaintiff SHEPHERD-HULDY DEVELOPMENT I, LLC ("SHD" or "Plaintiff") files this its *Verified Original Petition and Emergency Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction* against Greenberg Finance, LLC and Greenberg & Company ("Greenberg" or "Defendants"), and in support thereof would respectfully show the Court as follows:

### I.      DISCOVERY PLAN

1. Discovery should be conducted pursuant to level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

### II.      RELIEF SOUGHT

2. Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiff is presently seeking monetary relief over $1,000,000.00. The damages sought are within the jurisdictional limits of the Court.

### III.      PARTIES

1

3.  Plaintiff Shepherd-Huldy Development I, LLC is a limited liability company doing business in Texas and is the owner of the property located at Shepherd Drive and Huldy Street in Houston, Texas, as further described in Exhibit A.

4.  Defendant Greenberg Finance, LLC is a limited liability company which can be served through its registered agent David Greenberg located at 5959 Richmond Avenue, Suite 440, Houston, Texas 77057.

## IV.   JURISDICTION AND VENUE

5.  The Court has jurisdiction over the parties and claims which are the subject of this suit.

6.  Venue is proper in Harris County, Texas pursuant to Texas Civil Practice and Remedies Code § 15.0115 because the majority of the real estate which forms the basis of the claims asserted by Plaintiff is located in Harris County, Texas.

## V.   STATEMENT OF FACTS

7.  SHD owns several parcels of property located at Huldy Street and Shepherd Drive in Houston, Texas. The parcel relevant to the dispute at issue is a 6,281 sq./ft tract of land located at 2419 S. Shepherd Dr., Houston, Texas 77019 (the "Property").[1] SHD originally acquired the Property in May 2019 from Eileen Galoostian. The transaction was seller financed. The original principal amount of the promissory note was $805,867.34 with a 5% rate of interest (the "Note").

8.  In June 2021, the Note was sold to Greenberg. On information and belief, Greenberg made false representations about the borrower's principal, Ali Choudhri, which induced Ms. Galoostian to sell the Note. For example, Greenberg misrepresented certain facts about Ali

---

[1] Exhibit A.

Choudhri's financial affairs. Because of these representations, Ms. Galoostian sold the Note to Greenberg at a considerable discount.

9.  On June 18, 2021, Greenberg sent notice to SHD that it was in default under the Note and that Greenberg was accelerating payment due under the Note immediately.[2] In its notice, Greenburg also informed SHD of its intent to foreclose on the property. A non-judicial foreclosure sale was posted for August 3, 2021.

10. Greenberg informed Mr. Choudhri, however, that it would pass on the foreclosure sale if he immediately paid $182,000.00 under the Note. Mr. Choudhri responded by wiring $182,000.00 to Greenberg as partial payment under the Note. Pursuant to such payment, a Reinstatement and Modification Agreement was entered between SHD and Greenberg.[3] The agreement modified the Note executed between SHD and Eileen Galoostian, the original lender. Under the note as modified, the new principal balance was $736,902.00 with a rate of interest calculated from the effective date at 10% per year.

11. In February 2022, in the face of yet another threat a foreclosure, a Second Modification and Extension Agreement was entered between the parties.[4] The agreement amends the prior modification and provides that the outstanding unpaid principal balance of the note is $694,713.42 with interest calculated from the effective date at 10% per year. Essentially, the agreement provides that, unless SHD agrees to the new terms, Greenberg will foreclose on the Property. The Third, Fourth and Fifth Modification Agreements contain substantially the same terms, except that interest under those agreement is calculated from the effective date at

---

[2] Exhibit B.
[3] Exhibit C.
[4] Exhibit D.

15% per year.[5] All three agreements provided that Greenberg would foreclose on the Property unless SHD agreed to the new terms.

12. *In lieu* of foreclosure, Greenberg offered to list the Property for SHD. On January 30, 2023, SHD and Greenberg entered into a broker arrangement whereby Greenberg would list the Property for sale on behalf of SHD.[6] Pursuant to the terms of the agreement, upon consummation of a sale, Greenberg would be paid in full under the Note.

13.  Notwithstanding the listing agreement, and fiduciary relationship created thereby, Greenberg has posted the Property for a foreclosure sale scheduled for February 4, 2025.

14. SHD has a buyer for the property, ready, willing, and able to proceed with the transaction immediately, provided Greenberg cooperates.[7] Indeed, Greenberg has previously agreed to provide such cooperation.[8] However, Greenberg is now attempting to back out of the transaction and proceed with a foreclosure sale of the Property.[9]

15. On February 3, 2025, Greenberg agreed to pass on the foreclosure sale if SHD provided payment under the Note in the amount of $150,000.00.[10] On February 3, 2025, SHD tendered the requisite payment to Greenberg allegedly halting the foreclosure sale.[11] Shockingly, immediately after receiving the payment, Greenberg repudiated the agreement.[12]

16. Greenberg does not intend to honor its agreement to pass on the foreclosure sale scheduled for February 4, 2025. Thus, this Court's intervention is necessary to prevent an injustice from occurring.

---

[5] Exhibit E, dated January 2023; Exhibit F, dated August 2023; Exhibit G, dated February 2024.
[6] Exhibit H.
[7] Exhibit I.
[8] Exhibit J, pg. 2; *but see* Exhibit K.
[9] Exhibit L.
[10] Exhibit M1 and M2.
[11] Exhibit N. David Greenberg's wife accepted payment and issued the attached receipt.
[12] *See* Exhibit O.

## VI.   CAUSES OF ACTION

### Breach of Contract

17. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

18. To establish a valid breach of contract claim, the Plaintiff must prove: (1) that there is a valid contract, (2) the Plaintiff performed or tendered performance according to the terms of the contract, (3) the Defendant breached the contract, and (4) the Plaintiff sustained damages as a result of the breach. *Valero Marketing and Supply v. Kalama International*, 51 S.W.3d 345, 351 (Tex. App.-Houston [1st Dist.] 2001, no pet.).

19. A valid contract is formed by an offer, an acceptance, a meeting of the minds, each party's consent to the terms, and in the case of a written contract, execution and delivery of the contract with the intent that it be mutual and binding. *Baroid Equipment, Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 17 (Tex. App.-Houston [1st Dist.] 2005, pet. denied).

20. There is no dispute as to the existence of a valid contract between the parties.

21. A valid, signed contract existed between the parties whereby Greenberg was to list the Property for sale on behalf of SHD.

22. Pursuant to the listing agreement, Greenberg was supposed to market the Property for sale to potential buyers.

23. Upon the finding of a potential buyer, the parties agreed that Greenberg would be paid in full under the Note.

24. A buyer for the property was found and, upon consummation of the sale, SHD was ready to tender the amount owed to Greenberg.

25. Greenberg backed out of the transaction and has since moved to foreclose on the property in violation of the agreement.

26. SHD will be irreparably damaged as a result of this breach.

**Promissory Estoppel**

27. Defendant promised Plaintiff that it would pass on the foreclosure sale provided Plaintiff tendered payment under the Note in the amount of $150,000.00.

28. Plaintiff relied on Defendant's promise by paying the $150,000.00 as agreed. Because of the nature of the promise, Plaintiff' reliance was both reasonable and substantial given the parties' prior course of dealing.

29. Defendant knew, or reasonably should have known, that Plaintiff would rely on Defendant's promise to pass on the foreclosure sale.

30. Injustice to Plaintiff can be avoided only if Defendant's promise is enforced as Plaintiff has already tendered, and Defendant has already accepted, the $150,000.00.

31. Plaintiff's reliance on Defendant's promise resulted in injury to Plaintiff, which caused Plaintiff to unjustifiably expend $150,000.00.

**Breach of Fiduciary Duty**

32. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

33. Under Texas law, a listing agent has a fiduciary duty to act in the best interests of their client. This means that the agent must, among other things, disclose all relevant information and negotiate the best possible deal for the client.

34. Defendant Greenberg owed Plaintiff a fiduciary duty as Plaintiff's listing agent.

35. Defendant breached its fiduciary duty by backing out of the transaction and seeking to acquire the Property on its own terms pursuant to a foreclosure sale.

36. As a direct and proximate result of the Defendant's actions, Plaintiff suffered and incurred damages.

**Wrongful Foreclosure**

37. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

38. Pursuant to Section 51.002(b) of the *Texas Property Code*, the foreclosure notice "must be given at least 21 days before the date of the sale", the notice must be in writing and must be served "by certified mail on each debtor."

39. Defendants failed to comply with the *Texas Property Code*.

40. Defendants never sent a letter by certified mail to Plaintiff notifying it of the foreclosure sale.

41. Any notice received by Plaintiff was transmitted through email, which is not proper notice under the *Texas Property Code*.

## VII.   APPLICATION FOR TEMPORARY RESTRAINING ORDER

42. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

43. Plaintiff has a likelihood of success on the merits of its claims for breach of contract, promissory estoppel, breach of fiduciary duty, and wrongful foreclosure.

44. Plaintiff has and will continue to be damaged and injured by Defendant's conduct in as much as it has had to incur attorney's fees and costs to defend against the wrongful foreclosure of its Property and will lose any equity it has in the Property if the Defendant is allowed to proceed with the foreclosure sale.

45. Plaintiff requires a Temporary Restraining Order, or any other injunctive relief the Court deems necessary, requiring Defendant, or any person or entity acting in concert with them, including but not limited to its attorneys, agents, servants, servicers, trustees, employees, successors, heirs and assigns, to desist and refrain from:

   1)  Proceeding with the scheduled foreclosure sale of Plaintiff's Property;

2) Entering and taking possession of Plaintiff's Property or otherwise interfering with Plaintiff's right to the quiet enjoyment and use of the Property.

3) Proceeding with or attempting to evict anyone from the Property.

4) Attempting to purchase, transfer, assign or collect on the mortgage; and

5) Charging Plaintiff's account for attorney's fees in connection with this action.

46. Plaintiff's application is authorized by *Tex. Civ. Prac. & Rem. Code* § 65.011 because the Plaintiff has alleged a cause of action against the Defendants, and as indicated in this position, the Plaintiff has shown a probable right of recovery and likelihood of success on the merits, and the Plaintiff will suffer imminent, irreparable harm without Court intervention as the foreclosure sale involves unique real estate for which there is no adequate remedy at law.

47. Plaintiff has a probable right to relief because Defendant failed to meet one or more of the conditions precedent to foreclose, breached the listing agreement between the parties, made a representation to Plaintiff on which it justifiably relied, and violated the fiduciary duty owed to Plaintiff. As a direct and proximate result of the Defendant's wrongful actions as alleged, the Plaintiff has suffered and will continue to suffer imminent injury that will be irreparable and for which no adequate remedy at law exists without the protections of a temporary restraining order and injunctive relief. Plaintiff is willing to post a bond in a nominal amount to facilitate the injunctive relief requested. Plaintiff already paid Defendant $150,000.00 to pass on the foreclosure sale, therefore a nominal bond would be appropriate.

## VIII.   REQUEST FOR TEMPORARY INJUNCTIVE RELIEF

48. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

49. Plaintiff further requests that the Court set this matter for hearing on a Temporary Injunction in fourteen days and that after such hearing, the Court issue a Temporary Injunction reflecting the same or similar relief until the time of trial.

## IX.      REQUEST FOR PERMANENT INJUNCTIVE RELIEF

50. Plaintiff hereby incorporates all preceding paragraphs as if fully set forth herein.

51. Plaintiff further requests that the Court set its request for permanent injunctive relief for a full trial on the merits and, after the trial, issue a permanent injunction against Defendants in the same manner as requested in Plaintiff's Application for Temporary Restraining Order.

## X.      PRAYER

**WHEREFORE, PREMISES CONSIDERED**, for the reasons stated herein, Shepherd-Huldy Development I, LLC respectfully requests that Defendants, Greenberg Finance, LLC and Greenberg & Company, be cited to appear and answer herein and upon final hearing hereof, Plaintiff be awarded its damages resulting from the causes of action alleged herein, costs and fees, including reasonable and necessary attorneys' fees, along with any other and further relief to which Plaintiff may be justly entitled, including:

(1) Temporary and permanent injunctive relief as requested herein;

Respectfully submitted,

*/s/ Justin Rayome*
Justin Rayome
State Bar No. 24130709
1001 West Loop South
Houston, Texas 77027
justinrayome3@gmail.com
(214) 934-9345
**Attorney for Shepherd- Huldy, LLC**

2/4/2025 8:31:20 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96941994
By: CHAMBERS, WANDA R
Filed: 2/4/2025 8:31:20 AM

CAUSE NO. _____

| | | |
|---|---|---|
| **SHEPHERD-HULDY DEVELOPMENT I, LLC,** | § § § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § § | |
| **v.** | § § | **HARRIS COUNTY, TEXAS** |
| **GREENBERG FINANCE, LLC and GREENBERG & COMPANIES** | § § § § | |
| *Defendants.* | § § § | **_____JUDICIAL DISTRICT** |

### ORDER GRANTING PLAINTIFF'S
### EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER

**CAME ON FOR CONSIDERATION** Plaintiff's Emergency Application for Temporary Restraining Order and the court being apprised of the premises based upon the pleadings, exhibits, records, and documents filed by counsel and presented to the court, as well as the arguments of counsel at the hearing, the Court finds that unless Defendant is enjoined from foreclosing on Plaintiff's Property, consisting of approximately 6,281 sq/ft. and further described on Exhibit A, at the February 2025 foreclosure sale, Plaintiff will suffer immediate and irreparable harm and lose access to its property and its interest in the Property, and there is no other adequate remedy at law. The Court finds that there is a dispute between the parties and a possible violation of multiple contracts and certain obligations. Plaintiff was unable to resolve this matter prior to the hearing on Plaintiff's Application for Temporary Restraining Order. The Court is of the opinion that the Application should be **GRANTED**. Therefore, it is:

**ORDERED** that **Greenberg Finance, LLC** its agents, assigns or successors in interest shall not proceed with a February 2025 foreclosure sale concerning the property located at 2419 S. Shepherd Dr., Houston, Texas 77019 consisting of approximately 6,281 sq/ft. and further described on Exhibit A, and shall not post the Property consisting of approximately 6,281 sq/ft. and further described on Exhibit A, for any subsequent foreclosure sale without further order of this court. It is further

**ORDERED** that **Greenberg Finance, LLC** its agents, assigns or successors in interest, shall not take any steps to cause the building located at 2419 S. Shepherd Dr., Houston, Texas 77019, consisting of approximately 6,281 sq/ft. and further described on Exhibit A, to be sold at the February 2025 foreclosure sale, or any subsequent foreclosure sale, including but not limited to, posting the Property for a future foreclosure sale, having a receiver, or any other third party, appointed that would adversely affect Plaintiff's interest in, or access to, the Property, and shall not in any way interfere, or cause an interference, with Plaintiff's quiet use and enjoyment of the Property, consisting of approximately 6,281 sq/ft. and further described on Exhibit A, without further order of this court. It is further

**ORDERED** that any foreclosure sale conducted, by any person or entity, concerning the building located at 2419 S. Shepherd Dr., Houston, Texas 77019, or the Property consisting of approximately 6,281 sq/ft. and further described on Exhibit A, after entry of this Order shall be immediately rescinded. It is further

**ORDERED** that the parties are ordered to attend mediation prior to the Temporary Injunction Hearing.

**IT IS FURTHER ORDERED** that bond shall be set in the amount of $_____ and the Temporary Injunction hearing is set for the following date: _____ at the following time: _____.


Signed: _____

_____
JUDGE PRESIDING

2/4/2025 8:31:20 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96941994
By: CHAMBERS, WANDA R
Filed: 2/4/2025 8:31:20 AM

STATE OF TEXAS                          §
HARRIS COUNTY                           §

### UNSWORN DECLARATION OF ALI CHOUDHRI

I hereby testify as follows and sign this statement under penalty of perjury and pursuant to Tex. Civ. Prac. & Rem. Code § 132.001.

1. "My name is ALI CHOUDHRI and my date of birth is 01/24/1980. My business address is 1001 West Loop South, Suite 700, Houston, Texas 77027. The facts stated in this declaration are within my personal knowledge and are true and correct.

2. I am the applicant in the foregoing application for an injunction against Greenberg Finance, L.L.C. I have read this entire Plaintiff's Verified Original Petition and Emergency Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction. The facts and circumstances contained in this Application are true and correct to the best of my knowledge and belief."

Executed in Harris County, Texas on February 3, 2025.

_____
ALI CHOUDHRI

EXHIBIT A

Exhibit "A"

All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight (48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, save and except the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

RP-2021-332073

Exhibit B

# TORMEY & ASSOCIATES, P.C.

952 Echo Lane, Suite 330
Houston, Texas 77024

OFFICE (713)827-7036 TELECOPIER (713)827-7483

June 18, 2021

**CERTIFIED MAIL #7015 1520 0002 7256 8137**
**RETURN RECEIPT REQUESTED**
**AND REGULAR MAIL**

Shepherd-Huldy Development I, LLC, a Texas
limited liability company
1001 West Loop South, Suite 700
Houston, Texas 77027

Re:   Notice of Default, Notice of Acceleration and Notice of Posting For Foreclosure

Dear Sirs:

Our client, Greenberg Finance, LLC, a Texas limited liability company (the **"Lender"**), is the present owner and holder of that certain $805,867.34 promissory note (the **"Note"**) dated May 14, 2019, executed by Shepherd-Huldy Development I, LLC, a Texas limited liability company payable to the order of GALOOSTIAN FAMILY LIVING TRUST (**"Original Lender"**).

The Note is secured by a Deed of Trust of even date therewith (the **"Deed of Trust"**) recorded under County Clerk's File No. RP-2019-207303 in the Official Public Records of Real Property of Harris County, Texas, covering the real property described as: ALL THAT CERTAIN TRACT OF LAND OUT OF THE NORTHWEST PORTION OF THE ORIGINAL TEN ACRE LOT FORTY-ONE (41) OF THE SUBDIVISION OF GREAT LOT FORTY-EIGHT (48) OF THE OBEDIENCE SMITH SURVEY IN THE CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SOUTH ONE-HALF OF A 100 BY 135 FOOT TRACT CONVEYED BY TWO DEEDS FROM SALLIE A. MORGAN AND WIFE, AND RECORDED IN VOLUME 533, PAGE 582 AND VOLUME 615, PAGE 136, OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED THERETO AND MADE A PART HEREOF FOR ALL PURPOSES, and the improvements thereon (the **"Property"**).

The Note and the Deed of Trust were assigned to Lender under Assignment filed for record in the Real Property Records of the HARRIS County, Texas, under Clerk's File No.   RP-2021-332073, a copy of which is enclosed. Your new Lender name and contact information is :

Greenberg Finance, LLC
5959 Richmond, Suite 440
Houston, Texas 77057
Phone:713-778-0900
Email: David@greenbergcompany.com

  The Note is in default because of your failure to make payments that were due and payable under the terms of the Note, including a portion of the payment due on June 1, 2020, all of the payment due on December 1, 2020 and all of the payment due on June 1, 2021. The Note is further in default because it authorized a taxing entity to transfer its tax lien on the Property to someone other that the note holder in violation of Section B.2(b) and E.23 of the Deed of Trust. Lender is paying the tax lien loans which you wrongfully obtained and the sums paid shall be added to the unpaid balance of the Note. You must provide Lender with evidence of insurance covering the improvements on the Property in an amount acceptable to Lender within five days of the date of this notice, or Lender may, at its option, acquire such insurance pursuant to the terms of the Deed of Trust.

  Lender hereby accelerates the entire unpaid balance of the Note which is immediately due and payable in full.

  On behalf of the Lender, we have posted the Property for non-judicial foreclosure. The Property will be sold at public sale to the highest bidder at 1:00 p.m. or not later than three hours after that time on Tuesday, August 3, 2021, at the following location: 11,681 square feet area of covered concrete, being a 13,979 square feet area of covered concrete under the Bayou City Event Center Pavilion, save and except 2,298 square fee concession and restroom area under said Pavilion, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court or as designated by the County Commissioners Court, in the area designated by the Harris County Commissioner's Court at the Harris County, Texas, courthouse. We have enclosed a copy of the posted Notice of Substitute Trustee's Sale which provides additional information.

  This letter does not waive any default not specifically listed above, or any rights, remedies or recourses available to the Lender. This letter is not an election of remedies resulting from the defaults listed above or any other defaults that may exist under the Note, the Deed of Trust or any other document executed in connection with or as security for the Note.

  If you have any questions concerning this matter, please contact the undersigned or Mr. David Greenberg (713-778-0900) at the Lender. Your immediate attention is expected.

Sincerely,

**TORMEY & ASSOCIATES, P.C.**

By: _Mark J. Tormey_____
    Mark J. Tormey

MJT/kr
Enclosure
cc:    Mr. David Greenberg
      Greenberg Finance, LLC, a Texas limited liability company
      5959 Richmond Suite 440
      Houston Texas 77057

RP-2021-332073
06/14/2021   ER   $26.00

ASSIGNMENT

THE STATE OF UTAH

COUNTY OF Summit

KNOW ALL MEN BY THESE PRESENTS:

THAT GALOOSTIAN FAMILY LIVING TRUST, a trust created under trust agreement dated March 3, 2004   (hereinafter called **"Assignor,"** whether one or more),for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations to Assignor in hand paid by GREENBERG FINANCE, LLC., a Texas limited liability company (hereinafter called **"Assignee,"** whether one or more), the receipt and sufficiency of which is hereby acknowledged, has GRANTED, TRANSFERRED and ASSIGNED, and does by these presents GRANT, TRANSFER and ASSIGN, unto said Assignee, without recourse on Assignor, the following:

Promissory Note dated May 14, 2019 in the amount of $805,867.34 executed by Shepherd-Huldy Development I, LLC and being payable to the order of  Assignor, (the "Note"); said Note being secured by a Deed of Trust of even date therewith for the benefit of Assignor, covering the real property described therein commonly known as 2419 S. Shepherd drive, Houston, Texas 77019 and being more particularly described on Exhibit "A" attached hereto and made a part hereof; and all rights, titles, interests, privileges, claims, demands and equities existing and to exist in connection with or as security for the payment of said Note and the indebtedness evidenced thereby, existing under the terms and provisions of the Note.

TO HAVE AND TO HOLD said Note, together and along with all rights, titles, interests, liens, security interests, privileges, claims, demands and equities now or hereafter held by Assignor in connection therewith or as security therefor unto Assignee, its successors and assigns forever.

This Assignment is made without recourse on Assignor.

/USERS/EILEENGALOOSTIAN/LIBRARY/CONTAINERS/COM.APPLE.MAIL/DATA/LIBRARY/MAIL DOWNLOADS/D43570C6-E3E6-4228-B014-563011109AE7/ASSIGNMENTOFNT&LIEN.DOCX

EXECUTED this _8th_ day of June, 2021.

**ASSIGNOR:**

GALOOSTIAN FAMILY LIVING TRUST, a trust
created under trust agreement dated March 3, 2004

By _____

Eileen Galoostian, Successor Trustee

This instrument was acknowledged before me on the _8th_ day of June, 2021, by Eileen
Galoostian, Successor Trustee of the GALOOSTIAN FAMILY LIVING TRUST, a trust created
under trust agreement dated March 3, 2004, for and on behalf of said trust.

_____
Notary Public in and for the State of Utah

MARK GROSE
NOTARY PUBLIC-STATE OF UTAH
COMMISSION EXP. 10/15/2022
COMMISSION NO. 702897

RETURN TO:
Greenberg Finance, LLC
C/O Tormey 7 Associates, P.C.
952 Echo Lane #330
Houston, Texas 77024

RP-2021-332073

Exhibit "A"

All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight (48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, save and except the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

RP-2021-332073

RP-2021-332073

# Pages 4

06/14/2021 03:17 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees  $26.00

RP-2021-332073

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

THE STATE OF TEXAS     §
                             §
COUNTY OF HARRIS     §

WHEREAS, on May 14, 2019, by instrument recorded under County Clerk's File No. RP-2019-207303 in the Official Public Records of Real Property of Harris County, Texas, SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company, executed a Deed of Trust (hereinafter called "**Security Instrument**") to Salima Umatiya, Trustee, to which reference is hereby made for all purposes, covering the hereinafter described property, which Security Instrument was executed for the purpose of securing the payment of a promissory Note (the "**Note**"), more particularly described in the Security Instrument which NOte originally payable to the order of GALOOSTIAN FAMILY LIVING TRUST ("**Original Lender**"); and

WHEREAS, the Note and the Security Instrument of Trust were assigned by Original Lender to GREENBERG FINANCE, LLC, a Texas limited liability company (hereinafter called "**Beneficiary**") under Assignment filed for record in the Real Property Records of the HARRIS County, Texas, under Clerk's File No. RP-2021-332073;and

WHEREAS, Beneficiary, as owner and holder of the Note secured by the Security Instrument and beneficiary thereunder, did on the 15th day of June, 2021, appoint the undersigned, Mark J. Tormey, as Substitute Trustee under the Security Instrument; and

WHEREAS, after default under the Note and pursuant to the specific provisions of the Security Instrument, Beneficiary has requested that the Security Instrument be enforced in accordance with the terms and provisions thereof;

NOW, THEREFORE, NOTICE IS GIVEN that I, the undersigned Substitute Trustee, will sell at public sale to the highest bidder or bidders for cash, at an 11,681 square feet area of covered concrete, being a 13,979 square feet area of covered concrete under the Bayou City Event Center Pavilion, save and except 2,298 square fee concession and restroom area under said Pavilion, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court or as designated by the County Commissioners Court, in the area designated by the Harris County Commissioner's Court at the Harris County, Texas, courthouse, or as further designated by the County Commissioners, at 1:00 p.m. or not later than three (3) hours after that time on Tuesday, August 3, 2021, the property described by the Security Instrument and more particularly described as follows:

ALL THAT CERTAIN TRACT OF LAND OUT OF THE NORTHWEST PORTION OF THE ORIGINAL TEN ACRE LOT FORTY-ONE (41) OF THE SUBDIVISION OF GREAT LOT FORTY-EIGHT (48) OF THE OBEDIENCE SMITH SURVEY IN THE

CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SOUTH ONE-HALF OF A 100 BY 135 FOOT TRACT CONVEYED BY TWO DEEDS FROM SALLIE A. MORGAN AND WIFE, AND RECORDED IN VOLUME 533, PAGE 582 AND VOLUME 615, PAGE 136, OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES, together with the interest of Beneficiary in the personal property located on, arising out of or connected directly or indirectly, with said real estate.

The sale will be made subject to all matters which are prior to the Security Instrument, which affect title thereto, and which are a superior interest in and to the above described property. The sale shall not cover any property that has been released from the lien of the Security Instrument.

Prior to the foreclosure sale, Beneficiary may appoint another person as Substitute Trustee to conduct the sale. Since the terms of the sale will be for cash, on the day of sale, those desiring to purchase the property will need to demonstrate their ability to pay cash.

The Security Instrument permits Beneficiary to postpone, withdraw, or reschedule the sale for another day. In such case, I need not appear at the date, time and place of the scheduled sale to announce the postponement, withdrawal or rescheduling. Notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Texas Property Code. Such reposting or refiling may be after the date originally scheduled for this sale.

WITNESS MY HAND this _____18th_____ day of June, 2021.

Mark J. Tormey
Substitute Trustee
952 Echo Lane, Suite 330
Houston, Texas   77024
Phone: 713-827-7036

Exhibit C

## REINSTATEMENT AND MODIFICATION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS     §
                               §
COUNTY OF HARRIS     §

      This REINSTATEMENT AND MODIFICATION AGREEMENT (**"Agreement"**) is executed effective the 2nd day of August, 2021, by and between **SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company** (**"Borrower"**), whose addess for notice hereunder is 1001 West Loop South, Suite 700, Houston, Texas 77027, and **GREENBERG FINANCE, LLC, a Texas Limited Liability Co.** (**"Lender"**), with address of 5959 Richmond Avenue, Suite 440, Houston, Texas 77057;

### W I T N E S S E T H:

      WHEREAS, GALOOSTIAN FAMILY LIVING TRUST (**"Original Lender"**) has loaned to Borrower, and Borrower has borrowed from Original Lender **$805,867.34** (the **"Loan"**), such Loan being evidenced, in part, by the following instruments:

      (a)      Promissory Note (the **"Note"**) dated May 14, 2019, executed by Borrower, payable to the order of Original Lender, in the original principal amount of $805,867.34, upon which, by agreement of Borrower and Lender after the payment on August 2, 2021 of $182,000.00, there remains unpaid a principal balance of $736,902.00, and upon which interest has been paid to the effective date of this Agreement, to the extent Lender's $42,188.58 check payable to TAXEASE was returned to Lender and never negotiated by TAXEASE, Lender will reduce the principal balance by this sum, including any and all interest thereon as well as any *per diem* associated with this sum.

      (b)      Deed of Trust (the **"Deed of Trust"**) of even date with the Note, executed by Borrower in favor of Salima Umatiya, Trustee, and Original Lender, as "Beneficiary," and being recorded under County Clerk's File No. RP-2019-207303 in the Real Property Records of Harris County, Texas, covering the property described as ALL THAT CERTAIN TRACT OF LAND OUT OF THE NORTHWEST PORTION OF THE ORIGINAL TEN ACRE LOT FORTY-ONE (41) OF THE SUBDIVISION OF GREAT LOT FORTY-EIGHT (48) OF THE OBEDIENCE

SMITH SURVEY IN THE CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SOUTH ONE-HALF OF A 100 BY 135 FOOT TRACT CONVEYED BY TWO DEEDS FROM SALLIE A. MORGAN AND WIFE, AND RECORDED IN VOLUME 533, PAGE 582 AND VOLUME 615, PAGE 136, OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES. (the "**Property**");

WHEREAS, the Note, the Deed of Trust and each and every other agreement, document and instrument executed or to be executed for the benefit of Lender in connection with the Loan (collectively, the "**Loan Documents**") are hereby incorporated by this reference for all purposes to the same extent as if set out herein verbatim;

WHEREAS, The Note and the Deed of Trust were assigned to Lender under Assignment filed for record in the Real Property Records of the HARRIS COUNTY, Texas, under Clerk's File No. RP-2021-332073; and

WHEREAS, Lender accelerated the unpaid balance of the Note via notice to Borrower dated June 18, 2021; and

WHEREAS, Borrower and Lender desire to reinstate the Note and desire to amend and modify the Loan Documents and to renew, extend and carry forward all liens and security interests securing the Note.

NOW, THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable considerations, the receipt and legal sufficiency of which are hereby acknowledged, and in further consideration of the terms, covenants and agreements contained in the Loan Documents and this Agreement:

(1)     Execution of Additional Documents. Borrower hereby agrees to cause ALI CHOUDHRI to execute contemporaneously herewith a Guaranty Agreement, in a form satisfactory to Lender.

(2)     Reinstatement and Modification of Note. Lender and Borrower hereby agree that the Note is hereby reinstated, amended and modified as follows:

(a)     The Note is hereby reinstated.

(b)     The outstanding, unpaid principal balance of the Note is $736,902.00, and Borrower hereby promises and agrees to pay said amount to Lender, together with interest thereon, all in accordance with the terms and provisions of the Note, as reinstated, amended and modified by this Agreement.

(c)     The principal balance of the Note, as reinstated, amended and modified by this Agreement, is due and payable on or before February 2, 2022.

(d)     Accrued interest due on the Note, as reinstated, amended and modified by this Agreement, is due and payable on September 2, 2021, and on the same day of each and every consecutive calendar month thereafter and at maturity; provided, however, that if the principal of the Note, as reinstated, amended and modified by this Agreement, is prepaid in whole or in part, at any time after the effective date of this Agreement, all accrued and unpaid interest with respect to such principal amount prepaid is due and payable on the date of such prepayment.

(e)     Interest on the outstanding balance of the Note, as reinstated, amended and modified by this Agreement, shall accrue from and after the effective date of this Agreement until maturity as above stated at the rate of ten percent (10.0%) per annum. All payments of interest shall be computed on the per annum basis of a year of 360 days and for the actual number of days elapsed unless such calculation would result in a usurious rate, in which case interest shall be calculated on the per annum basis of a year of 365 or 366 days, as the case may be.

(f)     All past due principal and interest shall bear interest until paid at the maximum rate of nonusurious interest allowed by law as of the date hereof or as may hereafter be in effect from time to time, provided that if applicable law does not provide for a maximum nonusurious rate of interest, then all past due principal and interest shall bear interest until paid at the rate of eighteen percent (18.0%) per annum. Alternatively, Lender may charge and collect a late fee of five percent (5.0%) of any scheduled installment more than ten (10) days past due.

All other terms and provisions of the Note, except as expressly reinstated, amended and modified by this Agreement, remain the same.

(3)     Modification of Liability.  Lender and Borrower hereby agree that all references to the Note in the Deed of Trust, and all other Loan Documents are hereby reinstated, amended to refer to the Note, as reinstated, amended and modified by this Agreement.

(4)     Reaffirmation of Liability.  Borrower hereby reaffirms to Lender each of the representations, warranties, covenants and agreements contained in the Loan Documents, with the same force and effect as if each were separately stated herein and made as of the date hereof. Borrower hereby ratifies, affirms, reaffirms, acknowledges, confirms and agrees that the Loan Documents, as herein modified, represent the valid, binding and enforceable obligations of Borrower, and Borrower further acknowledges that there are no existing claims, defenses (personal or otherwise), or rights of setoff whatsoever with respect to any of the Loan Documents, and Borrower further acknowledges and represents that no event has occurred and no condition exists which would constitute a default under any of the Loan Documents, or this Agreement, either with or without notice or lapse of time, or both.  Lender and Borrower hereby agree that this Agreement

and all of the Loan Documents are in full force and effect so that nothing herein contained shall be construed as modifying in any manner any of the Loan Documents, except as specifically modified by this Agreement.

(5)     No Release of Liens. Lender and Borrower hereby agree that this Agreement modifies the Loan Documents, and in no way acts as a diminishment, impairment, release or relinquishment of the liens, powers, titles, security interests and rights ("**Liens**") securing payment of the Note, including, without limitation, the Liens created by the Deed of Trust. The Liens are hereby renewed, ratified, confirmed and carried forward by Borrower in all respects, except to the extent same have previously been released of record by Lender.

(6)     Borrower's Business Plan. Borrower has relied and is relying upon Borrower's expertise and business plan in all matters in connection with the Property, the Loan Documents and this Agreement. Borrower has not relied and is not relying on Lender's expertise or business acumen in any matter in connection with the Property, the Loan Documents or this Agreement. The relationship between Borrower and Lender is solely that of borrower and lender, and Lender has no fiduciary or other special relationship with Borrower. No term or condition of the Loan Documents or this Agreement shall be construed so as to deem the relationship between Borrower and Lender to be other than that of borrower and lender.

(7)     Release of Lender. Borrower releases, acquits and forever discharges Lender, Lender's agents, servants and employees and all persons, natural or corporate, in privity with them or any of them, from any and all claims or causes of action of any kind whatsoever, at common law, statutory or otherwise, which Borrower has now or might have in the future, known or unknown, now existing or that might arise hereafter, directly or indirectly attributable to the Property, the Loan Documents, or from any transaction or matter in connection with the Loan Documents, or the Property, it being intended to release all claims of any kind or nature that Borrower might have against those hereby released whether asserted or not.

(8)     Further Assurances. Borrower agrees to perform any further acts and to execute and deliver any further documents that may be reasonably necessary in the opinion of Lender or Lender's counsel to carry out the provisions of this Agreement.

(9)     Entire Agreement. This Agreement sets forth the entire agreement of Lender and Borrower with respect to the subject matter of this Agreement. There are no oral conditions, representations or agreements affecting this Agreement. No extension or variation in the covenants to be performed under this Agreement or in the terms of this Agreement and no release or satisfaction of this Agreement shall be binding on any party unless the same is in writing and signed by the party or an authorized officer of any corporate party. Notwithstanding anything to the contrary contained in this Agreement or inferred hereby or in any other instrument executed by Borrower or Lender or in any other action or conduct undertaken by Borrower or by Lender on or before the date hereof, the agreements, covenants and provisions contained in this Agreement shall constitute the only evidence of Lender's consent to modify the terms and provisions of the Loan Documents in the manner set forth in this Agreement. Accordingly, no express or implied consent

to any further modifications of the Loan or the Loan Documents, whether any such modifications involve any of the matters contained in this Agreement or otherwise, shall be inferred or implied from Lender's execution of this Agreement unless evidenced by an express written agreement executed by Lender. Further, Lender's execution of this Agreement shall not constitute a waiver (either express or implied) of the requirement that any further modification of the Loan or any of the Loan Documents shall require the express written approval of Lender, no such approval (either express or implied) having been given as of the date hereof.

(10)   Borrower's Signature. The undersigned individual signing for and on behalf of Borrower represents and warrants that he or she is duly authorized and empowered to execute this Agreement; that he or she has read this Agreement and fully understands this Agreement to be a compromise, settlement and release of all claims, known or unknown, present or future, which Borrower has or may have against the parties released, arising out of the matters described; that he or she is of legal age and legally competent to execute this Agreement, and that he or she does so of his or her own free will and accord, without threat or duress, and without reliance on any representation of any kind or character not expressly set forth in this Agreement.

(11)   Survival. All representations, warranties, covenants and agreements of Lender and Borrower made in this Agreement shall survive the execution and delivery of this Agreement, until such time as all of the obligations of the signatories hereto shall have lapsed in accordance with their respective terms or shall have been discharged in full.

(12)   Legal Fees and Expenses. All reasonable costs and expenses incurred by Lender as a result of or in connection with the negotiation, preparation, performance and enforcement of this Agreement and all transactions pursuant to this Agreement shall be paid by Borrower, including, without limitation, Lender's attorneys fees and expenses.

(13)   Parties Bound. This Agreement is binding on and inures to the benefit of Lender, Borrower, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

(14)   Governing Law. This Agreement is executed, delivered and performable in HARRIS County, Texas and shall be construed under and in accordance with the laws of the State of Texas and federal law.

(15)   Conflicts. In the event of any conflict between any of the terms and provisions of the Note or any of the other Loan Documents and the terms and provisions of this Agreement, the terms and provisions of this Agreement shall control.

(16)   Executed Counterparts. This Agreement may be executed in two or more counterparts, and it shall not be necessary that the signatures of all parties hereto be contained on any one counterpart hereof; each counterpart shall be deemed an original, but all of which together shall constitute one and the same instrument.

**THIS AGREEMENT AND THE LOAN DOCUMENTS REFERENCED HEREIN FOR THE LOAN OR OTHER EXTENSION OF CREDIT DESCRIBED HEREIN REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the dates of the acknowledgments set forth below, to be effective for all purposes, however, as of the date first above written.

**BORROWER:**

**SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company**

By: _____
Ali Choudhri, as sole Member of borrower and as sole member of   SHEPHERD-HULDY DEVELOPMENT II, LLC, a Texas limited liability company, Manager

**LENDER:**

**GREENBERG FINANCE, LLC, a Texas Limited Liability Co.**

By: _____
      David Greenberg, Manager

THE STATE OF TEXAS          §
                                               §
COUNTY  OF HARRIS           §

This instrument was acknowledged before me on the day of August, 2021, by Ali Choudhri, as sole Member of Borrower and as sole member of SHEPHERD-HULDY DEVELOPMENT II, LLC, a Texas limited liability company, Manager of **SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company**, for an on behalf of said limited liability company.

_____
Notary Public, State of Texas



ANNETTE WIERSCHEM
NOTARY PUBLIC - STATE OF TEXAS
NOTARY ID# 484807-2
My Comm. Exp. January 7, 2022

THE STATE OF TEXAS          §
                           §
COUNTY OF HARRIS           §

  This instrument was acknowledged before me on the day of August, 2021, by David Greenberg Manager of **GREENBERG FINANCE, LLC, a Texas Limited Liability Co.**, for and on behalf of said limited liability company.

> ANNETTE WIERSCHEM
> NOTARY PUBLIC - STATE OF TEXAS
> NOTARY ID# 484967-2
> My Comm. Exp. January 7, 2022

_____
Notary Public, State of Texas

RETURN TO:
GREENBERG FINANCE, LLC, a Texas Limited Liability Co.
Attn: Note Department
5959 Richmond Avenue, Suite 440
Houston, Texas 77057

Exhibit "A"

All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight (48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, save and except the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

RP-2021-332073

RP-2022-69743
02/08/2022   ER   $50.00

Exhibit D

## SECOND MODIFICATION AND EXTENSION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS        §
                          §
COUNTY OF HARRIS          §

This SECOND MODIFICATION AND EXTENSION AGREEMENT (**"Agreement"**) is executed effective the 2nd day of February, 2022, by and between **SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company ("Borrower")**, whose address for notice hereunder is 1001 West Loop South, Suite 700, Houston, Texas 77027, and **GREENBERG FINANCE, LLC, a Texas Limited Liability Co. ("Lender")**, with address of 5959 Richmond Avenue, Suite 440, Houston, Texas 77057;

**W I T N E S S E T H :**

WHEREAS, GALOOSTIAN FAMILY LIVING TRUST (**"Original Lender"**) has loaned to Borrower, and Borrower has borrowed from Original Lender **$805,867.34** (the **"Loan"**), such Loan being evidenced, in part, by the following instruments:

(a)        Promissory Note (the **"Original Note"**) dated May 14, 2019, executed by Borrower, payable to the order of  Original Lender, in the original principal amount of $805,867.34, upon which, by agreement of Borrower and Lender after the payment on August 2, 2021 of $182,000.00, there remains unpaid a principal balance of $694,713.42, and upon which interest has been paid to the effective date of this Agreement;

(b)        Deed of Trust  (the **"Original Deed of Trust"**) of even date with the Note, executed by Borrower in favor of Salima Umatiya, Trustee, and Original Lender, as "Beneficiary," and being recorded under County Clerk's File No. RP-2019-207303 in the Real Property Records of Harris County, Texas, covering the property described as **ALL THAT CERTAIN TRACT OF LAND OUT OF THE NORTHWEST PORTION OF THE ORIGINAL TEN ACRE LOT FORTY-ONE (41) OF THE SUBDIVISION OF GREAT LOT FORTY-EIGHT (48) OF THE OBEDIENCE SMITH SURVEY IN THE CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SOUTH ONE-HALF OF A 100 BY 135 FOOT TRACT CONVEYED BY TWO**

**DEEDS FROM SALLIE A. MORGAN AND WIFE, AND RECORDED IN VOLUME 533, PAGE 582 AND VOLUME 615, PAGE 136, OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES (the "Property");**

(c)     Guaranty Agreement (the **"Guaranty Agreement"**) dated effective as of August 2, 2021, executed by  ALI CHOUDHRI  (the **"Guarantor"**);

WHEREAS, The Note and the Deed of Trust were assigned to Lender under Assignment filed for record in the Real Property Records of the HARRIS County, Texas, under Clerk's File No. RP-2021-332073;

WHEREAS, after the Original Note was accelerated, the Original Note, the Original Deed of Trust and all other documents, agreements and instruments executed in connection with or as security for the Original Note were modified by that certain Reinstatement and Modification Agreement (the **"Extension Agreement"**) dated effective August 2, 2021, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2021-454560 in the Real Property Records of HARRIS County, Texas; hereinafter the Original Note and the Original Deed of Trust, as modified by the Extension Agreement, are called the **"Note"** and the **"Deed of Trust"**, respectively);

WHEREAS, the Note, the Deed of Trust, the Guaranty Agreement and each and every other agreement, document and instrument executed or to be executed for the benefit of Lender in connection with the Loan (collectively, the **"Loan Documents"**) are hereby incorporated by this reference for all purposes to the same extent as if set out herein verbatim; and

WHEREAS, Borrower and Lender desire to amend and modify the Loan Documents and to continue and carry forward all liens and security interests securing the Note.

NOW, THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable considerations, the receipt and legal sufficiency of which are hereby acknowledged, and in further consideration of the terms, covenants and agreements contained in the Loan Documents and this Agreement:

(1)     <u>Modification of Note</u>.  Lender and Borrower hereby agree that the Note is hereby renewed, rearranged, extended, amended and modified as follows:

(a)     The outstanding, unpaid principal balance of the Note is $694,713.42, and Borrower hereby promises and agrees to pay said amount to Lender, together with interest thereon, all in accordance with the terms and provisions of the Note, as renewed, rearranged, extended, amended and modified by this Agreement.

(b)   The principal balance of the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is due and payable on or before February 2, 2023.

(c)   Accrued interest due on the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is due and payable March 2, 2022, and on the same day of each and every consecutive calendar month thereafter and at maturity; provided, however, that if the principal of the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is prepaid in whole or in part, at any time after the effective date of this Agreement, all accrued and unpaid interest with respect to such principal amount prepaid is due and payable on the date of such prepayment.

(d)   Interest on the outstanding balance of the Note, as reinstated, amended and modified by this Agreement, shall accrue from and after the effective date of this Agreement until maturity as above stated at the rate of ten percent (10.0%) per annum.  All payments of interest shall be computed on the per annum basis of a year of 360 days and for the actual number of days elapsed unless such calculation would result in a usurious rate, in which case interest shall be calculated on the per annum basis of a year of 365 or 366 days, as the case may be.

(e)   All past due principal and interest shall bear interest until paid at the maximum rate of nonusurious interest allowed by law as of the date hereof or as may hereafter be in effect from time to time, provided that if applicable law does not provide for a maximum nonusurious rate of interest, then all past due principal and interest shall bear interest until paid at the rate of eighteen percent (18.0%) per annum.  Alternatively, Lender may charge and collect a late fee of five percent (5.0%) of any scheduled installment more than ten (10) days past due.

All other terms and provisions of the Note, except as expressly renewed, rearranged, extended, amended and modified by this Agreement, remain the same.

(2)   <u>Modification of Liability</u>.  Lender and Borrower hereby agree that all references to the Note in the Deed of Trust, and all other Loan Documents are hereby amended to refer to the Note, as renewed, rearranged, extended, amended and modified by this Agreement.

(3)   <u>Reaffirmation of Liability</u>.  Borrower hereby reaffirms to Lender each of the representations, warranties, covenants and agreements contained in the Loan Documents, with the same force and effect as if each were separately stated herein and made as of the date hereof. Borrower hereby ratifies, affirms, reaffirms, acknowledges, confirms and agrees that the Loan Documents, as herein modified, represent the valid, binding and enforceable obligations of Borrower, and Borrower further acknowledges that there are no existing claims, defenses (personal or otherwise), or rights of setoff whatsoever with respect to any of the Loan Documents, and Borrower further acknowledges and represents that no event has occurred and no condition exists

which would constitute a default under any of the Loan Documents, or this Agreement, either with or without notice or lapse of time, or both.  Lender and Borrower hereby agree that this Agreement and all of the Loan Documents are in full force and effect so that nothing herein contained shall be construed as modifying in any manner any of the Loan Documents, except as specifically modified by this Agreement.

(4)     No Release of Liens.  Lender and Borrower hereby agree that this Agreement modifies the Loan Documents, and in no way acts as a diminishment, impairment, release or relinquishment of the liens, powers, titles, security interests and rights ("**Liens**") securing payment of the Note, including, without limitation, the Liens created by the Deed of Trust.  The Liens are hereby renewed, extended, ratified, confirmed and carried forward by Borrower in all respects, except to the extent same have previously been released of record by Lender.

(5)     Borrower's Business Plan.  Borrower has relied and is relying upon Borrower's expertise and business plan in all matters in connection with the Property, the Loan Documents and this Agreement.  Borrower has not relied and is not relying on Lender's expertise or business acumen in any matter in connection with the Property, the Loan Documents or this Agreement.  The relationship between Borrower and Lender is solely that of borrower and lender, and Lender has no fiduciary or other special relationship with Borrower.  No term or condition of the Loan Documents or this Agreement shall be construed so as to deem the relationship between Borrower and Lender to be other than that of borrower and lender.

(6)     Release of Lender.  Borrower releases, acquits and forever discharges Lender, Lender's agents, servants and employees and all persons, natural or corporate, in privity with them or any of them, from any and all claims or causes of action of any kind whatsoever, at common law, statutory or otherwise, which Borrower has now or might have in the future, known or unknown, now existing or that might arise hereafter, directly or indirectly attributable to the Property, the Loan Documents, or from any transaction or matter in connection with the Loan Documents, or the Property, it being intended to release all claims of any kind or nature that Borrower might have against those hereby released whether asserted or not.

(7)     Further Assurances.  Borrower agrees to perform any further acts and to execute and deliver any further documents that may be reasonably necessary in the opinion of Lender or Lender's counsel to carry out the provisions of this Agreement.

(8)     Entire Agreement.  This Agreement sets forth the entire agreement of Lender and Borrower with respect to the subject matter of this Agreement.  There are no oral conditions, representations or agreements affecting this Agreement.  No extension or variation in the covenants to be performed under this Agreement or in the terms of this Agreement and no release or satisfaction of this Agreement shall be binding on any party unless the same is in writing and signed by the party or an authorized officer of any corporate party.  Notwithstanding anything to the contrary contained in this Agreement or inferred hereby or in any other instrument executed by Borrower or Lender or in any other action or conduct undertaken by Borrower or by Lender on or before the date hereof, the agreements, covenants and provisions contained in this Agreement shall

RP-2022-69743

constitute the only evidence of Lender's consent to modify the terms and provisions of the Loan Documents in the manner set forth in this Agreement. Accordingly, no express or implied consent to any further modifications of the Loan or the Loan Documents, whether any such modifications involve any of the matters contained in this Agreement or otherwise, shall be inferred or implied from Lender's execution of this Agreement unless evidenced by an express written agreement executed by Lender. Further, Lender's execution of this Agreement shall not constitute a waiver (either express or implied) of the requirement that any further modification of the Loan or any of the Loan Documents shall require the express written approval of Lender, no such approval (either express or implied) having been given as of the date hereof.

(9)    Borrower's Signature.  The undersigned individual signing for and on behalf of Borrower represents and warrants that he or she is duly authorized and empowered to execute this Agreement; that he or she has read this Agreement and fully understands this Agreement to be a compromise, settlement and release of all claims, known or unknown, present or future, which Borrower has or may have against the parties released, arising out of the matters described; that he or she is of legal age and legally competent to execute this Agreement, and that he or she does so of his or her own free will and accord, without threat or duress, and without reliance on any representation of any kind or character not expressly set forth in this Agreement.

(10)    Survival.  All representations, warranties, covenants and agreements of Lender and Borrower made in this Agreement shall survive the execution and delivery of this Agreement, until such time as all of the obligations of the signatories hereto shall have lapsed in accordance with their respective terms or shall have been discharged in full.

(11)    Legal Fees and Expenses.  All reasonable costs and expenses incurred by Lender as a result of or in connection with the negotiation, preparation, performance and enforcement of this Agreement and all transactions pursuant to this Agreement shall be paid by Borrower, including, without limitation, Lender's attorneys fees and expenses.

(12)    Parties Bound.  This Agreement is binding on and inures to the benefit of Lender, Borrower, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

(13)    Governing Law.  This Agreement is executed, delivered and performable in HARRIS County, Texas and shall be construed under and in accordance with the laws of the State of Texas and federal law.

(14)    Conflicts.  In the event of any conflict between any of the terms and provisions of the Note or any of the other Loan Documents and the terms and provisions of this Agreement, the terms and provisions of this Agreement shall control.

(15)    Executed Counterparts.  This Agreement may be executed in two or more counterparts, and it shall not be necessary that the signatures of all parties hereto be contained on any

one counterpart hereof; each counterpart shall be deemed an original, but all of which together shall constitute one and the same instrument.

**THIS AGREEMENT AND THE LOAN DOCUMENTS REFERENCED HEREIN FOR THE LOAN OR OTHER EXTENSION OF CREDIT DESCRIBED HEREIN REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the dates of the acknowledgments set forth below, to be effective for all purposes, however, as of the date first above written.

**BORROWER:**

**SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company**

By: _____

     Ali Choudhri, as sole Member of borrower and as sole member of S H E P H E R D - H U L D Y DEVELOPMENT II, LLC, a Texas limited liability company, Manager

**LENDER:**

**GREENBERG FINANCE, LLC, a Texas Limited Liability Co.**

By:_____

     David Greenberg, Manager

RP-2022-69743

THE STATE OF TEXAS    §

COUNTY OF    §

    This instrument was acknowledged before me on the 3̶d̶ ~~day of January,~~ Febuary 2022, by Ali Choudhri, as sole Member of Borrower and as sole member of SHEPHERD-HULDY DEVELOPMENT II, LLC, a Texas limited liability company, Manager of **SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company,** for an on behalf of said limited liability company.

_____
Notary Public, State of Texas

> STEPHANIE ALVAREZ
> ID #131078509
> My Commission Expires
> April 06, 2025

THE STATE OF TEXAS    §

COUNTY OF HARRIS    §

    This instrument was acknowledged before me on the 7 day of ~~August, 2021,~~ FEB · 2022 by David Greenberg Manager of **GREENBERG FINANCE, LLC, a Texas Limited Liability Co.,** for and on behalf of said limited liability company.



> ANNETTE WIERSCHEM
> Notary Public, State of Texas
> Comm. Expires 01-07-2026
> Notary ID 464907-2

_____
Notary Public, State of Texas

## GUARANTOR'S CONSENT

    The undersigned, being the guarantor of the Loan, hereby: (i) consents and agrees to all of the terms and provisions of the foregoing Agreement; (ii) agrees that his guaranty of the Loan, as evidenced by his Guaranty Agreement, remains in full force and effect securing the payment of the Loan, as renewed, rearranged, extended, amended and modified by the foregoing Agreement; (iii) agrees that his Guaranty Agreement is the valid, binding and enforceable obligations of each of the undersigned; and (iv) reaffirms each representation, warranty, covenant, agreement and obligation contained in or arising under his Guaranty Agreement and the other Loan Documents as if each were separately stated herein and made as of the date hereof.

_____
**ALI CHOUDHRI**

RP-2022-69743

THE STATE OF TEXAS     §
                       §
COUNTY OF              §

This instrument was acknowledged before me on the 3rd day of January, February 2022, by **ALI CHOUDHRI.**

_____
Notary Public, State of Texas

RETURN TO:
GREENBERG FINANCE, LLC, a Texas Limited Liability Co.
Attn: Note Department
5959 Richmond Avenue, Suite 440
Houston, Texas 77057

STEPHANIE ALVAREZ
ID #131078509
My Commission Expires
April 06, 2025

RP-2022-69743

## Exhibit "A"
**Property Description**

All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight (48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten-acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, SAVE AND EXCEPT the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

Omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States or (b) relates to the handicap but does not discriminate against handicapped persons.

RP-2022-69743

RP-2022-69743

\# Pages 10

02/08/2022 11:43 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees   $50.00

RP-2022-69743

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

RP-2023-45412

02/10/2023  ER  $50.00

Exhibit E

# THIRD MODIFICATION AND EXTENSION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

**W I T N E S S E T H :**

This THIRD MODIFICATION AND EXTENSION AGREEMENT ("**Agreement**") is executed effective the 31st day of January 2023, by and between **SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company** ("**Borrower**"), whose address for notice hereunder is 1001 West Loop South, Suite 700, Houston, Texas 77027, and **GREENBERG FINANCE, LLC, a Texas Limited Liability Co.** ("**Lender**"), with address of 5959 Richmond Avenue, Suite 440, Houston, Texas 77057;

**W I T N E S S E T H :**

WHEREAS, GALOOSTIAN FAMILY LIVING TRUST ("**Original Lender**") has loaned to Borrower, and Borrower has borrowed from Original Lender **$805,867.34** (the "**Loan**"), such Loan being evidenced, in part, by the following instruments:

(a)      Promissory Note (the "**Original Note**") dated May 14, 2019, executed by Borrower, payable to the order of Original Lender, in the original principal amount of $805,867.34, upon which, by agreement of Borrower and Lender after the payment on August 2, 2021 of $182,000.00, there remains unpaid a principal balance of $694,713.42, and upon which interest has been paid as of January 1, 2023.

(b)      Deed of Trust (the "**Original Deed of Trust**") of even date with the Note, executed by Borrower in favor of Salima Umatiya, Trustee, and Original Lender, as "Beneficiary," and being recorded under County Clerk's File No. RP-2019-207303 in the Real Property Records of Harris County, Texas, covering the property described as **ALL THAT CERTAIN TRACT OF LAND OUT OF THE NORTHWEST PORTION OF THE ORIGINAL TEN ACRE LOT FORTY-ONE (41) OF THE SUBDIVISION OF GREAT LOT FORTY-EIGHT (48) OF THE OBEDIENCE SMITH SURVEY IN THE CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SOUTH ONE-HALF OF A 100 BY 135 FOOT TRACT CONVEYED BY TWO**

1

DEEDS FROM SALLIE A. MORGAN AND WIFE, AND RECORDED IN VOLUME 533, PAGE 582 AND VOLUME 615, PAGE 136, OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES (the "Property");

    (c)    Guaranty Agreement (the "**Guaranty Agreement**") dated effective as of August 2, 2021, executed by ALI CHOUDHRI (the "**Guarantor**");

WHEREAS, The Note and the Deed of Trust were assigned to Lender under Assignment filed for record in the Real Property Records of the HARRIS County, Texas, under Clerk's File No. RP-2021-332073;

WHEREAS, after the Original Note was accelerated, the Original Note, the Original Deed of Trust and all other documents, agreements and instruments executed in connection with or as security for the Original Note were modified by that certain Reinstatement and Modification Agreement (the "**First Extension Agreement**") dated effective August 2, 2021, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2021-454560 in the Real Property Records of HARRIS County, Texas, as further modified by that certain Second Modification and Extension Agreement (the "**Second Extension Agreement**") dated effective February 2, 2022, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2022-69743 in the Real Property Records of HARRIS County, Texas; hereinafter the Original Note and the Original Deed of Trust, as modified by the First Extension Agreement and Second Extension Agreement, are called the "**Note**" and the "**Deed of Trust**", respectively);

WHEREAS, the Note, the Deed of Trust, the Guaranty Agreement and each and every other agreement, document and instrument executed or to be executed for the benefit of Lender in connection with the Loan (collectively, the "**Loan Documents**") are hereby incorporated by this reference for all purposes to the same extent as if set out herein verbatim; and

WHEREAS, Borrower and Lender desire to amend and modify the Loan Documents and to continue and carry forward all liens and security interests securing the Note.

NOW, THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable considerations, the receipt and legal sufficiency of which are hereby acknowledged, and in further consideration of the terms, covenants and agreements contained in the Loan Documents and this Agreement:

    (1)    <u>Modification of Note</u>. Lender and Borrower hereby agree that the Note is hereby renewed, rearranged, extended, amended and modified as follows:

    (a)    The outstanding, unpaid principal balance of the Note is $694,713.42, and Borrower hereby promises and agrees to pay said amount to Lender, together with interest thereon, all in accordance with the terms and provisions of the Note, as renewed, rearranged, extended, amended and modified by this Agreement.

2

(b)     The principal balance of the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is due and payable on or before August 2, 2023.

(c)     Accrued interest due on the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is due and payable February 2, 2023, and on the same day of each and every consecutive calendar month thereafter and at maturity; provided, however, that if the principal of the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is prepaid in whole or in part, at any time after the effective date of this Agreement, all accrued and unpaid interest with respect to such principal amount prepaid is due and payable on the date of such prepayment. Borrower shall pay Lender on demand a renewal fee in the amount designated by Lender. Such fee shall be fully earned when paid.

(d)     Interest on the outstanding balance of the Note, as amended and modified by this Agreement, shall accrue from and after the effective date of this Agreement until maturity as above stated at the rate of fifteen percent (15.0%) per annum. All payments of interest shall be computed on the per annum basis of a year of 360 days and for the actual number of days elapsed unless such calculation would result in a usurious rate, in which case interest shall be calculated on the per annum basis of a year of 365 or 366 days, as the case may be.

(e)     All past due principal and interest shall bear interest until paid at the maximum rate of nonusurious interest allowed by law as of the date hereof or as may hereafter be in effect from time to time, provided that if applicable law does not provide for a maximum nonusurious rate of interest, then all past due principal and interest shall bear interest until paid at the rate of eighteen percent (18.0%) per annum. Alternatively, Lender may charge and collect a late fee of five percent (5.0%) of any scheduled installment more than ten (10) days past due.

All other terms and provisions of the Note, except as expressly renewed, rearranged, extended, amended and modified by this Agreement, remain the same.

(2)     _Modification of Liability_. Lender and Borrower hereby agree that all references to the Note in the Deed of Trust, and all other Loan Documents are hereby amended to refer to the Note, as renewed, rearranged, extended, amended and modified by this Agreement.

(3)     _Reaffirmation of Liability_. Borrower hereby reaffirms to Lender each of the representations, warranties, covenants and agreements contained in the Loan Documents, with the same force and effect as if each were separately stated herein and made as of the date hereof. Borrower hereby ratifies, affirms, reaffirms, acknowledges, confirms and agrees that the Loan Documents, as herein modified, represent the valid, binding and enforceable obligations of Borrower, and Borrower further acknowledges that there are no existing claims, defenses (personal or otherwise), or rights of setoff whatsoever with respect to any of the Loan Documents, and Borrower further acknowledges and represents that no event has occurred and no condition exists

3

RP-2023-45412

which would constitute a default under any of the Loan Documents, or this Agreement, either with or without notice or lapse of time, or both. Lender and Borrower hereby agree that this Agreement and all of the Loan Documents are in full force and effect so that nothing herein contained shall be construed as modifying in any manner any of the Loan Documents, except as specifically modified by this Agreement.

(4)     No Release of Liens. Lender and Borrower hereby agree that this Agreement modifies the Loan Documents, and in no way acts as a diminishment, impairment, release or relinquishment of the liens, powers, titles, security interests and rights ("**Liens**") securing payment of the Note, including, without limitation, the Liens created by the Deed of Trust. The Liens are hereby renewed, extended, ratified, confirmed and carried forward by Borrower in all respects, except to the extent same have previously been released of record by Lender.

(5)     Borrower's Business Plan. Borrower has relied and is relying upon Borrower's expertise and business plan in all matters in connection with the Property, the Loan Documents and this Agreement. Borrower has not relied and is not relying on Lender's expertise or business acumen in any matter in connection with the Property, the Loan Documents or this Agreement. The relationship between Borrower and Lender is solely that of borrower and lender, and Lender has no fiduciary or other special relationship with Borrower. No term or condition of the Loan Documents or this Agreement shall be construed so as to deem the relationship between Borrower and Lender to be other than that of borrower and lender.

(6)     Release of Lender. Borrower releases, acquits and forever discharges Lender, Lender's agents, servants and employees and all persons, natural or corporate, in privity with them or any of them, from any and all claims or causes of action of any kind whatsoever, at common law, statutory or otherwise, which Borrower has now or might have in the future, known or unknown, now existing or that might arise hereafter, directly or indirectly attributable to the Property, the Loan Documents, or from any transaction or matter in connection with the Loan Documents, or the Property, it being intended to release all claims of any kind or nature that Borrower might have against those hereby released whether asserted or not.

(7)     Further Assurances. Borrower agrees to perform any further acts and to execute and deliver any further documents that may be reasonably necessary in the opinion of Lender or Lender's counsel to carry out the provisions of this Agreement.

(8)     Entire Agreement. This Agreement sets forth the entire agreement of Lender and Borrower with respect to the subject matter of this Agreement. There are no oral conditions, representations or agreements affecting this Agreement. No extension or variation in the covenants to be performed under this Agreement or in the terms of this Agreement and no release or satisfaction of this Agreement shall be binding on any party unless the same is in writing and signed by the party or an authorized officer of any corporate party. Notwithstanding anything to the contrary contained in this Agreement or inferred hereby or in any other instrument executed by Borrower or Lender or in any other action or conduct undertaken by Borrower or by Lender on or before the date hereof, the agreements, covenants and provisions contained in this Agreement shall

4

constitute the only evidence of Lender's consent to modify the terms and provisions of the Loan Documents in the manner set forth in this Agreement. Accordingly, no express or implied consent to any further modifications of the Loan or the Loan Documents, whether any such modifications involve any of the matters contained in this Agreement or otherwise, shall be inferred or implied from Lender's execution of this Agreement unless evidenced by an express written agreement executed by Lender. Further, Lender's execution of this Agreement shall not constitute a waiver (either express or implied) of the requirement that any further modification of the Loan or any of the Loan Documents shall require the express written approval of Lender, no such approval (either express or implied) having been given as of the date hereof.

(9)    Borrower's Signature. The undersigned individual signing for and on behalf of Borrower represents and warrants that he or she is duly authorized and empowered to execute this Agreement; that he or she has read this Agreement and fully understands this Agreement to be a compromise, settlement and release of all claims, known or unknown, present or future, which Borrower has or may have against the parties released, arising out of the matters described; that he or she is of legal age and legally competent to execute this Agreement, and that he or she does so of his or her own free will and accord, without threat or duress, and without reliance on any representation of any kind or character not expressly set forth in this Agreement.

(10)    Survival. All representations, warranties, covenants and agreements of Lender and Borrower made in this Agreement shall survive the execution and delivery of this Agreement, until such time as all of the obligations of the signatories hereto shall have lapsed in accordance with their respective terms or shall have been discharged in full.

(11)    Legal Fees and Expenses. All reasonable costs and expenses incurred by Lender as a result of or in connection with the negotiation, preparation, performance and enforcement of this Agreement and all transactions pursuant to this Agreement shall be paid by Borrower, including, without limitation, Lender's attorneys fees and expenses.

(12)    Parties Bound. This Agreement is binding on and inures to the benefit of Lender, Borrower, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

(13)    Governing Law. This Agreement is executed, delivered and performable in HARRIS County, Texas and shall be construed under and in accordance with the laws of the State of Texas and federal law.

(14)    Conflicts. In the event of any conflict between any of the terms and provisions of the Note or any of the other Loan Documents and the terms and provisions of this Agreement, the terms and provisions of this Agreement shall control.

(15)    Executed Counterparts. This Agreement may be executed in two or more counterparts, and it shall not be necessary that the signatures of all parties hereto be contained on any

RP-2023-45412

one counterpart hereof; each counterpart shall be deemed an original, but all of which together shall constitute one and the same instrument.

**THIS AGREEMENT AND THE LOAN DOCUMENTS REFERENCED HEREIN FOR THE LOAN OR OTHER EXTENSION OF CREDIT DESCRIBED HEREIN REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the dates of the acknowledgments set forth below, to be effective for all purposes, however, as of the date first above written.

**BORROWER:**

**SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company**

By: _____

       Ali Choudhri, as sole Member of borrower and as sole member of S H E P H E R D - H U L D Y DEVELOPMENT II, LLC, a Texas limited liability company, Manager

**LENDER:**

**GREENBERG FINANCE, LLC, a Texas Limited Liability Co.**

By: _____

       David Greenberg, Manager

RP-2023-45412

6

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

    This instrument was acknowledged before me on the 6 day of February, 2023, by Ali Choudhri, as sole Member of Borrower and as sole member of SHEPHERD-HULDY DEVELOPMENT II, LLC, a Texas limited liability company, Manager of **SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company,** for an on behalf of said limited liability company.



LEAH NICOLE WASHAM
Notary Public, State of Texas
Comm Expires 06-24-2025
Notary ID 128018788

_____
Notary Public, State of Texas

THE STATE OF TEXAS §
§
COUNTY OF §

    This instrument was acknowledged before me on the ___day of February, 2023, by David Greenberg Manager of **GREENBERG FINANCE, LLC, a Texas Limited Liability Co.,** for and on behalf of said limited liability company.



ANNETTE WIERSCHEM
Notary Public, State of Texas
Comm. Expires 01-07-2026
Notary ID 484907-2

_____
Notary Public, State of Texas

## GUARANTOR'S CONSENT

    The undersigned, being the guarantor of the Loan, hereby: (i) consents and agrees to all of the terms and provisions of the foregoing Agreement; (ii) agrees that his guaranty of the Loan, as evidenced by his Guaranty Agreement, remains in full force and effect securing the payment of the Loan, as renewed, rearranged, extended, amended and modified by the foregoing Agreement; (iii) agrees that his Guaranty Agreement is the valid, binding and enforceable obligations of each of the undersigned; and (iv) reaffirms each representation, warranty, covenant, agreement and obligation contained in or arising under his Guaranty Agreement and the other Loan Documents as if each were separately stated herein and made as of the date hereof.

_____
**ALI CHOUDHRI**

7

THE STATE OF TEXAS §
                    §
COUNTY OF H̲A̲R̲R̲I̲S̲ §

    This instrument was acknowledged before me on the ___6___ day of February, 2023, by **ALI CHOUDHRI.**



Notary Public, State of Texas

RETURN TO:
GREENBERG FINANCE, LLC, a Texas Limited Liability Co.
Attn: Note Department
5959 Richmond Avenue, Suite 440
Houston, Texas 77057

RP-2023-45412

8

## Exhibit "A"
### Property Description

All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight (48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten-acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, SAVE AND EXCEPT the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

Omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States or (b) relates to the handicap but does not discriminate against handicapped persons.

RP-2023-45412

RP-2023-45412

RP-2023-45412

\# Pages 10

02/10/2023 08:03 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees  $50.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

RP-2023-286652
07/31/2023   ER   $50.00

Exhibit F

## FOURTH MODIFICATION AND EXTENSION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS        §
                          §
COUNTY OF HARRIS          §

This FOURTH MODIFICATION AND EXTENSION AGREEMENT (**"Agreement"**) is executed effective the 2nd day of August 2023, by and between **SHEPHERD-HULDY DEVELOPMENT I, LLC**, a Texas limited liability company (**"Borrower"**), whose address for notice hereunder is 1001 West Loop South, Suite 700, Houston, Texas 77027, and **GREENBERG FINANCE, LLC**, a Texas limited liability company (**"Lender"**), with address of 5959 Richmond Avenue, Suite 440, Houston, Texas 77057;

### W I T N E S S E T H :

WHEREAS, GALOOSTIAN FAMILY LIVING TRUST (**"Original Lender"**) has loaned to Borrower, and Borrower has borrowed from Original Lender **$805,867.34** (the **"Loan"**), such Loan being evidenced, in part, by the following instruments:

(a)     Promissory Note (the **"Original Note"**) dated May 14, 2019, executed by Borrower, payable to the order of Original Lender, in the original principal amount of $805,867.34, upon which, by agreement of Borrower and Lender after the payment on August 2, 2021 of $182,000.00, there remains unpaid a principal balance of $694,713.42, and upon which interest has been paid as of the date hereof.

(b)     Deed of Trust (the **"Original Deed of Trust"**) of even date with the Note, executed by Borrower in favor of Salima Umatiya, Trustee, and Original Lender, as "Beneficiary," and being recorded under County Clerk's File No. RP-2019-207303 in the Real Property Records of Harris County, Texas, covering the property described as **ALL THAT CERTAIN TRACT OF LAND OUT OF THE NORTHWEST PORTION OF THE ORIGINAL TEN ACRE LOT FORTY-ONE (41) OF THE SUBDIVISION OF GREAT LOT FORTY-EIGHT (48) OF THE OBEDIENCE SMITH SURVEY IN THE CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SOUTH ONE-HALF OF A 100 BY 135 FOOT TRACT CONVEYED BY TWO**

1

2419_Shepherd-Huldy_Fourth Modification 2023.07.20

DEEDS FROM SALLIE A. MORGAN AND WIFE, AND RECORDED IN VOLUME 533, PAGE 582 AND VOLUME 615, PAGE 136, OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES (the "**Property**");

      (c)    Guaranty Agreement (the "**Guaranty Agreement**") dated effective as of August 2, 2021, executed by ALI CHOUDHRI (the "**Guarantor**");

    WHEREAS, The Note and the Deed of Trust were assigned to Lender under Assignment filed for record in the Real Property Records of the HARRIS County, Texas, under Clerk's File No. RP-2021-332073;

    WHEREAS, after the Original Note was accelerated, the Original Note, the Original Deed of Trust and all other documents, agreements and instruments executed in connection with or as security for the Original Note were modified by that certain Reinstatement and Modification Agreement (the "**First Extension Agreement**") dated effective August 2, 2021, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2021-454560 in the Real Property Records of HARRIS County, Texas, as further modified by that certain Second Modification and Extension Agreement (the "**Second Extension Agreement**") dated effective February 2, 2022, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2022-69743 in the Real Property Records of HARRIS County, Texas, and as further modified by that certain Third Modification and Extension Agreement (the "**Third Extension Agreement**") dated effective January 31, 2023, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2023-45412 in the Real Property Records of HARRIS County, Texas; hereinafter the Original Note and the Original Deed of Trust, as modified by the First Extension Agreement, Second Extension Agreement, and Third Extension Agreement, are called the "**Note**" and the "**Deed of Trust**", respectively);

    WHEREAS, the Note, the Deed of Trust, the Guaranty Agreement and each and every other agreement, document and instrument executed or to be executed for the benefit of Lender in connection with the Loan (collectively, the "**Loan Documents**") are hereby incorporated by this reference for all purposes to the same extent as if set out herein verbatim; and

    WHEREAS, Borrower and Lender desire to amend and modify the Loan Documents and to continue and carry forward all liens and security interests securing the Note.

    NOW, THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable considerations, the receipt and legal sufficiency of which are hereby acknowledged, and in further consideration of the terms, covenants and agreements contained in the Loan Documents and this Agreement:

    (1)    <u>Modification of Note</u>. Lender and Borrower hereby agree that the Note is hereby

2

RP-2023-286652

renewed, rearranged, extended, amended and modified as follows:

      (a)    The outstanding, unpaid principal balance of the Note is $694,713.42, and Borrower hereby promises and agrees to pay said amount to Lender, together with interest thereon, all in accordance with the terms and provisions of the Note, as renewed, rearranged, extended, amended and modified by this Agreement.

      (b)    The principal balance of the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is due and payable on or before February 2, 2024.

      (c)    Accrued interest due on the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is due and payable September 2, 2023, and on the same day of each and every consecutive calendar month thereafter and at maturity; provided, however, that if the principal of the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is prepaid in whole or in part, at any time after the effective date of this Agreement, all accrued and unpaid interest with respect to such principal amount prepaid is due and payable on the date of such prepayment. Borrower shall pay Lender on demand a renewal fee in the amount designated by Lender. Such fee shall be fully earned when paid.

      (d)    Interest on the outstanding balance of the Note, as amended and modified by this Agreement, shall accrue from and after the effective date of this Agreement until maturity as above stated at the rate of fifteen percent (15.0%) per annum. All payments of interest shall be computed on the per annum basis of a year of 360 days and for the actual number of days elapsed unless such calculation would result in a usurious rate, in which case interest shall be calculated on the per annum basis of a year of 365 or 366 days, as the case may be.

      (e)    All past due principal and interest shall bear interest until paid at the maximum rate of nonusurious interest allowed by law as of the date hereof or as may hereafter be in effect from time to time, provided that if applicable law does not provide for a maximum nonusurious rate of interest, then all past due principal and interest shall bear interest until paid at the rate of eighteen percent (18.0%) per annum. Alternatively, Lender may charge and collect a late fee of five percent (5.0%) of any scheduled installment more than ten (10) days past due.

All other terms and provisions of the Note, except as expressly renewed, rearranged, extended, amended and modified by this Agreement, remain the same.

    (2)    <u>Modification of Liability</u>. Lender and Borrower hereby agree that all references to the Note in the Deed of Trust, and all other Loan Documents are hereby amended to refer to the Note, as renewed, rearranged, extended, amended and modified by this Agreement.

3

2419_Shepherd-Huldy_Fourth Modification 2023.07.20

(3)   <u>Reaffirmation of Liability</u>.  Borrower hereby reaffirms to Lender each of the representations, warranties, covenants and agreements contained in the Loan Documents, with the same force and effect as if each were separately stated herein and made as of the date hereof. Borrower hereby ratifies, affirms, reaffirms, acknowledges, confirms and agrees that the Loan Documents, as herein modified, represent the valid, binding and enforceable obligations of Borrower, and Borrower further acknowledges that there are no existing claims, defenses (personal or otherwise), or rights of setoff whatsoever with respect to any of the Loan Documents, and Borrower further acknowledges and represents that no event has occurred and no condition exists which would constitute a default under any of the Loan Documents, or this Agreement, either with or without notice or lapse of time, or both.  Lender and Borrower hereby agree that this Agreement and all of the Loan Documents are in full force and effect so that nothing herein contained shall be construed as modifying in any manner any of the Loan Documents, except as specifically modified by this Agreement.

(4)   <u>No Release of Liens</u>.  Lender and Borrower hereby agree that this Agreement modifies the Loan Documents, and in no way acts as a diminishment, impairment, release or relinquishment of the liens, powers, titles, security interests and rights ("**Liens**") securing payment of the Note, including, without limitation, the Liens created by the Deed of Trust. The Liens are hereby renewed, extended, ratified, confirmed and carried forward by Borrower in all respects, except to the extent same have previously been released of record by Lender.

(5)   <u>Borrower's Business Plan</u>.  Borrower has relied and is relying upon Borrower's expertise and business plan in all matters in connection with the Property, the Loan Documents and this Agreement.  Borrower has not relied and is not relying on Lender's expertise or business acumen in any matter in connection with the Property, the Loan Documents or this Agreement.  The relationship between Borrower and Lender is solely that of borrower and lender, and Lender has no fiduciary or other special relationship with Borrower. No term or condition of the Loan Documents or this Agreement shall be construed so as to deem the relationship between Borrower and Lender to be other than that of borrower and lender.

(6)   <u>Release of Lender</u>.  Borrower releases, acquits and forever discharges Lender, Lender's agents, servants and employees and all persons, natural or corporate, in privity with them or any of them, from any and all claims or causes of action of any kind whatsoever, at common law, statutory or otherwise, which Borrower has now or might have in the future, known or unknown, now existing or that might arise hereafter, directly or indirectly attributable to the Property, the Loan Documents, or from any transaction or matter in connection with the Loan Documents, or the Property, it being intended to release all claims of any kind or nature that Borrower might have against those hereby released whether asserted or not.

(7)   <u>Further Assurances</u>. Borrower agrees to perform any further acts and to execute and deliver any further documents that may be reasonably necessary in the opinion of Lender or Lender's counsel to carry out the provisions of this Agreement.

2419_Shepherd-Huldy_Fourth Modification 2023.07.20

(8)    <u>Entire Agreement</u>. This Agreement sets forth the entire agreement of Lender and Borrower with respect to the subject matter of this Agreement. There are no oral conditions, representations or agreements affecting this Agreement. No extension or variation in the covenants to be performed under this Agreement or in the terms of this Agreement and no release or satisfaction of this Agreement shall be binding on any party unless the same is in writing and signed by the party or an authorized officer of any corporate party. Notwithstanding anything to the contrary contained in this Agreement or inferred hereby or in any other instrument executed by Borrower or Lender or in any other action or conduct undertaken by Borrower or by Lender on or before the date hereof, the agreements, covenants and provisions contained in this Agreement shall constitute the only evidence of Lender's consent to modify the terms and provisions of the Loan Documents in the manner set forth in this Agreement. Accordingly, no express or implied consent to any further modifications of the Loan or the Loan Documents, whether any such modifications involve any of the matters contained in this Agreement or otherwise, shall be inferred or implied from Lender's execution of this Agreement unless evidenced by an express written agreement executed by Lender. Further, Lender's execution of this Agreement shall not constitute a waiver (either express or implied) of the requirement that any further modification of the Loan or any of the Loan Documents shall require the express written approval of Lender, no such approval (either express or implied) having been given as of the date hereof.

(9)    <u>Borrower's Signature</u>. The undersigned individual signing for and on behalf of Borrower represents and warrants that he or she is duly authorized and empowered to execute this Agreement; that he or she has read this Agreement and fully understands this Agreement to be a compromise, settlement and release of all claims, known or unknown, present or future, which Borrower has or may have against the parties released, arising out of the matters described; that he or she is of legal age and legally competent to execute this Agreement, and that he or she does so of his or her own free will and accord, without threat or duress, and without reliance on any representation of any kind or character not expressly set forth in this Agreement.

(10)    <u>Survival</u>. All representations, warranties, covenants and agreements of Lender and Borrower made in this Agreement shall survive the execution and delivery of this Agreement, until such time as all of the obligations of the signatories hereto shall have lapsed in accordance with their respective terms or shall have been discharged in full.

(11)    <u>Legal Fees and Expenses</u>. All reasonable costs and expenses incurred by Lender as a result of or in connection with the negotiation, preparation, performance and enforcement of this Agreement and all transactions pursuant to this Agreement shall be paid by Borrower, including, without limitation, Lender's attorneys fees and expenses.

(12)    <u>Parties Bound</u>. This Agreement is binding on and inures to the benefit of Lender, Borrower, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

2419_Shepherd-Huldy_Fourth Modification 2023.07.20

(13)     Governing Law. This Agreement is executed, delivered and performable in HARRIS County, Texas and shall be construed under and in accordance with the laws of the State of Texas and federal law.

(14)     Conflicts. In the event of any conflict between any of the terms and provisions of the Note or any of the other Loan Documents and the terms and provisions of this Agreement, the terms and provisions of this Agreement shall control.

(15)     Executed Counterparts.  This Agreement may be executed in two or more counterparts, and it shall not be necessary that the signatures of all parties hereto be contained on any one counterpart hereof; each counterpart shall be deemed an original, but all of which together shall constitute one and the same instrument.

**THIS AGREEMENT AND THE LOAN DOCUMENTS REFERENCED HEREIN FOR THE LOAN OR OTHER EXTENSION OF CREDIT DESCRIBED HEREIN REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the dates of the acknowledgments set forth below, to be effective for all purposes, however, as of the date first above written.

**BORROWER:**

**SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company**

By: _____

   Ali Choudhri, as sole Member of borrower and as sole member of S H E P H E R D - H U L D Y DEVELOPMENT II, LLC, a Texas limited liability company, Manager

**LENDER:**

**GREENBERG FINANCE, LLC,**
a Texas limited liability company

By: _____
   David Greenberg, Manager

6

RP-2023-286652

THE STATE OF TEXAS   §
§
COUNTY OF HARRIS   §

    This instrument was acknowledged before me on the 28 day of July , 2023, by Ali Choudhri, as sole Member of Borrower and as sole member of **SHEPHERD-HULDY DEVELOPMENT II, LLC**, a Texas limited liability company, Manager of **SHEPHERD-HULDY DEVELOPMENT I, LLC**, a Texas limited liability company, for an on behalf of said limited liability company.



Notary Public, State of Texas

THE STATE OF TEXAS   §
§
COUNTY OF HARRIS   §

    This instrument was acknowledged before me on the 28th day of July , 2023, by David Greenberg, Manager of **GREENBERG FINANCE, LLC**, a Texas limited liability company, for and on behalf of said limited liability company.



Notary Public, State of Texas

## GUARANTOR'S CONSENT

    The undersigned, being the guarantor of the Loan, hereby: (i) consents and agrees to all of the terms and provisions of the foregoing Agreement; (ii) agrees that his guaranty of the Loan, as evidenced by his Guaranty Agreement, remains in full force and effect securing the payment of the Loan, as renewed, rearranged, extended, amended and modified by the foregoing Agreement; (iii) agrees that his Guaranty Agreement is the valid, binding and enforceable obligations of each of the undersigned; and (iv) reaffirms each representation, warranty, covenant, agreement and obligation contained in or arising under his Guaranty Agreement and the other Loan Documents as if each were separately stated herein and made as of the date hereof.

**ALI CHOUDHRI**

2419_Shepherd-Huldy_Fourth Modification 2023.07.20

THE STATE OF TEXAS      §
                        §
COUNTY OF HARRIS        §

     This instrument was acknowledged before me on the __20__ day of __July__, 2023, by **ALI CHOUDHRI.**



Notary Public, State of Texas

Return to:

Greenberg Finance, LLC
5959 Richmond Avenue, Suite 440
Houston, Texas 77057
Attn: Note Department

RP-2023-286652

2419_Shepherd-Huldy_Fourth Modification 2023.07.20

### Exhibit "A"
**Property Description**

All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight (48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten-acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, SAVE AND EXCEPT the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

Omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States or (b) relates to the handicap but does not discriminate against handicapped persons.

RP-2023-286652

RP-2023-286652

# Pages 10

07/31/2023 11:37 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees   $50.00

RP-2023-286652

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

RP-2024-43834
02/07/2024   ER   $61.00

Exhibit G

## FIFTH MODIFICATION AND EXTENSION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS     §
                                 §
COUNTY OF HARRIS     §

This FIFTH MODIFICATION AND EXTENSION AGREEMENT ("**Agreement**") is executed effective the 2nd day of February 2024, by and between **SHEPHERD-HULDY DEVELOPMENT I, LLC**, a Texas limited liability company ("**Borrower**"), whose address for notice hereunder is 1001 West Loop South, Suite 700, Houston, Texas 77027, and **GREENBERG FINANCE, LLC**, a Texas limited liability company ("**Lender**"), with address of 5959 Richmond Avenue, Suite 440, Houston, Texas 77057;

### W I T N E S S E T H :

WHEREAS, GALOOSTIAN FAMILY LIVING TRUST ("**Original Lender**") has loaned to Borrower, and Borrower has borrowed from Original Lender **$805,867.34** (the "**Loan**"), such Loan being evidenced, in part, by the following instruments:

    (a)     Promissory Note (the "**Original Note**") dated May 14, 2019, executed by Borrower, payable to the order of Original Lender, in the original principal amount of $805,867.34, upon which, by agreement of Borrower and Lender after the payment on August 2, 2021 of $182,000.00, there remains unpaid a principal balance of $694,713.42, and upon which interest has been paid as of the date hereof.

    (b)     Deed of Trust (the "**Original Deed of Trust**") of even date with the Note, executed by Borrower in favor of Salima Umatiya, Trustee, and Original Lender, as "Beneficiary," and being recorded under County Clerk's File No. RP-2019-207303 in the Real Property Records of Harris County, Texas, covering the property described as **ALL THAT CERTAIN TRACT OF LAND OUT OF THE NORTHWEST PORTION OF THE ORIGINAL TEN ACRE LOT FORTY-ONE (41) OF THE SUBDIVISION OF GREAT LOT FORTY-EIGHT (48) OF THE OBEDIENCE SMITH SURVEY IN THE CITY OF HOUSTON, HARRIS COUNTY, TEXAS, BEING THE SOUTH ONE-HALF OF A 100 BY 135 FOOT TRACT CONVEYED BY TWO**

RP-2024-43834

1

DEEDS FROM SALLIE A. MORGAN AND WIFE, AND RECORDED IN VOLUME 533, PAGE 582 AND VOLUME 615, PAGE 136, OF THE DEED RECORDS OF HARRIS COUNTY, TEXAS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES (the "Property");

(c)     Guaranty Agreement (the "**Guaranty Agreement**") dated effective as of August 2, 2021, executed by ALI CHOUDHRI (the "**Guarantor**");

WHEREAS, The Note and the Deed of Trust were assigned to Lender under Assignment filed for record in the Real Property Records of the HARRIS County, Texas, under Clerk's File No. RP-2021-332073;

WHEREAS, after the Original Note was accelerated, the Original Note, the Original Deed of Trust and all other documents, agreements and instruments executed in connection with or as security for the Original Note were modified by that certain Reinstatement and Modification Agreement (the "**First Extension Agreement**") dated effective August 2, 2021, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2021-454560 in the Real Property Records of HARRIS County, Texas, as further modified by that certain Second Modification and Extension Agreement (the "**Second Extension Agreement**") dated effective February 2, 2022, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2022-69743 in the Real Property Records of HARRIS County, Texas, as further modified by that certain Third Modification and Extension Agreement (the "**Third Extension Agreement**") dated effective January 31, 2023, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2023-45412 in the Real Property Records of HARRIS County, Texas, and as further modified by that certain Fourth Modification and Extension Agreement (the "**Fourth Extension Agreement**") dated effective August 2, 2023, executed by and between Borrower and Lender, recorded under County Clerk's File No. RP-2023-344303 in the Real Property Records of HARRIS County, Texas; hereinafter the Original Note and the Original Deed of Trust, as modified by the First Extension Agreement, Second Extension Agreement, Third Extension Agreement, and Fourth Extension Agreement, are called the "**Note**" and the "**Deed of Trust**", respectively);

WHEREAS, the Note, the Deed of Trust, the Guaranty Agreement and each and every other agreement, document and instrument executed or to be executed for the benefit of Lender in connection with the Loan (collectively, the "**Loan Documents**") are hereby incorporated by this reference for all purposes to the same extent as if set out herein verbatim; and

WHEREAS, Borrower and Lender desire to amend and modify the Loan Documents and to continue and carry forward all liens and security interests securing the Note.

NOW, THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable considerations, the receipt and legal sufficiency of which are hereby acknowledged, and in further consideration of the terms, covenants and agreements contained in the Loan Documents and this Agreement:

2

(1)     <u>Modification of Note</u>. Lender and Borrower hereby agree that the Note is hereby renewed, rearranged, extended, amended and modified as follows:

   (a)     The outstanding, unpaid principal balance of the Note is $694,713.42, and Borrower hereby promises and agrees to pay said amount to Lender, together with interest thereon, all in accordance with the terms and provisions of the Note, as renewed, rearranged, extended, amended and modified by this Agreement.

   (b)     The principal balance of the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is due and payable on or before August 2, 2024.

   (c)     Accrued interest due on the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is due and payable February 2, 2024, and on the same day of each and every consecutive calendar month thereafter and at maturity; provided, however, that if the principal of the Note, as renewed, rearranged, extended, amended and modified by this Agreement, is prepaid in whole or in part, at any time after the effective date of this Agreement, all accrued and unpaid interest with respect to such principal amount prepaid is due and payable on the date of such prepayment. Borrower shall pay Lender on demand a renewal fee in the amount designated by Lender. Such fee shall be fully earned when paid.

   (d)     Interest on the outstanding balance of the Note, as amended and modified by this Agreement, shall accrue from and after the effective date of this Agreement until maturity as above stated at the rate of fifteen percent (15.0%) per annum.  All payments of interest shall be computed on the per annum basis of a year of 360 days and for the actual number of days elapsed unless such calculation would result in a usurious rate, in which case interest shall be calculated on the per annum basis of a year of 365 or 366 days, as the case may be.

   (e)     All past due principal and interest shall bear interest until paid at the maximum rate of nonusurious interest allowed by law as of the date hereof or as may hereafter be in effect from time to time, provided that if applicable law does not provide for a maximum nonusurious rate of interest, then all past due principal and interest shall bear interest until paid at the rate of eighteen percent (18.0%) per annum.  Alternatively, Lender may charge and collect a late fee of five percent (5.0%) of any scheduled installment more than ten (10) days past due.

All other terms and provisions of the Note, except as expressly renewed, rearranged, extended, amended and modified by this Agreement, remain the same.

(2)     <u>Modification of Liability</u>. Lender and Borrower hereby agree that all references to

3

the Note in the Deed of Trust, and all other Loan Documents are hereby amended to refer to the Note, as renewed, rearranged, extended, amended and modified by this Agreement.

(3)    <u>Reaffirmation of Liability</u>.  Borrower hereby reaffirms to Lender each of the representations, warranties, covenants and agreements contained in the Loan Documents, with the same force and effect as if each were separately stated herein and made as of the date hereof. Borrower hereby ratifies, affirms, reaffirms, acknowledges, confirms and agrees that the Loan Documents, as herein modified, represent the valid, binding and enforceable obligations of Borrower, and Borrower further acknowledges that there are no existing claims, defenses (personal or otherwise), or rights of setoff whatsoever with respect to any of the Loan Documents, and Borrower further acknowledges and represents that no event has occurred and no condition exists which would constitute a default under any of the Loan Documents, or this Agreement, either with or without notice or lapse of time, or both. Lender and Borrower hereby agree that this Agreement and all of the Loan Documents are in full force and effect so that nothing herein contained shall be construed as modifying in any manner any of the Loan Documents, except as specifically modified by this Agreement.

(4)    <u>No Release of Liens</u>.  Lender and Borrower hereby agree that this Agreement modifies the Loan Documents, and in no way acts as a diminishment, impairment, release or relinquishment of the liens, powers, titles, security interests and rights ("**Liens**") securing payment of the Note, including, without limitation, the Liens created by the Deed of Trust. The Liens are hereby renewed, extended, ratified, confirmed and carried forward by Borrower in all respects, except to the extent same have previously been released of record by Lender.

(5)    <u>Borrower's Business Plan</u>.  Borrower has relied and is relying upon Borrower's expertise and business plan in all matters in connection with the Property, the Loan Documents and this Agreement.  Borrower has not relied and is not relying on Lender's expertise or business acumen in any matter in connection with the Property, the Loan Documents or this Agreement.  The relationship between Borrower and Lender is solely that of borrower and lender, and Lender has no fiduciary or other special relationship with Borrower. No term or condition of the Loan Documents or this Agreement shall be construed so as to deem the relationship between Borrower and Lender to be other than that of borrower and lender.

(6)    <u>Release of Lender</u>.  Borrower releases, acquits and forever discharges Lender, Lender's agents, servants and employees and all persons, natural or corporate, in privity with them or any of them, from any and all claims or causes of action of any kind whatsoever, at common law, statutory or otherwise, which Borrower has now or might have in the future, known or unknown, now existing or that might arise hereafter, directly or indirectly attributable to the Property, the Loan Documents, or from any transaction or matter in connection with the Loan Documents, or the Property, it being intended to release all claims of any kind or nature that Borrower might have against those hereby released whether asserted or not.

(7)    <u>Further Assurances</u>. Borrower agrees to perform any further acts and to execute and deliver any further documents that may be reasonably necessary in the opinion of Lender or Lender's

4

2419_Shepherd-Huldy_Fifth Modification 2024.01.23B

counsel to carry out the provisions of this Agreement.

(8)   Entire Agreement. This Agreement sets forth the entire agreement of Lender and Borrower with respect to the subject matter of this Agreement. There are no oral conditions, representations or agreements affecting this Agreement. No extension or variation in the covenants to be performed under this Agreement or in the terms of this Agreement and no release or satisfaction of this Agreement shall be binding on any party unless the same is in writing and signed by the party or an authorized officer of any corporate party. Notwithstanding anything to the contrary contained in this Agreement or inferred hereby or in any other instrument executed by Borrower or Lender or in any other action or conduct undertaken by Borrower or by Lender on or before the date hereof, the agreements, covenants and provisions contained in this Agreement shall constitute the only evidence of Lender's consent to modify the terms and provisions of the Loan Documents in the manner set forth in this Agreement. Accordingly, no express or implied consent to any further modifications of the Loan or the Loan Documents, whether any such modifications involve any of the matters contained in this Agreement or otherwise, shall be inferred or implied from Lender's execution of this Agreement unless evidenced by an express written agreement executed by Lender. Further, Lender's execution of this Agreement shall not constitute a waiver (either express or implied) of the requirement that any further modification of the Loan or any of the Loan Documents shall require the express written approval of Lender, no such approval (either express or implied) having been given as of the date hereof.

(9)   Borrower's Signature. The undersigned individual signing for and on behalf of Borrower represents and warrants that he or she is duly authorized and empowered to execute this Agreement; that he or she has read this Agreement and fully understands this Agreement to be a compromise, settlement and release of all claims, known or unknown, present or future, which Borrower has or may have against the parties released, arising out of the matters described; that he or she is of legal age and legally competent to execute this Agreement, and that he or she does so of his or her own free will and accord, without threat or duress, and without reliance on any representation of any kind or character not expressly set forth in this Agreement.

(10)   Survival. All representations, warranties, covenants and agreements of Lender and Borrower made in this Agreement shall survive the execution and delivery of this Agreement, until such time as all of the obligations of the signatories hereto shall have lapsed in accordance with their respective terms or shall have been discharged in full.

(11)   Legal Fees and Expenses. All reasonable costs and expenses incurred by Lender as a result of or in connection with the negotiation, preparation, performance and enforcement of this Agreement and all transactions pursuant to this Agreement shall be paid by Borrower, including, without limitation, Lender's attorneys fees and expenses.

(12)   Parties Bound. This Agreement is binding on and inures to the benefit of Lender, Borrower, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

(13)   <u>Governing Law</u>. This Agreement is executed, delivered and performable in HARRIS County, Texas and shall be construed under and in accordance with the laws of the State of Texas and federal law.

(14)   <u>Conflicts</u>. In the event of any conflict between any of the terms and provisions of the Note or any of the other Loan Documents and the terms and provisions of this Agreement, the terms and provisions of this Agreement shall control.

(15)   <u>Executed Counterparts</u>.  This Agreement may be executed in two or more counterparts, and it shall not be necessary that the signatures of all parties hereto be contained on any one counterpart hereof; each counterpart shall be deemed an original, but all of which together shall constitute one and the same instrument.

**THIS AGREEMENT AND THE LOAN DOCUMENTS REFERENCED HEREIN FOR THE LOAN OR OTHER EXTENSION OF CREDIT DESCRIBED HEREIN REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the dates of the acknowledgments set forth below, to be effective for all purposes, however, as of the date first above written.

**BORROWER:**

**SHEPHERD-HULDY DEVELOPMENT I, LLC, a Texas limited liability company**

By: _____

      Ali Choudhri, as sole Member of borrower and as sole member of S HEPHERD - HULDY DEVELOPMENT II, LLC, a Texas limited liability company, Manager

**LENDER:**

RP-2024-43834

**GREENBERG FINANCE, LLC,**
a Texas limited liability company

By: _____
      David Greenberg, Manager

RP-2024-43834

2419_Shepherd-Huldy_Fifth Modification 2024.01.23B

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

    This instrument was acknowledged before me on the 7ᵀᴴ day of February, 2024, by Ali Choudhri, as sole Member of Borrower and as sole member of **SHEPHERD-HULDY DEVELOPMENT II, LLC**, a Texas limited liability company, Manager of **SHEPHERD-HULDY DEVELOPMENT I, LLC**, a Texas limited liability company, for an on behalf of said limited liability company.



SCARLET R. MACGEORGE
My Notary ID # 124519627
Expires April 9, 2027

_____
Notary Public, State of Texas

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

    This instrument was acknowledged before me on the 7th day of February, 2024, by David Greenberg, Manager of **GREENBERG FINANCE, LLC**, a Texas limited liability company, for and on behalf of said limited liability company.



ANNETTE WIERSCHEM
Notary Public, State of Texas
Comm. Expires 01-07-2026
Notary ID 464907-2

_____
Notary Public, State of Texas

## **GUARANTOR'S CONSENT**

    The undersigned, being the guarantor of the Loan, hereby: (i) consents and agrees to all of the terms and provisions of the foregoing Agreement; (ii) agrees that his guaranty of the Loan, as evidenced by his Guaranty Agreement, remains in full force and effect securing the payment of the Loan, as renewed, rearranged, extended, amended and modified by the foregoing Agreement; (iii) agrees that his Guaranty Agreement is the valid, binding and enforceable obligations of each of the undersigned; and (iv) reaffirms each representation, warranty, covenant, agreement and obligation contained in or arising under his Guaranty Agreement and the other Loan Documents as if each were separately stated herein and made as of the date hereof.

_____
**ALI CHOUDHRI**

8

2419_Shepherd-Huldy_Fifth Modification 2024.01.23B

RP-2024-43834

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

    This instrument was acknowledged before me on the ___7th___ day of ___February___, 2024, by **ALI CHOUDHRI.**



SCARLET R. MACGEORGE
My Notary ID # 124519627
Expires April 9, 2027

_____
Notary Public, State of Texas

<u>Return to:</u>

Greenberg Finance, LLC
5959 Richmond Avenue, Suite 440
Houston, Texas 77057
Attn: Note Department

RP-2024-43834

9

2419_Shepherd-Huldy_Fifth Modification 2024.01.23B

## Exhibit "A"
**Property Description**

All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight (48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten-acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, SAVE AND EXCEPT the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

Omitting any covenant or restriction based on race, color, religion, sex, handicap, familial status or national origin unless and only to the extent that said covenant (a) is exempt under Chapter 42, Section 3607 of the United States or (b) relates to the handicap but does not discriminate against handicapped persons.

10

RP-2024-43834

# Pages 11

02/07/2024 04:00 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees   $61.00

RP-2024-43834

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

Exhibit H

## TEXAS REALTORS

# COMMERCIAL REAL ESTATE LISTING AGREEMENT
# EXCLUSIVE RIGHT TO SELL

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2022

**1. PARTIES:** The parties to this agreement (this Listing) are:

Seller: **Shepherd Huldy Development I, LLC**

Address: **1001 W Loop S, Suite 700**
City, State, Zip: **Houston, Texas 77027**
Phone: **(281)630-6627**   Mobile: _____   Fax or E-Mail: **ali@jetallcompanies.com**

Broker: **Greenberg & Company**

Address: **5959 Richmond Ave Ste 440**
City, State, Zip: **Houston, TX  77057**
Phone: **(713)778-0900**   Mobile: _____   Fax or E-Mail: **david@greenbergcompany.com**

Seller appoints Broker as Seller's sole and exclusive real estate agent and grants to Broker the exclusive right to sell the Property.

**2. PROPERTY:**

A. "Property" means the following real property in Texas:
Address: **2419-2421-2503 S Shepherd - 2424-2502 Huldy**
City: **Houton**   County: **Harris**   Zip: **77019**
Legal Description *(Identify exhibit if described on attachment)*: **Tracts 5 & 5A & 5B & 7B, Block 1, Morgan and Lot E & Lot F Shepherd Lawn, Houston, Harris County, Texas**

B. Except as otherwise provided in this Listing, Broker is to market the Property together with:
  (1) all buildings, improvements, and fixtures;
  (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, easements and rights-of-way;
  (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
  (4) Seller's interest in all licenses and permits related to the Property;
  (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
  (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
  (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except: _____

*(Describe any exceptions, reservations, or restrictions in Special Provisions or an addendum. If the Property is a condominium, attach Condominium Addendum to Listing (TXR-1401).)*

(TXR-1301) 07-8-22     Initialed for Identification by Seller _____ , _____ and Broker/Associate _____     Page 1 of 10

Commercial Listing concerning _____ **2419-2421-2503 S Shepherd - 2424-2502 Huldy**
_____ **Houton,  77019** _____

### 3. LISTING PRICE:

  A. Seller instructs Broker to market the Property at the following sales price: $ **$250.00 square Foot**
    (Listing Price).

  B. Seller agrees to sell the Property for the Listing Price or any other price acceptable to Seller. Seller will pay all typical closing costs charged to sellers of commercial real estate in Texas (seller's typical closing costs are those set forth in the commercial contract forms published by Texas REALTORS®) except _____
_____ .

### 4. TERM:

  A. This Listing begins on _____ **January 30, 2023** _____ and ends at 11:59 p.m. on _____ **July 30, 2023** _____ . Seller may terminate this Listing on notice to Broker any time after _____ **July 30, 2023** _____ .

  B. If Seller enters into a binding written contract to sell the Property before the date this Listing begins and the contract is binding on the date this Listing begins, this Listing will not commence and will be void.

### 5. BROKER'S FEE:

  A. <u>Fee</u>: When earned and payable, Seller will pay Broker a fee of:

    [X] (1) _____ **6.000** _____ % of the sales price.
    [ ] (2) _____
_____
_____
_____

  B. <u>Earned</u>: Broker's fee is earned when any one of the following occurs during this Listing:
    (1) Seller sells, exchanges, agrees to sell, or agrees to exchange all or part of the Property to anyone at any price on any terms;
    (2) Broker individually or in cooperation with another broker procures a buyer ready, willing, and able to buy all or part of the Property at the Listing Price or at any other price acceptable to Seller;
    (3) Seller grants or agrees to grant to another person an option to purchase all or part of the Property;
    (4) Seller transfers or agrees to transfer all or part of Seller's interest (stock or shares) in any entity that holds title to all or part of the Property for the purpose of conveying all or part of the Property to another person; or
    (5) Seller breaches this Listing.

  C. <u>Payable</u>: Once earned, Broker's fee is payable either during this Listing or after it ends at the earlier of:
    (1) the closing and funding of any sale or exchange of all or part of the Property;
    (2) Seller's refusal to sell the Property after Broker's Fee has been earned;
    (3) Seller's breach of this Listing; or
    (4) at such time as otherwise set forth in this Listing.

  Broker's fee is <u>not</u> payable if a sale of the Property does not close or fund as a result of: (i) Seller's failure, without fault of Seller, to deliver to a buyer a deed or a title policy as required by the contract to sell; (ii) loss of ownership due to foreclosure or other legal proceeding; or (iii) Seller's failure to restore the Property, as a result of a casualty loss, to its previous condition by the closing date set forth in a contract for the sale of the Property.

{TXR-1301} 07-8-22    Initialed for Identification by Seller _____ , _____ and Broker/Associate _____    Page 2 of 10

Greenberg & Company, 5959 Richmond Ave Ste 440 Houston TX 77057    Phone: 7137780909    Fax: 7137847845    2419-2421-2503 S
David Greenberg    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Commercial Listing concerning _____
2419-2421-2503 S Shepherd - 2424-2502 Huldy
Houston,  77019

D. <u>Other Fees</u>:

(1) <u>Lease of Property</u>: If, during this Listing, Broker procures a tenant to lease all or part of the Property and Seller agrees to lease all or part of the Property to the tenant, Seller will pay Broker at the time the lease is executed the fee described below. If, during the term of the lease, the tenant agrees to purchase all or part of the Property, Seller will pay Broker the fee specified in Paragraph 5A in addition to the amount described below.

☐ (a) _____ % of all base rents to be paid over the term of the lease and the same  percentage of the following items to be paid over the term of the lease: ☐ expense reimbursements; and . _____ .

☐ (b) _____
_____
_____
_____ .

(2) <u>Renewals, Extensions, or Expansions of Property</u>: If, during this Listing or after it ends, Seller renews, extends, or expands the lease, Seller will pay Broker, at the time the renewal, extension, or expansion becomes effective, a fee of:

☐ (a) _____ % of all base rents to be paid over the term of the renewal or extension and the same percentage of the following items to be paid over the same term: ☐ expense reimbursements based on initial amounts _____ ;

☐ (b) _____ % of all base rents to be paid over the term of the expansion and the same percentage of the following items to be paid over the same term: ☐ expense reimbursements based on initial amounts _____ ; or

☐ (c) _____ .

In addition to their ordinary meanings, "extensions", "renewals," and "expansions" include new leases for more, less, or different space in the building or complex in which the property is located.

(3) <u>Breach by Buyer Under Contract</u>: If Seller collects earnest money, the sales price, or damages by suit, compromise, settlement or otherwise from a buyer who breaches a contract for the sale of all or part of the Property entered into during this Listing, Seller will pay Broker, after deducting attorney's fees and collection expenses, an amount equal to the lesser of one-half of the amount collected after deductions or the amount of the Broker's Fee stated in Paragraph 5A. Any amount paid under this Paragraph 5D(3) is in addition to any amount that Broker may be entitled to receive for subsequently selling the Property.

(4) <u>Service Providers</u>: If Broker refers Seller or a prospective buyer or tenant to a service provider (e.g., mover, cable company, telecommunications provider, utility, or contractor) Broker may receive a fee from the service provider for the referral. Any referral fee Broker receives under this Paragraph 5D(4) is in addition to any other compensation Broker may receive under this Listing.

(5) <u>Other Fees and/or Reimbursable Expenses</u>: _____
_____
_____
_____ .

2419-2421-2503 S Shepherd - 2424-2502 Huldy
Houton,  77019

Commercial Listing concerning

E. <u>Protection Period</u>:

(1) "Protection period" means that time starting the day after this Listing ends and continuing for _____ days.

(2) Not later than 10 days after this Listing ends Broker may send Seller written notice specifying the names of persons whose attention Broker has called to the Property during this Listing. If Seller agrees to sell or lease all or part of the Property during the protection period to a person named in the notice or to a relative or business associate of a person named in the notice, Seller will pay Broker, upon the closing of the sale or upon execution of the lease, the amount Broker would have been entitled to receive if this Listing were still in effect.

(3) "Person" means any person in any capacity whether an individual or entity. "Sell" means any transfer of any interest in the Property whether by agreement or option.

(4) This Paragraph 5E survives termination of this Listing.

F. <u>County</u>: All amounts payable to Broker are to be paid in cash in _____ **Harris** _____ County, Texas.

G. <u>Escrow Authorization</u>: Seller authorizes, and Broker may so instruct, any escrow or closing agent authorized to close a transaction for the purchase or acquisition of the Property to collect and disburse to Broker all amounts payable to Broker under this Listing.

*NOTICE: Under Chapter 62, Texas Property Code, Broker is entitled to claim a lien against the Property to secure payment of an earned commission.*

6. **EXCLUSIONS:**

A. Under a prior listing agreement Seller is obligated to pay another Texas licensed broker a fee if Seller sells or leases all or part of the Property before _____ to any of the following persons: _____
_____ (named exclusions).

B. If Seller enters into a contract to sell or lease all or part of the Property to a named exclusion before the date specified in Paragraph 6A, Seller will not be obligated to pay Broker the fees under Paragraph 5 of this Listing, but Seller will pay Broker, upon the closing of the sale or upon execution of the lease, a fee equal to:
   (1) _____ % of the sales price if Seller sells the Property;
   (2) _____ % of all base rents to be paid over the term of the lease if Seller leases the Property and the same percentage of the following items to be paid over the term of the lease: ☐ expense reimbursements; ☐ _____ ; and
   (3) _____
   _____ .

C. If Seller enters into a contract to sell or lease all or part of the Property to a named exclusion, Broker ☐ will ☐ will not assist Seller in negotiating and closing the sale or lease to the named exclusion.

7. **ACCESS TO THE PROPERTY:** Authorizing access to the Property means giving permission to another person to enter the Property, disclosing security codes necessary to enter the Property to such person, and lending a key to the Property to such person. To facilitate the showing and sale of the Property, Seller instructs Broker and Broker's associates to: (i) access the Property at reasonable times; (ii) authorize other brokers, inspectors, appraisers, lenders, engineers, surveyors, and repair persons to enter the Property at reasonable times; and (iii) duplicate keys to facilitate convenient and efficient showings.

(TXR-1301) 07-8-22       Initialed for Identification by Seller _____ , _____ and Broker/Associate _____                    Page 4 of 10

Greenberg & Company, 5929 Richmond Ave Ste 430 Houston TX 77057                    Phone: 7137589960          Fax: 7137847445       2419-2421-2503 S
David Greenberg                         Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

Commercial Listing concerning

8. **COOPERATION WITH OTHER BROKERS:** Broker will allow other brokers to show the Property to prospective buyers. If the other broker procures a buyer who purchases the Property, Broker will offer to pay the other broker a portion of Broker's fee under Paragraph 5.

9. **INTERMEDIARY:** *(Check A or B only.)*

[X] A. <u>Intermediary Status</u>: Broker may show the Property to interested prospective buyers or tenants who Broker represents. If a prospect who Broker represents offers to buy or lease the Property, Seller authorizes Broker to act as an intermediary and Broker will notify Seller that Broker will service the parties in accordance with one of the following alternatives.

   (1) If a prospect who Broker represents is serviced by an associate other than the associate servicing Seller under this Listing, Broker may notify Seller that Broker will: (a) appoint the associate then servicing Seller to communicate with, carry out instructions of, and provide opinions and advice during negotiations to Seller; and (b) appoint the associate then servicing the prospect to the prospect for the same purpose.

   (2) If a prospect who Broker represents is serviced by the same associate who is servicing Seller, Broker may notify Seller that Broker will: (a) appoint another associate to communicate with, carry out instructions of, and provide opinions and advice during negotiations to the prospect; and (b) appoint the associate servicing the Seller under this Listing to the Seller for the same purpose.

   (3) Broker may notify Seller that Broker will make no appointments as described under this Paragraph 9A and, in such an event, the associate servicing the parties will act solely as Broker's intermediary representative, who may facilitate the transaction but will not render opinions or advice during negotiations to either party.

[ ] B. <u>No Intermediary Status</u>: Seller agrees that Broker will not show the Property to prospects who Broker represents.

Notice:   **If Broker acts as an intermediary under Paragraph 9A, Broker and Broker's associates:**
   ♦ **may not disclose to the prospect that Seller will accept a price less than the asking price unless otherwise instructed in a separate writing by Seller;**
   ♦ **may not disclose to Seller that the prospect will pay a price greater than the price submitted in a written offer to Seller unless otherwise instructed in a separate writing by the prospect;**
   ♦ **may not disclose any confidential information or any information Seller or the prospect specifically instructs Broker in writing not to disclose unless otherwise instructed in a separate writing by the respective party or required to disclose the information by the Real Estate License Act or a court order or if the information materially relates to the condition of the property;**
   ♦ **may not treat a party to the transaction dishonestly; and**
   ♦ **may not violate the Real Estate License Act.**

10. **CONFIDENTIAL INFORMATION:** During this Listing or after it ends, Broker may not knowingly disclose information obtained in confidence from Seller except as authorized by Seller or required by law. Broker may not disclose to Seller any information obtained in confidence regarding any other person Broker represents or may have represented except as required by law.

11. **BROKER'S AUTHORITY:**

   A. Broker will use reasonable efforts and act diligently to market the Property for sale, procure a buyer, and negotiate the sale of the Property.

(TXR-1301) 07-8-22        Initialed for Identification by Seller _____ , _____ and Broker/Associate _____        Page 5 of 10

Commercial Listing concerning _____
2419-2421-2503 S Shepherd - 2424-2502 Huldy
Houton,   77019

B. In addition to other authority granted by this Listing, Broker may:
(1) advertise the Property by means and methods as Broker determines is appropriate in any media, including but not limited to:
(a) placing a "For Sale" sign or similar marketing sign on the Property; and
(b) creating and placing information about the Property (including interior and exterior photographs or videos):
(i) on the Internet on Broker's website and on other websites as Broker determines;
(ii) in any advertisements whether in print or electronic media; and
(iii) into listing services that may publicize the information on the Internet or by other means;
(2) reproduce, display, and distribute information about the Property, including the information described under Paragraph 11B(1), for the purposes of marketing the Property;
(3) furnish comparative marketing and sales information about other properties to prospects;
(4) disseminate information about the Property to other brokers and prospects, including applicable disclosures, notices, or other information that Seller is required to make under law or a contract;
(5) obtain information from any holder of any note secured by a lien on the Property;
(6) accept, in trust, any earnest money, option fee, security deposit, or other money related to the purchase or lease of the Property and deliver such money for deposit in accordance with a contract for the sale or lease of the Property;
(7) disclose the sales price and terms of a sale or a lease to other brokers, appraisers, other real estate professionals, and any listing services into which information about the Property is placed;
(8) place information about this Listing and a transaction for the Property on an electronic platform (an electronic platform is typically an Internet-based system where professionals related to the transaction, such as title companies and lenders, may receive, view, and input information); and
(9) advertise that Broker "sold" or "leased" the Property after the closing of a sale or execution of a lease of the Property in which Broker was involved.

NOTICE: Any submission of information to a listing service must be made in accordance with listing service's rules.

C. Broker is not authorized to execute any document in the name of or on behalf of Seller concerning the Property.

D. Photographs, videos, and compilations of information submitted to a listing service are the property of the listing service for all purposes.

## 12. REPRESENTATIONS:

A. Except as provided otherwise in this Listing, Seller represents that:
(1) Seller has fee simple title to and peaceable possession of the Property and all its improvements and fixtures thereon, unless rented, and the legal capacity to convey the Property;
(2) Seller is not bound by a listing agreement with another broker for the sale, exchange, or lease of the Property that is or will be in effect during this Listing;
(3) no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;
(4) there are no delinquencies or defaults under any deed of trust, mortgage, or other encumbrance on the Property;
(5) the Property is not subject to the jurisdiction of any court;
(6) Seller owns sufficient intellectual property rights in any materials which Seller provides to Broker related to the Property (for example, brochures, photographs, drawings, or articles) to permit Broker to reproduce and distribute such materials for the purposes of marketing the Property or for other purposes related to this agreement; and
(7) all information relating to the Property Seller provides to Broker is true and correct to the best of Seller's knowledge.

(TXR-1301) 07-8-22       Initialed for Identification by Seller _____, and Broker/Associate _____       Page 6 of 10

Greenberg & Company, 5959 Richmond Ave Ste 440 Houston TX 77057                     Phone: 7137780940          Fax: 7137847448          2419-2421-2503 S
David Greenberg                                   Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 78201   www.lwolf.com

2419-2421-2503 S Shepherd – 2424-2502 Huldy
Houton,  77019

Commercial Listing concerning

B. Seller and Broker must disclose any known material defect in the Property to a prospective buyer. *(Check only one box.)*

☐ (1) Seller is not aware of any material defects to the Property except as stated in the attached Commercial Property Condition Statement (TXR-1408). Seller authorizes Broker to furnish prospective buyers and other brokers with a copy of the Commercial Property Condition Statement (TXR-1408).

☒ (2) Except as otherwise provided in this Listing, Seller is not aware of:
   (a) any subsurface: structures, pits, wastes, springs, or improvements;
   (b) any pending or threatened litigation, condemnation, or assessment affecting the Property;
   (c) any environmental hazards or conditions that materially affect the Property;
   (d) whether the Property is or has ever been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;
   (e) whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants) or other pollutants or contaminants of any nature now exist or have ever existed on the Property;
   (f) any wetlands, as defined by federal or state law or regulation, on the Property;
   (g) any threatened or endangered species or their habitat on the Property;
   (h) any present or past infestation of wood-destroying insects in the Property's improvements;
   (i) any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;
   (j) any material physical defects in the improvements on the Property; or
   (k) any condition on the Property that violates any law or ordinance.

   *(List any exceptions to (a)-(k) in Special Provisions or an addendum.)*

☐ C. PID: The Property is in the following Property Improvement District: _____

☐ D. Other Taxing Districts: The Property is in the following special taxing district (MUD, WCID, MMD, etc.): _____

**13. SELLER'S ADDITIONAL PROMISES:** Seller agrees to:

A. cooperate with Broker to facilitate the showing and marketing of the Property;

B. not negotiate with any prospective buyer who may contact Seller directly, but refer all prospective buyers to Broker;

C. not enter into a listing agreement with another Broker for the sale or exchange of the Property to become effective during this Listing;

D. not enter into a listing agreement for the lease of all or part of the Property with another broker to become effective during this Listing without Broker's written permission;

E. provide Broker with copies of the following, if any, relating to the Property: a current rent roll, all leases including any amendments, architectural plans and drawings, renderings, survey, a current operating statement, environmental inspection reports, engineering reports, and other relevant information that Broker may request during this Listing;

F. advise Broker of any tenants moving in or out of the Property;

G. complete any disclosures or notices required by law or a contract to sell the Property;

H. amend any applicable notices and disclosures if any material change occurs during this Listing; and

I. at Seller's expense, remove from the Property all:
   (1) "For Sale" (or similarly worded) signs other than Broker's signs;
   (2) "For Lease" (or similarly worded) signs from the Property unless the Property is listed for lease with another broker; and
   (3) "For Information" (or similarly worded) signs other than Broker's signs.

(TXR-1301) 07-8-22        Initialed for identification by Seller _____ , _____ and Broker/Associate _____        Page 7 of 10

Greenberg & Company, 5909 Richmond Ave Ste 438 Houston TX 77057                    Phone: 7137780600            Fax: 7137847445        2419-2421-2503 S
David Greenberg                              Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

**2419-2421-2503 S Shepherd - 2424-2502 Huldy**
Commercial Listing concerning _____
**Houston,  77019**

**14. LIMITATION OF LIABILITY:**

A. If the Property is or becomes vacant during this Listing, Seller must notify Seller's casualty insurance company and request a "vacancy clause" to cover the Property. Broker is not responsible for the security of the Property nor for inspecting the Property on any periodic basis.

B. Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker, including but not limited to injuries or losses caused by:
(1) other brokers, inspectors, appraisers, lenders, contractors, surveyors, engineers, and other persons who are authorized to access the Property;
(2) acts of third parties (for example, vandalism or theft);
(3) freezing or broken water pipes;
(4) a dangerous condition on the Property; and
(5) the Property's non-compliance with any law or ordinance.

C. Seller agrees to indemnify and hold Broker and Broker's associates harmless from any damages, costs, attorney's fees, and expenses:
(1) that arise from Seller's failure to disclose any material information about the Property;
(2) that are caused by Seller giving incorrect information to Broker, other brokers, or prospects;
(3) that arise from any claim for misuse of intellectual property in any materials or information that Seller provided to Broker related to the Property or this agreement; or
(4) that are otherwise caused by Seller or Seller's negligence.

**15. SPECIAL PROVISIONS:**

**16. DEFAULT:** If Seller breaches this Listing, Seller is in default and will be liable to Broker for the amount of Broker's fee specified in Paragraph 5A and any other fees Broker is entitled to receive under this Listing; Broker may also terminate this Listing and exercise any other remedy at law. If a sales price is not determinable in the event of an exchange or breach of this Listing, the Listing Price will be the sales price for the purpose of calculating Broker's fee. If Broker breaches this Listing, Broker is in default and Seller may exercise any remedy at law.

**17. MEDIATION:** The parties agree to negotiate in good faith in an effort to resolve any dispute that may arise between the parties. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the costs of mediation equally.

**18. ATTORNEY'S FEES:** If Seller or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this Listing or any transaction related to or contemplated by this Listing, such party may recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

(TXR-1301) 07-8-22       Initialed for Identification by Seller _____ , _____ and Broker/Associate _____               Page 8 of 10

Greenberg & Company, 5959 Richmond Ave Ste 449 Houston TX 77057                                          Phone: 7137780908              Fax: 7137847445              2419-2421-2503 S
David Greenberg                           Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Commercial Listing concerning _____
**2419-2421-2503 S Shepherd - 2424-2502 Huldy**
**Houton,  77019**

**19. ADDENDA:** Addenda or information that are part of this Listing are:

| | |
|---|---|
| [X] | A. Information About Brokerage Services (TXR-2501) |
| [X] | B. Property Description Exhibit identified in Paragraph 2 |
| [ ] | C. Condominium Addendum to Listing (TXR-1401) |
| [ ] | D. Commercial Property Condition Statement (TXR-1408) |
| [ ] | E. Information About On-Site Sewer Facility(TXR-1407) |
| [ ] | F. Information about Special Flood Hazard Areas (TXR-1414) |
| [ ] | G. _____ |
| [ ] | H. _____ |

**20. AGREEMENT OF THE PARTIES:**

A. <u>Entire Agreement</u>: This Listing is the entire agreement of the parties and may not be changed except by written agreement.

B. <u>Assignability</u>: Neither party may assign this Listing without the written consent of the other party.

C. <u>Binding Effect</u>: Seller's obligations to pay Broker an earned fee is binding upon Seller and Seller's heirs, administrators, executors, successors, and permitted assigns.

D. <u>Joint and Several</u>: All Sellers executing this Listing are jointly and severally liable for the performance of all its terms.

E. <u>Governing Law</u>: Texas law governs the interpretation, validity, performance, and enforcement of this Listing.

F. <u>Severability</u>: If a court finds any clause in this Listing invalid or unenforceable, the remainder of this Listing will not be affected and all other provisions of this Listing will remain valid and enforceable.

G. <u>Partial Sales or Leases</u>: If Seller sells or leases part of the Property before the date this Listing ends, this Listing will continue for the remaining part of the Property through the term of this Listing.

H. <u>Notices</u>: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail specified in Paragraph 1.

**21. ADDITIONAL NOTICES:**

A. **Broker's fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested, or maintained by Texas REALTORS®, its local affiliates, or any listing service. Broker's fees are negotiable.**

B. **The Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, or familial status. Local ordinances and the National Association of REALTORS® Code of Ethics may provide for additional protected classes (e.g., creed, status as a student, marital status, sexual orientation, or age).**

C. **If the Property contains a residential dwelling built before 1978, federal law requires the Seller to: (1) provide the buyer with the promulgated lead hazard information pamphlet (TXR-2511); and (2) disclose the presence of any known lead-based paint or lead-based paint hazards.**

(TXR-1301) 07-8-22      Initialed for Identification by Seller _____, _____ and Broker/Associate _____      Page 9 of 10

Greenberg & Company, 5959 Richmond Ave Ste 448 Houston TX 77057      Phone: 7137280900      Fax: 7137847448      2419-2421-2503 S
David Greenberg                                         Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

2419-2421-2503 S Shepherd - 2424-2502 Huldy
Houton,   77019

Commercial Listing concerning

**D. Broker cannot give legal advice. This is a legally binding agreement. READ IT CAREFULLY. If you do not understand the effect of this Listing, consult your attorney BEFORE signing.**

Seller:  Shepherd Huldy Development I, LLC

Broker:
Broker / Company Name:  Greenberg & Company

By:

License No. 0382141

By (signature):
Printed Name: Ali Choudhri
Title: Managing Member          Date:

By (signature):
Printed Name: David Greenberg
Title: President          License No. 236747
Date:

By:

By (signature):
Printed Name:
Title:          Date:

Greenberg & Company, 5959 Richmond Ave Ste 440 Houston TX 77057          Phone: 7137780900          Fax: 7137847445          2419-3431-2503 S
David Greenberg                                                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

11/2/2015



# Information About Brokerage Services

*Texas law requires all real estate licensees to give the following information about brokerage services to prospective buyers, tenants, sellers and landlords.*

**TYPES OF REAL ESTATE LICENSE HOLDERS:**
* **A BROKER** is responsible for all brokerage activities, including acts performed by sales agents sponsored by the broker.
* **A SALES AGENT** must be sponsored by a broker and works with clients on behalf of the broker.

**A BROKER'S MINIMUM DUTIES REQUIRED BY LAW (A client is the person or party that the broker represents):**
* Put the interests of the client above all others, including the broker's own interests;
* Inform the client of any material information about the property or transaction received by the broker;
* Answer the client's questions and present any offer to or counter-offer from the client; and
* Treat all parties to a real estate transaction honestly and fairly.

**A LICENSE HOLDER CAN REPRESENT A PARTY IN A REAL ESTATE TRANSACTION:**

**AS AGENT FOR OWNER (SELLER/LANDLORD):** The broker becomes the property owner's agent through an agreement with the owner, usually in a written listing to sell or property management agreement. An owner's agent must perform the broker's minimum duties above and must inform the owner of any material information about the property or transaction known by the agent, including information disclosed to the agent or subagent by the buyer or buyer's agent.

**AS AGENT FOR BUYER/TENANT:** The broker becomes the buyer/tenant's agent by agreeing to represent the buyer, usually through a written representation agreement. A buyer's agent must perform the broker's minimum duties above and must inform the buyer of any material information about the property or transaction known by the agent, including information disclosed to the agent by the seller or seller's agent.

**AS AGENT FOR BOTH - INTERMEDIARY:** To act as an intermediary between the parties the broker must first obtain the written agreement of each party to the transaction. The written agreement must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. A broker who acts as an intermediary:
* Must treat all parties to the transaction impartially and fairly;
* May, with the parties' written consent, appoint a different license holder associated with the broker to each party (owner and buyer) to communicate with, provide opinions and advice to, and carry out the instructions of each party to the transaction.
* Must not, unless specifically authorized in writing to do so by the party, disclose:
  ○ that the owner will accept a price less than the written asking price;
  ○ that the buyer/tenant will pay a price greater than the price submitted in a written offer; and
  ○ any confidential information or any other information that a party specifically instructs the broker in writing not to disclose, unless required to do so by law.

**AS SUBAGENT:** A license holder acts as a subagent when aiding a buyer in a transaction without an agreement to represent the buyer. A subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first.

**TO AVOID DISPUTES, ALL AGREEMENTS BETWEEN YOU AND A BROKER SHOULD BE IN WRITING AND CLEARLY ESTABLISH:**
* The broker's duties and responsibilities to you, and your obligations under the representation agreement.
* Who will pay the broker for services provided to you, when payment will be made and how the payment will be calculated.

**LICENSE HOLDER CONTACT INFORMATION:** This notice is being provided for information purposes. It does not create an obligation for you to use the broker's services. Please acknowledge receipt of this notice below and retain a copy for your records.

| | | | |
|---|---|---|---|
| **Greenberg & Company** | **0382141** | **david@greenbergcompany.com** | **(713)778-0900** |
| Licensed Broker /Broker Firm Name or Primary Assumed Business Name | License No. | Email | Phone |
| | | | |
| Designated Broker of Firm | License No. | Email | Phone |
| **David Greenberg** | **236747** | **david@greenbergcompany.com** | **(713)778-0900** |
| Licensed Supervisor of Sales Agent/ Associate | License No. | Email | Phone |
| | | | |
| Sales Agent/Associate's Name | License No. | Email | Phone |
| | Buyer/Tenant/Seller/Landlord Initials | Date | |

**Regulated by the Texas Real Estate Commission**                                    Information available at www.trec.texas.gov
TXR-2501                                                                                                                                         IABS 1-0 Date
Greenberg & Company, 5959 Richmond Ave Ste 446 Houston TX 77057                    Phone: (713)778-0900       Fax: (713)784-7448       7330 Southwest
David Greenberg                    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

HARRIS CENTRAL APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0640530000006**

Tax Year: 2023

Print

| Owner and Property Information | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Owner Name & Mailing Address: | **SHEPHERD HULDY DEVELOPMENT I LLC**<br>**700 LAVACA ST STE 1401**<br>**AUSTIN TX 78701-3135** | Legal Description: | **LT F**<br>**SHEPHERD LAWN** |
|---|---|---|---|
| | | Property Address: | **2421 S SHEPHERD DR**<br>**HOUSTON TX 77019** |

| State Class Code | Land Use Code | Building Class | Total Units | Land Area | Building Area | Net Rentable Area | Neighborhood | Market Area | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|---|---|---|
| F1 -- Real, Commercial | 8004 -- Land Neighborhood Section 4 | E | 0 | 5,558 SF | 3,469 | 0 | 5904.07 | 5003 -- Inner Loop West | 5356A | 492U |

### Value Status Information

| Value Status | Shared CAD |
|---|---|
| All Values Pending | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2022 Rate | 2023 Rate |
|---|---|---|---|---|---|---|
| None | 001 | HOUSTON ISD | Pending | Pending | 1.037200 | |
| | 040 | HARRIS COUNTY | Pending | Pending | 0.343730 | |
| | 041 | HARRIS CO FLOOD CNTRL | Pending | Pending | 0.030550 | |
| | 042 | PORT OF HOUSTON AUTHY | Pending | Pending | 0.007990 | |
| | 043 | HARRIS CO HOSP DIST | Pending | Pending | 0.148310 | |
| | 044 | HARRIS CO EDUC DEPT | Pending | Pending | 0.004900 | |
| | 048 | HOU COMMUNITY COLLEGE | Pending | Pending | 0.095569 | |
| | 061 | CITY OF HOUSTON | Pending | Pending | 0.533640 | |
| | 872 | TIRZ 27 - MONTROSE ZN (061) | Pending | Pending | | |
| | 939 | HC ID 11 | Pending | Pending | 0.000000 | |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway.**

### Valuations

| | Value as of January 1, 2022 | | | Value as of January 1, 2023 | | |
|---|---|---|---|---|---|---|
| | Market | Appraised | | | Market | Appraised |
| Land | 528,010 | | Land | | | |
| Improvement | 164,713 | | Improvement | | | |
| Total | 692,723 | 692,723 | Total | | Pending | Pending |

### Land

| | | | | | Market Value Land | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 8004 -- Land Neighborhood Section 4 | 4374 | SF | 5,558 | 1.00 | 1.00 | 1.00 | -- | 1.00 | Pending | Pending | Pending |

### Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1930 | Retail Multi-Occupancy | Neighborhood Shopping Ctr | Average | 1,091 | Displayed |
| 2 | 1930 | Commercial Bldg. - Mixed Res. | Mixed Retail w/ Resid. Units | Average | 2,378 | **View** |

HARRIS CENTRAL APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0640530000005**

Tax Year: 2023

🖨️Print

| Owner and Property Information | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Owner Name & Mailing Address: | **SHEPHERD HULDY DEVELOPMENT I LLC**<br>**700 LAVACA ST STE 1401**<br>**AUSTIN TX 78701-3135** | | | | | | Legal Description: | | **LT E**<br>**SHEPHERD LAWN** | | |
| | | | | | | | Property Address: | | **2503 S SHEPHERD DR**<br>**HOUSTON TX 77019** | | |

| State Class Code | Land Use Code | Building Class | Total Units | Land Area | Building Area | Net Rentable Area | Neighborhood | Market Area | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|---|---|---|
| F1 -- Real, Commercial | 8004 -- Land Neighborhood Section 4 | E | 0 | 6,018 SF | 3,428 | 0 | 5904.07 | 5003 -- Inner Loop West | 5356A | 492U |

### Value Status Information

| Value Status | Shared CAD |
|---|---|
| All Values Pending | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2022 Rate | 2023 Rate |
|---|---|---|---|---|---|---|
| None | 001 | HOUSTON ISD | Pending | Pending | 1.037200 | |
| | 040 | HARRIS COUNTY | Pending | Pending | 0.343730 | |
| | 041 | HARRIS CO FLOOD CNTRL | Pending | Pending | 0.030550 | |
| | 042 | PORT OF HOUSTON AUTHY | Pending | Pending | 0.007990 | |
| | 043 | HARRIS CO HOSP DIST | Pending | Pending | 0.148310 | |
| | 044 | HARRIS CO EDUC DEPT | Pending | Pending | 0.004900 | |
| | 048 | HOU COMMUNITY COLLEGE | Pending | Pending | 0.095569 | |
| | 061 | CITY OF HOUSTON | Pending | Pending | 0.533640 | |
| | 872 | TIRZ 27 - MONTROSE ZN (061) | Pending | Pending | | |
| | 939 | HC ID 11 | Pending | Pending | 0.000000 | |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at HCAD's information center at **13013 NW Freeway.**

### Valuations

| | Value as of January 1, 2022 | | | Value as of January 1, 2023 | | |
|---|---|---|---|---|---|---|
| | Market | Appraised | | | Market | Appraised |
| Land | 571,710 | | Land | | | |
| Improvement | 223,904 | | Improvement | | | |
| Total | 795,614 | 795,614 | Total | | Pending | Pending |

### Land

| | | | | Market Value Land | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 8004 -- Land Neighborhood Section 4 | 4374 | SF | 6,018 | 1.00 | 1.00 | 1.00 | -- | 1.00 | Pending | Pending | Pending |

### Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1950 | Retail Multi-Occupancy | Neighborhood Shopping Ctr | Average | 992 | Displayed |
| 2 | 1930 | Commercial Bldg. - Mixed Res. | Mixed Retail w/ Resid. Units | Average | 2,436 | **View** |



HARRIS CENTRAL APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0572870000006**

Tax Year: 2023

🖨Print

| Owner and Property Information | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Owner Name & Mailing Address: | **SHEPHERD HULDY DEVELOPMENT I LLC**<br>**700 LAVACA ST STE 1401**<br>**AUSTIN TX 78701-3135** | | | | | Legal Description:<br><br>Property Address: | **TR 5 BLK 1**<br>**MORGAN**<br>**2424 HULDY ST**<br>**HOUSTON TX 77019** | | | | |

| State Class Code | Land Use Code | Building Class | Total Units | Land Area | Building Area | Net Rentable Area | Neighborhood | Market Area | Map Facet | Key Map® |
|---|---|---|---|---|---|---|---|---|---|---|
| F1 -- Real, Commercial | 8003 -- Land Neighborhood Section 3 | | 0 | 6,300 SF | 0 | 0 | 5904.07 | 5003 -- Inner Loop West | 5356A | 492V |

### Value Status Information

| Value Status | Shared CAD |
|---|---|
| All Values Pending | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2022 Rate | 2023 Rate |
|---|---|---|---|---|---|---|
| None | 001 | HOUSTON ISD | Pending | Pending | 1.037200 | |
| | 040 | HARRIS COUNTY | Pending | Pending | 0.343730 | |
| | 041 | HARRIS CO FLOOD CNTRL | Pending | Pending | 0.030550 | |
| | 042 | PORT OF HOUSTON AUTHY | Pending | Pending | 0.007990 | |
| | 043 | HARRIS CO HOSP DIST | Pending | Pending | 0.148310 | |
| | 044 | HARRIS CO EDUC DEPT | Pending | Pending | 0.004900 | |
| | 048 | HOU COMMUNITY COLLEGE | Pending | Pending | 0.095569 | |
| | 061 | CITY OF HOUSTON | Pending | Pending | 0.533640 | |
| | 872 | TIRZ 27 - MONTROSE ZN (061) | Pending | Pending | | |
| | 939 | HC ID 11 | Pending | Pending | 0.000000 | |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway.**

### Valuations

| | Value as of January 1, 2022 | | | Value as of January 1, 2023 | | |
|---|---|---|---|---|---|---|
| | Market | Appraised | | | Market | Appraised |
| Land | 592,200 | | Land | | | |
| Improvement | 7,277 | | Improvement | | | |
| Total | 599,477 | 599,477 | Total | | Pending | Pending |

### Land

| Market Value Land | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 8003 -- Land Neighborhood Section 3 | 4393 | SF | 6,300 | 1.00 | 1.00 | 1.00 | -- | 1.00 | Pending | Pending | Pending |

### Building

Vacant (No Building Data)

### Extra Features

| Line | Description | Quality | Condition | Units | Year Built |
|---|---|---|---|---|---|



HARRIS CENTRAL APPRAISAL DISTRICT
REAL PROPERTY ACCOUNT INFORMATION
**0442550000046**

Tax Year: 2023

🖨Print

| Owner and Property Information | | |
|---|---|---|
| Owner Name & Mailing Address: | **SHEPHERD HULDY DEVELOPMENT I LLC**<br>**1001 W LOOP SOUTH STE 700**<br>**HOUSTON TX 77027-9033** | Legal Description: **TR 7B**<br>**ABST 696 O SMITH**<br>Property Address: **2419 S SHEPHERD DR**<br>**HOUSTON TX 77019** |

| State Class Code | Land Use Code | Building Class | Total Units | Land Area | Building Area | Net Rentable Area | Neighborhood | Market Area | Map Facet | Key Map®® |
|---|---|---|---|---|---|---|---|---|---|---|
| F1 -- Real, Commercial | 8004 -- Land Neighborhood Section 4 | E | 0 | 6,750 SF | 1,225 | 0 | 5904.07 | 5003 -- Inner Loop West | 5356A | 492U |

### Value Status Information

| Value Status | Shared CAD |
|---|---|
| All Values Pending | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2022 Rate | 2023 Rate |
|---|---|---|---|---|---|---|
| None | 001 | HOUSTON ISD | Pending | Pending | 1.037200 | |
| | 040 | HARRIS COUNTY | Pending | Pending | 0.343730 | |
| | 041 | HARRIS CO FLOOD CNTRL | Pending | Pending | 0.030550 | |
| | 042 | PORT OF HOUSTON AUTHY | Pending | Pending | 0.007990 | |
| | 043 | HARRIS CO HOSP DIST | Pending | Pending | 0.148310 | |
| | 044 | HARRIS CO EDUC DEPT | Pending | Pending | 0.004900 | |
| | 048 | HOU COMMUNITY COLLEGE | Pending | Pending | 0.095569 | |
| | 061 | CITY OF HOUSTON | Pending | Pending | 0.533640 | |
| | 872 | TIRZ 27 - MONTROSE ZN (061) | Pending | Pending | | |
| | 939 | HC ID 11 | Pending | Pending | 0.000000 | |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway.**

### Valuations

| | Value as of January 1, 2022 | | Value as of January 1, 2023 | | |
|---|---|---|---|---|---|
| | Market | Appraised | | Market | Appraised |
| Land | 641,250 | | Land | | |
| Improvement | 36,750 | | Improvement | | |
| Total | 678,000 | 678,000 | Total | Pending | Pending |

### Land

| | | | Market Value Land | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 8004 -- Land Neighborhood Section 4 | 4373 | SF | 6,750 | 1.00 | 1.00 | 1.00 | -- | 1.00 | Pending | Pending | Pending |

### Building

| Building | Year Built | Remodeled | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|---|
| 1 | 1968 | 2005 | Retail Single-Occupancy | Retail Store | Average | 1,225 | Displayed |



HARRIS CENTRAL APPRAISAL DISTRICT                    Tax Year: 2023
REAL PROPERTY ACCOUNT INFORMATION
0572870000005                                        🖶 Print

| Owner and Property Information | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Owner Name & Mailing Address: | **SHEPHERD HULDY DEVELOPMENT I LLC 700 LAVACA ST STE 1401 AUSTIN TX 78701-3135** | | | | Legal Description: | **TRS 5A & 5B BLK 1 MORGAN** | | |
| | | | | | Property Address: | **2502 HULDY ST HOUSTON TX 77019** | | |

| State Class Code | Land Use Code | Land Area | Total Living Area | Neighborhood | Neighborhood Group | Market Area | Map Facet | Key Map** |
|---|---|---|---|---|---|---|---|---|
| B2 -- Real, Residential, Two-Family | 1001 -- Residential Improved | 6,249 SF | 3,142 SF | 8316 | 1625 | 163 -- 1F Montrose, Fourth Ward Areas | 5356A | 492V |

### Value Status Information

| Value Status | Shared CAD |
|---|---|
| All Values Pending | No |

### Exemptions and Jurisdictions

| Exemption Type | Districts | Jurisdictions | Exemption Value | ARB Status | 2022 Rate | 2023 Rate |
|---|---|---|---|---|---|---|
| None | 001 | HOUSTON ISD | Pending | Pending | 1.037200 | |
| | 040 | HARRIS COUNTY | Pending | Pending | 0.343730 | |
| | 041 | HARRIS CO FLOOD CNTRL | Pending | Pending | 0.030550 | |
| | 042 | PORT OF HOUSTON AUTHY | Pending | Pending | 0.007990 | |
| | 043 | HARRIS CO HOSP DIST | Pending | Pending | 0.148310 | |
| | 044 | HARRIS CO EDUC DEPT | Pending | Pending | 0.004900 | |
| | 048 | HOU COMMUNITY COLLEGE | Pending | Pending | 0.095569 | |
| | 061 | CITY OF HOUSTON | Pending | Pending | 0.533640 | |
| | 872 | TIRZ 27 - MONTROSE ZN (061) | Pending | Pending | | |
| | 939 | HC ID 11 | Pending | Pending | 0.000000 | |

Texas law prohibits us from displaying residential photographs, sketches, floor plans, or information indicating the age of a property owner on our website. You can inspect this information or get a copy at **HCAD's information center at 13013 NW Freeway.**

### Valuations

| | Value as of January 1, 2022 | | | Value as of January 1, 2023 | | |
|---|---|---|---|---|---|---|
| | Market | Appraised | | | Market | Appraised |
| Land | 618,651 | | Land | | | |
| Improvement | 27,762 | | Improvement | | | |
| Total | 646,413 | 646,413 | Total | | Pending | Pending |

### Land

| | | | | | Market Value Land | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line | Description | Site Code | Unit Type | Units | Size Factor | Site Factor | Appr O/R Factor | Appr O/R Reason | Total Adj | Unit Price | Adj Unit Price | Value |
| 1 | 1001 -- Res Improved Table Value | SF1 | SF | 6,249 | 1.00 | 1.00 | 0.90 | -- | 0.90 | Pending | Pending | Pending |

### Building

| Building | Year Built | Type | Style | Quality | Impr Sq Ft | Building Details |
|---|---|---|---|---|---|---|
| 1 | 1945 | Residential Duplex | Residential 2 Family | Average | 2,482 * | Displayed |
| 2 | 1945 | Residential Single Family | Residential 1 Family | Low | 660 * | **View** |



Exhibit I


## TEXAS REALTORS

## COMMERCIAL CONTRACT - IMPROVED PROPERTY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2022

**1. PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

Seller: SHEPHERD HULDY DEVELOPMENT I LLC

Address: _____

Phone: _____ E-mail: _____

Mobile: _____ Fax or Other: _____

Buyer: CANAAN PARK LLC OR ASSIGN

Address: 17619 CYPRESS FIELDS AVE, CYPRESS, TX  77429

Phone: (936)777-2258 E-mail: m9367772258@gmail.com

Mobile: (936)777-2258 Fax or Other: _____

**2. PROPERTY:**

A. "Property" means that real property situated in _____HARRIS_____ County, Texas at
_____2419 S. Shepheard DR, Houston , Tx  77429_____ (address)
and that is legally described on the attached Exhibit _____ or as follows:

B. Seller will sell and convey the Property together with:
   (1) all buildings, improvements, and fixtures;
   (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
   (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
   (4) Seller's interest in all licenses and permits related to the Property;
   (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
   (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
   (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except: NONE _____ .
   Any personal property not included in the sale must be removed by Seller prior to closing.

*(Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)*
*(If mineral rights are to be reserved an appropriate addendum should be attached.)*
*(If the Property is a condominium, attach Commercial Contract Condominium Addendum (TXR-1930) or (TXR-1946).)*

**3. SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

A. Cash portion payable by Buyer at closing . . . . . . . . . . . . . . . . . . . . . . . $ _____885,000.00

B. Sum of all financing described in Paragraph 4 . . . . . . . . . . . . . . . . . . . $ _____

C. Sales price (sum of 3A and 3B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____885,000.00

(TXR-1801) 07-08-22         Initialed for Identification by Seller _____, _____ and Buyer _MM_, _____         Page 1 of 15

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036                Phone: 2817023366        Fax: 8662532705        2419 S. Shepheard
Polo Sun                          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Commercial Contract - Improved Property concerning     **2419 S. Shepheard DR, Houston , Tx 77429**

**4. FINANCING:** Buyer will finance the portion of the sales price under Paragraph 3B as follows:

☐ A. <u>Third Party Financing</u>: One or more third party loans in the total amount of $ _____ . This contract:

    ☐ (1) is <u>not</u> contingent upon Buyer obtaining third party financing.

    ☐ (2) is contingent upon Buyer obtaining third party financing in accordance with the attached Commercial Contract Financing Addendum (TXR-1931).

☐ B. <u>Assumption</u>: In accordance with the attached Commercial Contract Financing Addendum (TXR-1931), Buyer will assume the existing promissory note secured by the Property, which balance at closing will be $ _____ .

☐ C. <u>Seller Financing</u>: Buyer will deliver a promissory note and deed of trust to Seller under the terms of the attached Commercial Contract Financing Addendum (TXR-1931) in the amount of $_____ .

**5. EARNEST MONEY:**

A. Not later than 3 days after the effective date, Buyer must deposit $ <u>$10,000.00</u> as earnest money with _____ <u>**Fidelity National Title**</u> _____ (title company) at <u>440 LOUISIANA ST SUITE 1100 HOUSTON TX 77002</u> (address) <u>CHARLES H MANSOUR</u> (closer). If Buyer fails to timely deposit the earnest money, Seller may terminate this contract or exercise any of Seller's other remedies under Paragraph 15 by providing written notice to Buyer before Buyer deposits the earnest money.

B. Buyer will deposit an additional amount of $ _____ with the title company to be made part of the earnest money on or before:

    ☐ (i) _____ days after Buyer's right to terminate under Paragraph 7B expires; or

    ☐ (ii) _____ .

Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.

C. Buyer may instruct the title company to deposit the earnest money in an interest-bearing account at a federally insured financial institution and to credit any interest to Buyer.

**6. TITLE POLICY, SURVEY, AND UCC SEARCH:**

A. <u>Title Policy</u>:

    (1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by any underwriter of the title company in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:

       (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and

       (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

    (2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements:

    ☐ (a) will not be amended or deleted from the title policy.

    ☒ (b) will be amended to read "shortages in areas" at the expense of ☒ Buyer ☐ Seller.

    (3) Within <u>14</u> days after the effective date, Seller will furnish Buyer a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's address.

(TXR-1801) 07-08-22     Initialed for Identification by Seller _____, _____ and Buyer *ML* , _____     Page 2 of 15

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036     Phone: 2817023366     Fax: 8662532705     2419 S. Shepheard
Polo Sun     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Commercial Contract - Improved Property concerning      2419 S. Shepheard DR, Houston , Tx  77429

B. <u>Survey</u>: Within _____ days after the effective date:

☐ (1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller. The survey must be made in accordance with the: (i) ALTA/NSPS Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition. Seller will reimburse Buyer _____ *(insert amount)* of the cost of the survey at closing, if closing occurs.

☐ (2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the: (i) ALTA/NSPS Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☐ (3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's most recent survey of the Property along with an affidavit required by the title company for approval of the existing survey. If the existing survey is not acceptable to the title company, ☐ Seller ☐ Buyer (updating party), will, at the updating party's expense, obtain a new or updated survey acceptable to the title company and deliver the acceptable survey to the other party and the title company within 30 days after the title company notifies the parties that the existing survey is not acceptable to the title company. The closing date will be extended daily up to 30 days if necessary for the updating party to deliver an acceptable survey within the time required. The other party will reimburse the updating party _____ *(insert amount or percentage)* of the cost of the new or updated survey at closing, if closing occurs.

C. <u>UCC Search</u>:

☐ (1) Within _____ days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

☐ (2) Buyer does not require Seller to furnish a UCC search.

D. <u>Buyer's Objections to the Commitment, Survey, and UCC Search</u>:

(1) Within _____ days after Buyer receives the last of the commitment, copies of the documents evidencing the title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed are a restriction upon the Property or constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA). If the commitment or survey is revised or any new document evidencing a title exception is delivered, Buyer may object to any new matter revealed in such revision or new document. Buyer's objection must be made within the same number of days stated in this paragraph, beginning when the revision or new document is delivered to Buyer. If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

(2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections. The closing date will be extended as necessary to provide such time to cure the objections. If Seller fails to cure the objections by the time required, Buyer may terminate

Commercial Contract - Improved Property concerning   2419 S. Shepheard DR, Houston , Tx  77429

this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

## 7.  PROPERTY CONDITION:

A.  <u>Present Condition</u>: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing: _____

_____

_____.

B.  <u>Feasibility Period</u>: Buyer may terminate this contract for any reason within _____ **20** _____ days after the effective date (feasibility period) by providing Seller written notice of termination.

(1) <u>Independent Consideration</u>.   *(Check only one box and insert amounts.)*

[  ]  (a)  If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ _____ that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the title company. The independent consideration is to be credited to the sales price only upon closing of the sale. <u>If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.</u>

[  ]  (b)  Not later than 3 days after the effective date, Buyer must pay $ _____ as independent consideration for Buyer's right to terminate by tendering such amount to the title company. Buyer authorizes escrow agent to release and deliver the independent consideration to Seller at any time upon Seller's request without further notice to or consent from Buyer. If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration. The independent consideration will be credited to the sales price only upon closing of the sale. <u>If no dollar amount is stated in this Paragraph 7B(1)(b) or if Buyer fails to pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.</u>

[  ]  (2)  <u>Feasibility Period Extension</u>: Prior to the expiration of the initial feasibility period, Buyer may extend the feasibility period for a single additional period of _____ days by delivering $_____ to the title company as additional earnest money.

(a)  $_____ of the additional earnest money will be retained by Seller as additional independent consideration for Buyer's unrestricted right to terminate, but will be credited to the sales price only upon closing of the sale. If Buyer terminates under this Paragraph 7B, the additional earnest money will be refunded to Buyer and Seller will retain the additional independent consideration.

(b)  Buyer authorizes escrow agent to release and deliver to Seller the following at any time upon Seller's request without further notice to or consent from Buyer:
  (i)   The additional independent consideration.
  (ii)  *(Check no boxes or only one box.)*
       [  ] all or [  ] $_____ of the remaining portion of the additional earnest money, which will be refunded to Buyer if Buyer terminates under this Paragraph 7B or if Seller defaults under this contract.

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036                          Phone: 2817023366              Fax: 8662532705        2419 S. Shepheard
Polo Sun                                                          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Authentisign ID: A04D4643-B9D1-EF11-BBQF-6045BD905052

Commercial Contract - Improved Property concerning     **2419 S. Shepheard DR, Houston , Tx  77429**

_If no dollar amount is stated in this Paragraph 7B(2) as additional earnest money or as additional independent consideration, or if Buyer fails to timely deliver the additional earnest money, the extension of the feasibility period will not be effective._

C.   Inspections, Studies, or Assessments:

(1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

(2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

(3) Buyer must:
(a) employ only trained and qualified inspectors and assessors;
(b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
(c) abide by any reasonable entry rules or requirements of Seller;
(d) not interfere with existing operations or occupants of the Property; and
(e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

(4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

D.   Property Information:

(1) Delivery of Property Information: Within _____ days after the effective date, Seller will deliver to Buyer the following to the extent in Seller's possession: _(Check all that apply.)_
☐ (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
☐ (b) copies of all current leases, including any mineral leases, pertaining to the Property, including any modifications, supplements, or amendments to the leases;
☐ (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;
☐ (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;
☐ (e) copies of all current service, utility, maintenance, and management agreements relating to the ownership and operation of the Property;
☐ (f) copies of current utility capacity letters from the Property's water and sewer service provider;
☐ (g) copies of all current warranties and guaranties relating to all or part of the Property;
☐ (h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;
☐ (i) copies of all leasing or commission agreements that currently relate to the tenants of all or part of the Property;
☐ (j) a copy of the "as-built" plans and specifications and plat of the Property;
☐ (k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;
☐ (l) a copy of Seller's income and expense statement for the Property from _____ to _____ ;
☐ (m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;

Authentisign ID: A04D4643-B9D1-EF11-8SQF-<span>6602248298357</span>

Commercial Contract - Improved Property concerning   2419 S. Shepheard DR, Houston, Tx  77429

☐ (n) real and personal property tax statements for the Property for the previous 2 calendar years;
☐ (o) Tenant reconciliation statements including, operating expenses, insurance and taxes for the Property from _____ to _____; and
☐ (p) _____
_____
_____.

(2) <u>Return of Property Information</u>: If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: *(Check all that apply.)*
☐ (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer in other than an electronic format and all copies that Buyer made of those items;
☐ (b) delete or destroy all electronic versions of those items described in Paragraph 7D(1) that Seller delivered to Buyer or Buyer copied in any format; and
☐ (c) deliver to Seller copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed.
This Paragraph 7D(2) survives termination of this contract.

E. <u>Contracts Affecting Operations</u>: Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

## 8.  LEASES:

A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:
(1) any failure by Seller to comply with Seller's obligations under the leases;
(2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;
(3) any non-occupancy of the leased premises by a tenant;
(4) any advance sums paid by a tenant under any lease;
(5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and
(6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.

B. <u>Estoppel Certificates</u>: Within _____ days after the effective date, Seller will deliver to Buyer estoppel certificates signed not earlier than _____ by each tenant that leases space in the Property. The estoppel certificates must include the certifications contained in the current version of TXR Form 1938 - Commercial Tenant Estoppel Certificate and any additional information requested by a third party lender providing financing under Paragraph 4 if the third party lender requests such additional information at least 10 days prior to the earliest date that Seller may deliver the signed estoppel certificates.

Commercial Contract - Improved Property concerning    <u>2419 S. Shepheard DR, Houston , Tx  77429</u>

### 9. BROKERS:

A. The brokers to this sale are:

**Principal Broker:** <u>American SMS Real Estate LLC</u>     **Cooperating Broker:** _____

_____

Agent: <u>Polo Sun</u>          Agent: _____

Address: <u>6918 Corporate Dr. Ste A-13</u>    Address: _____

        <u>Houston TX 77036</u>      _____

Phone & Fax: _____   Phone & Fax: _____

E-mail: <u>m9367772258@gmail.com</u>     E-mail: _____

License No.: <u>533206</u>            License No.: _____

Principal Broker: *(Check only one box)*     Cooperating Broker represents Buyer.
[X] represents Seller only.
[ ] represents Buyer only.
[ ] is an intermediary between Seller and Buyer.

B. <u>Fees</u>: *(Check only (1) or (2) below.)*
*(Complete the Agreement Between Brokers on page 15 only if (1) is selected.)*

[ ] (1) Seller will pay Principal Broker the fee specified by separate written commission agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract.

[ ] (2) At the closing of this sale, Seller will pay:

Principal Broker a total cash fee of:     Cooperating Broker a total cash fee of:
[ ] _____ % of the sales price.     [ ] _____ % of the sales price.
[ ] _____ .     [X] <u>none</u> _____ .

The cash fees will be paid in _____ County, Texas. Seller authorizes the title company to pay the brokers from the Seller's proceeds at closing.

*NOTICE: Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission with a lien against the Property.*

C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the amendment.

### 10. CLOSING:

A. The date of the closing of the sale (closing date) will be on or before the later of:
(1) [X] _____ days after the expiration of the feasibility period.
[ ] <u>February 28, 2025</u> *(specific date)*.
[ ] _____ .

(2) 7 days after objections made under Paragraph 6D have been cured or waived.

B. If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.

(TXR-1801) 07-08-22     Initialed for Identification by Seller _____, _____ and Buyer _____, _____     Page 7 of 15

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036     Phone: 2817023366    Fax: 8662532705     2419 S. Shepheard
Polo Sun     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com

Authentisign ID: A04D4643-B9D1-EF11-8BOF-6022488888852

Commercial Contract - Improved Property concerning    2419 S. Shepheard DR, Houston , Tx  77429

C. At closing, Seller will execute and deliver to Buyer, at Seller's expense, a ☐ general ☐ special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:

(1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;

(2) without any assumed loans in default; and

(3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

D. At closing, Seller, at Seller's expense, will also deliver to Buyer:

(1) tax statements showing no delinquent taxes on the Property;

(2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;

(3) an assignment of all leases to or on the Property;

(4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:

(a) licenses and permits;

(b) service, utility, maintenance, management, and other contracts; and

(c) warranties and guaranties;

(5) a rent roll current on the day of the closing certified by Seller as true and correct;

(6) evidence that the person executing this contract is legally capable and authorized to bind Seller;

(7) an affidavit acceptable to the title company stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the title company to: (i) withhold from Seller's proceeds an amount sufficient to comply with applicable tax law; and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and

(8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

E. At closing, Buyer will:

(1) pay the sales price in good funds acceptable to the title company;

(2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;

(3) sign and send to each tenant in the Property a written statement that:

(a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and

(b) specifies the exact dollar amount of the security deposit;

(4) sign an assumption of all leases then in effect; and

(5) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

F. Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

**11. POSSESSION:** Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

(TXR-1801) 07-08-22          Initialed for Identification by Seller _____, _____ and Buyer  _ML_ , _____          Page 8 of 15

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036                    Phone: 2817023366          Fax: 8662532705          2419 S. Shepheard
Polo Sun                              Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Commercial Contract - Improved Property concerning    2419 S. Shepheard DR, Houston , Tx  77429

**12. SPECIAL PROVISIONS:** The following special provisions apply and will control in the event of a conflict with other provisions of this contract. *(If special provisions are contained in an Addendum, identify the Addendum here and reference the Addendum in Paragraph 22D.)*

**13. SALES EXPENSES:**

A. <u>Seller's Expenses</u>: Seller will pay for the following at or before closing:
   (1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
   (2) release of Seller's loan liability, if applicable;
   (3) tax statements or certificates;
   (4) preparation of the deed and any bill of sale;
   (5) one-half of any escrow fee;
   (6) costs to record any documents to cure title objections that Seller must cure; and
   (7) other expenses that Seller will pay under other provisions of this contract.

B. <u>Buyer's Expenses</u>: Buyer will pay for the following at or before closing:
   (1) all loan expenses and fees;
   (2) preparation fees of any deed of trust;
   (3) recording fees for the deed and any deed of trust;
   (4) premiums for flood and hazard insurance as may be required by Buyer's lender;
   (5) one-half of any escrow fee; and
   (6) other expenses that Buyer will pay under other provisions of this contract.

**14. PRORATIONS:**

A. <u>Prorations</u>:

   (1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.
   (2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.
   (3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other charges to Buyer at closing and Buyer will reimburse such amounts to Seller by an appropriate adjustment at closing.

B. <u>Rollback Taxes</u>: If Seller's use or change in use of the Property before closing results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller.  If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer.  This Paragraph 14B survives closing.

Commercial Contract - Improved Property concerning     2419 S. Shepheard DR, Houston , Tx  77429

C. Rent and Security Deposits: At closing, Seller will tender to Buyer all security deposits and the following advance payments received by Seller for periods after closing: prepaid expenses, advance rental payments, and other advance payments paid by tenants. Rents prorated to one party but received by the other party will be remitted by the recipient to the party to whom it was prorated within 5 days after the rent is received. This Paragraph 14C survives closing.

## 15. DEFAULT:

A. If Buyer fails to comply with this contract, Buyer is in default and Seller, as Seller's sole remedy(ies), may terminate this contract and receive the earnest money, as liquidated damages for Buyer's failure except for any damages resulting from Buyer's inspections, studies or assessments in accordance with Paragraph 7C(4) which Seller may pursue, or
*(Check if applicable)*
☐ enforce specific performance, or seek such other relief as may be provided by law.

B. If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates, survey or the commitment, Buyer may:
(1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or
(2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C. Except as provided in Paragraph 15B, if Seller fails to comply with this contract, Seller is in default and Buyer may:
(1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or
(2) enforce specific performance, or seek such other relief as may be provided by law, or both.

## 16. CASUALTY LOSS AND CONDEMNATION:

A. If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Seller must restore the Property to its previous condition as soon as reasonably possible and not later than the closing date. If, without fault, Seller is unable to do so, Buyer may:
(1) terminate this contract and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer;
(2) extend the time for performance up to 15 days and closing will be extended as necessary; or
(3) accept at closing: (i) the Property in its damaged condition; (ii) an assignment of any insurance proceeds Seller is entitled to receive along with the insurer's consent to the assignment; and (iii) a credit to the sales price in the amount of any unpaid deductible under the policy for the loss.

B. If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:
(1) terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer; or
(2) appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to: (a) Seller and the sales price will be reduced by the same amount; or (b) Buyer and the sales price will not be reduced.

## 17. ATTORNEY'S FEES: If Buyer, Seller, any broker, or the title company is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

(TXR-1801) 07-08-22     Initialed for Identification by Seller _____ , _____ and Buyer _____ , _____     Page 10 of 15

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036      Phone: 2817023366     Fax: 8662532705      2419 S. Shepheard
Polo Sun      Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com

Authentisign ID: A04D4643-B9D1-EF11-B8QF-0022489D8057

Commercial Contract - Improved Property concerning     2419 S. Shepheard DR, Houston , Tx  77429

## 18. ESCROW:

A. At closing, the earnest money will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer. If no closing occurs, the title company may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of the title company from all parties.

B. If one party makes written demand for the earnest money, the title company will give notice of the demand by providing to the other party a copy of the demand. If the title company does not receive written objection to the demand from the other party within 15 days after the date the title company sent the demand to the other party, the title company may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and the title company may pay the same to the creditors.

C. The title company will deduct any independent consideration under Paragraph 7B(1) before disbursing any earnest money to Buyer and will pay the independent consideration to Seller.

D. If the title company complies with this Paragraph 18, each party hereby releases the title company from all claims related to the disbursal of the earnest money.

E. Notices under this Paragraph 18 must be sent by certified mail, return receipt requested. Notices to the title company are effective upon receipt by the title company.

F. Any party who wrongfully fails or refuses to sign a release acceptable to the title company within 7 days after receipt of the request will be liable to the other party for: (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

G. ☐ Seller ☐ Buyer intend(s) to complete this transaction as a part of an exchange of like-kind properties in accordance with Section 1031 of the Internal Revenue Code, as amended. All expenses in connection with the contemplated exchange will be paid by the exchanging party. The other party will not incur any expense or liability with respect to the exchange. The parties agree to cooperate fully and in good faith to arrange and consummate the exchange so as to comply to the maximum extent feasible with the provisions of Section 1031 of the Internal Revenue Code. The other provisions of this contract will not be affected in the event the contemplated exchange fails to occur.

## 19. MATERIAL FACTS: To the best of Seller's knowledge and belief: *(Check only one box.)*

☐ A. Seller is not aware of any material defects to the Property except as stated in the attached Commercial Property Condition Statement (TXR-1408).

☐ B. Except as otherwise provided in this contract, Seller is not aware of:
    (1) any subsurface: structures, pits, waste, springs, or improvements;
    (2) any pending or threatened litigation, condemnation, or assessment affecting the Property;
    (3) any environmental hazards or conditions that materially affect the Property;
    (4) whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;
    (5) whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;
    (6) any wetlands, as defined by federal or state law or regulation, on the Property;
    (7) any threatened or endangered species or their habitat on the Property;
    (8) any present or past infestation of wood-destroying insects in the Property's improvements;
    (9) any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036     Phone: 2817023366     Fax: 8662532705     2419 S. Shepheard
Polo Sun     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Commercial Contract - Improved Property concerning _____2419 S. Shepheard DR, Houston, Tx  77429_____

(10) any material physical defects in the improvements on the Property; or
(11) any condition on the Property that violates any law or ordinance.

*(Describe any exceptions to (1)-(11) in Paragraph 12 or an addendum.)*

**20. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, sent by a national or regional overnight delivery service that provides a delivery receipt, or sent by confirmed facsimile transmission to the parties addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

☐ A.  Seller also consents to receive any notices by e-mail at Seller's e-mail address stated in Paragraph 1.
☐ B.  Buyer also consents to receive any notices by e-mail at Buyer's e-mail address stated in Paragraph 1.

**21. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract.  This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**22. AGREEMENT OF THE PARTIES:**

A.  This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns.  This contract is to be construed in accordance with the laws of the State of Texas. If any term or condition of this contract shall be held to be invalid or unenforceable, the remainder of this contract shall not be affected thereby.  All individuals signing represent that they have the authority to sign on behalf of and bind the party for whom they are signing.

B.  This contract contains the entire agreement of the parties and may not be changed except in writing.

C.  If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

D.  Addenda which are part of this contract are: *(Check all that apply.)*
☐ (1)  Property Description Exhibit identified in Paragraph 2;
☐ (2)  Commercial Contract Condominium Addendum (TXR-1930) or (TXR-1946);
☐ (3)  Commercial Contract Financing Addendum (TXR-1931);
☐ (4)  Commercial Property Condition Statement (TXR-1408);
☐ (5)  Commercial Contract Addendum for Special Provisions (TXR-1940);
☐ (6)  Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TXR-1906);
☐ (7)  Notice to Purchaser of Real Property in a Water District (MUD);
☐ (8)  Addendum for Coastal Area Property (TXR-1915);
☐ (9)  Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TXR-1916);
☐ (10) Information About Brokerage Services (TXR-2501);
☐ (11) Information About Mineral Clauses in Contract Forms (TXR-2509);
☐ (12) Notice of Obligation to Pay Improvement District Assessment (TXR-1955, PID);
☐ (13) _____ .

*(Note: Counsel for Texas REALTORS® has determined that any of the foregoing addenda which are promulgated by the Texas Real Estate Commission (TREC) or published by Texas REALTORS® are appropriate for use with this form.)*

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036          Phone: 2817023366          Fax: 8662532705          2419 S. Shepheard
Polo Sun                                        Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Authentisign ID: A04D4643-B9D1-EF11-8BCF-0022485E3037

Commercial Contract - Improved Property concerning    2419 S. Shepheard DR, Houston , Tx  77429

E. Buyer ☐ may ☐ may not assign this contract.  If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract only if the assignee assumes, in writing, all of Buyer's obligations under this contract.

**23. TIME:** Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or Federal Reserve Bank holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday, or Federal Reserve Bank holiday.

**24. EFFECTIVE DATE:** The effective date of this contract for the purpose of performance of all obligations is the date the title company receipts this contract after all parties execute this contract.

**25. ADDITIONAL NOTICES:**

A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract *(the Addendum for Coastal Area Property (TXR-1915) may be used).*

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract *(the Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TXR-1916) may be used).*

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality.  Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract *(the Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TXR-1906) may be used).*

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036    Phone: 2817023366    Fax: 8662532705    2419 S. Shepheard
Polo Sun    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

Commercial Contract - Improved Property concerning        2419 S. Shepheard DR. Houston , Tx  77429

H.  Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I.  Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Buyer should review local building codes, ordinances and other applicable laws to determine their effect on the Property. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers. Brokers are not qualified to determine the credit worthiness of the parties. NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

J.  PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller is required by §5.014, Property Code to give Buyer a written notice concerning the obligation to pay assessments. The form of the required notice is available as a part of the Notice of Obligation to Pay Improvement District Assessment (TXR-1955).

K.  LICENSE HOLDER DISCLOSURE: Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____
_____.

**26. CONTRACT AS OFFER:** The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on _____ , the offer will lapse and become null and void.

**READ THIS CONTRACT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

Seller:  SHEPHERD HULDY DEVELOPMENT I LLC            Buyer: CANAAN PARK LLC OR ASSIGN

_____              _____

By: _____              By: _____
    By (signature): _____                  By (signature): *Michelle LEE*        01/13/2025
    Printed Name: _____                   Printed Name: _____
    Title: _____                    Title: _____

By: _____              By: _____
    By (signature): _____                  By (signature): _____
    Printed Name: _____                   Printed Name: _____
    Title: _____                    Title: _____

(TXR-1801) 07-08-22                                                            Page 14 of 15

Commercial Contract - Improved Property concerning     <u>2419 S. Shepheard DR, Houston , Tx  77429</u>

---

## AGREEMENT BETWEEN BROKERS
### *(use only if Paragraph 9B(1) is effective)*

Principal Broker agrees to pay _____ (Cooperating Broker) a fee when the Principal Broker's fee is received. The fee to be paid to Cooperating Broker will be:

- ☐ $ _____ , or
- ☐ _____ % of the sales price, or
- ☐ _____ % of the Principal Broker's fee.

The title company is authorized and directed to pay Cooperating Broker from Principal Broker's fee at closing. This Agreement Between Brokers supersedes any prior offers and agreements for compensation between brokers.

Principal Broker: _____     Cooperating Broker: _____

_____     _____

By: _____     By: _____

---

## ATTORNEYS

Seller's attorney: _____     Buyer's attorney: _____

_____     _____

Address: _____     Address: _____

_____     _____

Phone & Fax: _____     Phone & Fax: _____

E-mail: _____     E-mail: _____

Seller's attorney requests copies of documents, notices, and other information:
- ☐ the title company sends to Seller.
- ☐ Buyer sends to Seller.

Buyer's attorney requests copies of documents, notices, and other information:
- ☐ the title company sends to Buyer.
- ☐ Seller sends to Buyer.

---

## ESCROW RECEIPT

The title company acknowledges receipt of:
- ☐ A.  the contract on this day _____ (effective date);
- ☐ B.  earnest money in the amount of $ _____ in the form of _____
      on _____ .

Title company: _____     Address: _____

_____

By: _____     Phone & Fax: _____

Assigned file number (GF#): _____     E-mail: _____

---

American SMS Real Estate, 6918 Corporate Dr. STE A-13 Houston TX 77036     Phone: 2817023366     Fax: 8662532705     2419 S. Shepheard
Polo Sun     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201    www.lwolf.com

United States Bankruptcy Court
Southern District of Texas

**ENTERED**
September 30, 2024
Nathan Ochsner, Clerk

Exhibit J

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SHEPHERD-HULDY DEVELOPMENT I, LLC, | § | CASE NO.: 24-32146 |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

## AGREED ORDER ON GREENBERG'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Upon hearing on the Emergency Motion for Relief from the Automatic Stay (the "Motion for Relief") [Dkt. No. 15] filed by Greenberg Finance ("Greenberg Finance"), Greenberg Finance and Debtor Shepherd-Huldy Development I, LLC ("Debtor") have reached an agreement provided for below. IT IS HEREBY ORDERED THAT:

1. Greenberg Finance's Motion for Relief is GRANTED IN PART AND DENIED IN PART as further provided below.

2. Debtor agrees that, within one-hundred and twenty (120) days of entry of this Order, Debtor shall pay off its debt to Greenberg Finance, in full and without set-off or counter-claim and free from any deduction or withholding whatsoever all amounts due under the real estate lien and security interest under a deed of trust granted by the Debtor in certain real property (the "Property"), being more particularly described in the Deed of Trust dated May 14, 2019 (the "Deed of Trust") and the Promissory Note (the "Note"), as amended, reinstated, and/or modified, in the original principal amount of $805,867.34, with a maturity date of June 1, 2022. Debtor agrees that such payoff will include all interest, penalties, late fees, and charges, including but not limited to attorney's fees incurred by Greenberg Finance, incurred through the date of the payoff as further provided in the Note and Deed of Trust. Debtor agrees that all past due principal and interest shall

continue to bear interest until paid at the rate of eighteen percent (18.0%) per annum or the maximum rate of nonusurious interest allowed by law, or at the maximum rate set forth in the applicable contract or loan documents, as of the date hereof. In the event that upon the one-hundred and twentieth (120th) day set forth herein, the real estate at issue in the deed of trust is under a verifiable arm's length contract for sale with a non-insider of the Debtor in an amount equal to or greater than what would be required to pay off Greenberg Finance in full but has not yet closed, then the Debtor's deadline to make the pay-off contemplated in this paragraph shall be extended a maximum of an additional thirty (30) days contingent upon Debtor continuing to satisfy the other requirements in this Agreed Order, including but not limited to payment of the Adequate Protection Payment. Greenberg Finance will provide reasonable cooperation to effectuate closing any sale that results in payment in full of all amounts due to Greenberg Finance, including resolving any *lis pendens* that have been filed on the Property.

3. Debtor acknowledges that the balance shown on the Account Statement attached as Exhibit 1 hereto is true and accurate in all respects, including all interest and expenses reflected thereon, as of September 20, 2024.

4. The Parties agree that, in exchange for Greenberg Finance agreeing to this Order, Debtor is required to continue to make adequate protection payments under section 11 U.S.C. § 361 during the pendency of the continuance and any subsequent continuance of the hearing on the Motion for Relief in the amount of $17,500.00 per month (the "Adequate Protection Payment"). Such amount must be sent by wire to the bank account for Greenberg Finance, whose wiring instructions the Parties agree have been provided to Debtor prior to the entry of this Order, or by certified check delivered to Greenberg Finance's Attorney's Office. Such payments shall be made no later than the seventh (7th) business day of the month in which such payment is required by 5:00

p.m. on such date, Such payments will be credited and applied as applicable to the amounts due to Greenberg Finance, including principal and interest accruing.

5.      Should Greenberg Finance fail to (a) either receive from Debtor the amounts owed in full within one-hundred and twenty (120) days of this Order as provided in Paragraph 2 or (b) fail receive any Adequate Protection Payment from the Debtor by the deadline required under this Order, then Greenberg Finance may immediately declare Debtor in default of this Order (the "Event of Default") without necessity of further order of this Court.  Delivery of notice of such declaration by Greenberg Finance to Debtor shall be a courtesy only and shall not be required under this Order.  Delivery of such notice shall not violate the automatic stay under 11 U.S.C. § 362(a) (the "Automatic Stay")

6.      Upon the occurrence of an Event of Default:

a.      The Automatic Stay is hereby terminated, effective immediately and on a final basis, as to the Property and all other collateral of Greenberg Finance under the Note, Deed of Trust and other loan documents, as those terms are defined in the Motion for Relief;

b.      Greenberg Finance is hereby authorized to immediately take all actions necessary to post the Property for foreclosure sale.

c.      Greenberg Finance is hereby authorized to foreclose on the Property at any time on or after the date of this Order and to exercise all other rights and remedies available under the Note, Deed of Trust, and other loan documents or applicable law;

d.      Greenberg Finance is hereby authorized to take all actions necessary to effectuate the relief granted in this Order.

e.      Debtor and each of its insiders and/or affiliates (as such terms are defined in 11 U.S.C. § 101)—including without limitation Ali Choudhri ("Mr. Choudhri")—are hereby prohibited from interfering or attempting to interfere in any way with Greenberg Finance's foreclosure on the Property or with any other exercise of Greenberg Finance's rights and remedies under the Loan Documents or applicable law; and

f.      Unless and until Greenberg Finance forecloses on the Property or the Loan has otherwise been satisfied in full, such that the Property no longer secures any debts owed by Debtor to Greenberg Finance, the Automatic Stay shall be of no force or effect as to the Property in this bankruptcy case or in any other cases or proceedings subsequently commenced under the Bankruptcy Code.

7.      Debtor and each of its insiders and/or affiliates (as such terms are defined in 11 U.S.C. § 101)—including without limitation Ali Choudhri—are hereby prohibited from seeking an order enjoining the foreclosure from any state or federal court other than this Court at any time during the pendency of this action.

8.      During the pendency of this action, Debtor is hereby prohibited from transferring the Property (or any portion thereof) absent further order of this Court or express written consent from Greenberg Finance

9.      The terms of this Order shall be effective and enforceable immediately upon entry, notwithstanding Bankruptcy Rule 4001(a)(3) or any similar provisions of the Bankruptcy Code or Bankruptcy Rules.  By their signature of counsel below, the parties affirmatively waive any stay pending appeal.

10.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

11.     Nothing herein shall require Greenberg Finance to take and/or refrain from taking any action in this bankruptcy except as expressly provided for herein, including but not limited to (a) waiving any rights that Greenberg Finance may have regarding the Note, the Deed of Trust, or the Property, as those terms are defined in the Motion for Relief; (c) waiving any and all rights that Greenberg Finance may have to seek to dismiss this action or convert this action to a matter under Chapter 7 of the Bankruptcy Code; or (d) seeking higher adequate protection payments in the future. Nothing herein shall prohibit Debtor from seeking further relief from the Court, nor shall anything herein act as a waiver of any of Debtor's rights except as set forth herein.

12.     Debtor agrees that it will not seek to dismiss this matter without consent of Greenberg Finance until Greenberg Finance has been paid in full.  Should Debtor seek to dismiss this matter at any time, Debtor shall be barred and enjoined from filing a Petition for Bankruptcy in any United States Bankruptcy Court for a period of one hundred eighty (180) days following dismissal of this matter.

13.     Debtor's compliance with the terms of this Order, upon payment of all amounts due hereunder, shall constitute a full and final satisfaction of all obligations of the Debtor and its owners and insiders to Greenberg Finance related to the Property, the Deed of Trust, and the Note.

14.     By their signature below, counsel warrant that they have discussed this matter with their client(s) and that they agree to entry of this Order in full and as submitted.  Debtor's counsel affirms that he has discussed this matter with Mr. Choudhri, Debtor's principal, who agrees to the entry of this Order in full and as submitted.  Debtor and Mr. Choudhri affirm that this Order was not entered under duress or undue influence and that they have had the opportunity to consult with an attorney prior to agreeing to this Order.


Signed: September 30, 2024

Jeffrey P. Norman
United States Bankruptcy Judge

AGREED TO AS TO FORM AND SUBSTANCE:

**LAW OFFICES OF KEVIN MICHAEL MADDEN, P.L.L.C.**

By: _____

Kevin M. Madden
State Bar No. 24041376
16310 State Highway 249, Unit 1304
Houston, Texas 77064
Phone: 281-888-9681
Fax:    832-538-0937
        Email : kmm@kmaddenlaw.com

*ATTORNEY FOR DEBTOR*

and

        /S/ Iain L. C. Kennedy

By:_____

        Iain L. C. Kennedy
        Texas Bar No. 24068094
        ikennedy@nathansommers.com
        2800 Post Oak Blvd., 61st Floor
        Houston, Texas 77056
        Telephone: (713) 960-0303
        Facsimile: (713) 892-4800

**Counsel for Creditor Greenberg Finance, LLC**

Exhibit K

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 13, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 24-32146** |
| **SHEPHERD-HULDY DEVELOPMENT I,** | § | |
| **LLC,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 11** |

### ORDER OF DISMISSAL WITH PREJUDICE FOR 180 DAYS

Pursuant to this Court's Show Cause Order (ECF No. 124) and its violation[1] by the debtor this case is dismissed with prejudice for 180 days.

The debtor is ordered to file all required Monthly Operating Reports and pay all outstanding United States Trustee Fees not later than 30 days from the date of entry of this order.

**SO ORDERED.**

SIGNED 01/12/2025

_____

Jeffrey Norman
United States Bankruptcy Judge

---

[1] The Show Cause order requires the filing of "any required 11 USC §363 motion" by 5:00 p.m. on January 10, 2025. The amended plan (ECF No. 127) provides, in part, "the debtor has a pending offer for sale that can be consummated by February 28, 2025 …. Debtor has retained a real estate broker …. to market and sell the Property." The Court notes the lack of an application to retain a real estate broker or an 11 USC § 363 motion to sell the real property.

Exhibit L





January 14, 2025

***Via Certified Mail No. 9314 8699 0430 0130 2227 03,***
***Return Receipt Requested***
***and Via U.S. Mail***
Shepherd-Huldy Development I, LLC
1001 West Loop South, Suite 700
Houston, Texas 77027

***Via E-mail: ali@jetallcompanies.com,***
***Via Certified Mail No. 9314 8699 0430 0130 2227 10,***
***Return Receipt Requested and Via U.S. Mail***
Mr. Ali Choudhri
Shepherd-Huldy Development I, LLC
1001 West Loop South, Suite 700
Houston, Texas 77027

**NOTICE OF FORECLOSURE SALE**
**ON TUESDAY, FEBRUARY 4, 2025**

Re:     Deed of Trust (as assigned by the Assignment, and as modified by the First Extension Agreement, Second Extension Agreement, Third Extension Agreement, Fourth Extension Agreement and Fifth Extension Agreement, collectively, the "Deed of Trust"):

|  |  |
|---|---|
| Date: | May 14, 2019 |
| Borrower: | Shepherd-Huldy Development I, LLC |
| Trustee: | Salima Umatiya |
| Original Lender: | Galoostian Family Living Trust |
| Recorded as: | File No. RP-2019-207303 in the Official Public Records of Harris County, Texas |
| Secures: | Promissory Note (as modified by the First Extension Agreement, Second Extension Agreement, Third Extension Agreement, Fourth Extension Agreement and Fifth Extension Agreement, collectively, the "Note") in the original principal amount of $805,867.34 executed by Borrower and payable to the order of Lender, and all other obligations of Borrower to Lender |

Attorneys and Counselors
1400 Post Oak Boulevard, Suite 300
Houston, Texas 77056

Tel 713.960.0303
Fax 713.892.4800
www.nathansommers.com

C. Maxwell Rizzo
direct    713.892.4821
email    mrizzo@nathansommers.com

NATHAN
SOMMERS
GIBSON
DILLON

Shepherd-Huldy Development I, LLC
January 14, 2025
Page 2

Assignment ("Assignment"):
    Date:                June 8, 2021
    Assignor:          Galoostian Family Living Trust
    Assignee:          Greenberg Finance, LLC
    Recorded as:      File No. RP-2021-332073 in the
                          Official Public Records of Harris
                          County, Texas

Guaranty Agreement ("Guaranty Agreement"):
    Date:                August 2, 2021
    Guarantor:        Ali Choudhri ("Guarantor")

Reinstatement and Modification Agreement ("First Extension Agreement"):
    Date:                August 2, 2021
    Borrower:         Shepherd-Huldy Development I, LLC
    Lender:             Greenberg Finance, LLC
    Recorded as:      File No. RP-2021-454560 in
                          the  Official  Public  Records
                          of Harris County, Texas

Second Modification and Extension Agreement ("Second Extension Agreement"):
    Date:                February 2, 2022
    Borrower:         Shepherd-Huldy Development I, LLC
    Lender:             Greenberg Finance, LLC
    Recorded as:      File  No.  RP-2022-69743  in
                          the Official Public Records of
                          Harris County, Texas

Third Modification and Extension Agreement ("Third Extension Agreement"):
    Date:                January 31, 2023
    Borrower:         Shepherd-Huldy Development I, LLC
    Lender:             Greenberg Finance, LLC
    Recorded as:      File No. RP-2023-45412 in the
                          Official  Public  Records  of
                          Harris County, Texas

Fourth Modification and Extension Agreement ("Fourth Extension Agreement"):
    Date:                August 2, 2023
    Borrower:         Shepherd-Huldy Development I, LLC
    Lender:             Greenberg Finance, LLC



NATHAN
SOMMERS
GIBSON
DILLON

Shepherd-Huldy Development I, LLC
January 14, 2025
Page 3

Recorded as:                        File No. RP-2023-344303 in the
                                     Official   Public   Records   of
                                     Harris County, Texas

Fifth Modification and Extension Agreement ("Fifth Extension Agreement"):
        Date:                        February 2, 2024
        Borrower:                    Shepherd-Huldy Development I, LLC
        Lender:                      Greenberg Finance, LLC
        Recorded as:                 File No. RP-2024-43834 in the
                                     Official   Public   Records   of
                                     Harris County, Texas

        (collectively, the "Loan Documents")

Dear Borrower:

        This law firm represents Greenberg Finance, LLC (the "Lender"), as holder of the Note
and beneficiary under the Deed of Trust.

        The undersigned sent to Shepherd-Huldy Development I, LLC ("Borrower") and Ali
Choudhri ("Guarantor") a letter dated March 21, 2024, notifying Borrower and Guarantor that (i)
Lender exercised its right to accelerate the maturity of the Note, (ii) the entire principal sum of the
Note became due and payable in full on March 21, 2024, in accordance with its terms, (iii)
demanding that Borrower pay such sums plus late fees and accrued interest through March 21,
2024, and (iv) Borrower was in default under the terms and provisions of the Loan Documents. C.
Maxwell Rizzo in his capacity as Substitute Trustee posted the property securing the Note for a
non-judicial foreclosure on or about May 7, 2024.  On or about May 6, 2024, Borrower filed a
Chapter 11 petition for bankruptcy staying such foreclosure.  The Bankruptcy Court on September
30, 2024, granted in part Lender's Motion for Relief from the Automatic Stay in Borrower's
bankruptcy case and approved Lender's request to non-judicially foreclose the property owned by
Borrower securing the Note without further order of the Court should Borrower seek to dismiss
this matter without consent of Greenberg Finance at any time before Greenberg Finance was paid
in full.  On January 13, 2025, the Bankruptcy Court dismissed Borrower's bankruptcy because
Debtor violated the Court's Order to Show Cause by failing to timely file a Motion to Sell with
the Bankruptcy Court.

        Borrower failed or otherwise refused and Borrower continues to fail and refuse to satisfy
Borrower's payment obligations under the Note, the Deed of Trust, and the other Loan Documents.
**THE ENTIRE PRINCIPAL BALANCE OF THE NOTE TOGETHER WITH ALL
INTEREST ACCRUED THEREON, ALL LATE CHARGES, AND ALL ATTORNEY'S**



NATHAN
SOMMERS
GIBSON
DILLON

Shepherd-Huldy Development I, LLC
January 14, 2025
Page 4

**FEES INCURRED IN CONNECTION WITH THE COLLECTION THEREOF ARE DUE AND PAYABLE IN FULL.**

C. Maxwell Rizzo has been appointed the Substitute Trustee to conduct a foreclosure sale of the Property at the direction and on behalf of Lender on Tuesday, February 4, 2025, as set forth below. For your convenience, I have enclosed a copy of the instrument appointing him as Substitute Trustee under the Deed of Trust.

**THE ENCLOSED NOTICE OF SUBSTITUTE TRUSTEE'S SALE (THE "NOTICE") CONSTITUTES NOTICE TO BORROWER IN ACCORDANCE WITH THE DEED OF TRUST AND TEX. PROP. CODE ANN. § 51.002 (VERNON 1983), AS HERETOFORE AMENDED, THAT THE PROPERTY HAS BEEN POSTED FOR FORECLOSURE. BORROWER IS HEREBY ADVISED THAT THE PROPERTY WILL BE SOLD AS PROVIDED IN THE NOTICE. BORROWER IS HEREBY INFORMED THAT THE PUBLIC FORECLOSURE AUCTION OF THE PROPERTY DESCRIBED IN THE NOTICE OF SUBSTITUTE TRUSTEE'S SALE IS SCHEDULED FOR TUESDAY, FEBRUARY 4, 2025, BETWEEN THE HOURS OF 10:00 O'CLOCK A.M. CENTRAL TIME, OR NO LATER THAN THREE (3) HOURS THEREAFTER AND WILL BE COMPLETED BY 4:00 O'CLOCK P.M. CENTRAL TIME. THE SALE WILL BE HELD AT BAYOU CITY EVENT CENTER, 9401 KNIGHT RD., HOUSTON, TEXAS 77045, AS DESIGNATED BY THE COMMISSIONER'S COURT OF HARRIS COUNTY, TEXAS, FOR SALE OF REAL PROPERTY UNDER A POWER OF SALE CONFERRED BY A DEED OF TRUST OR OTHER CONTRACT LIEN AND AS RECORDED IN THE REAL PROPERTY RECORDS OF HARRIS COUNTY, TEXAS. IN THE EVENT THE PROPERTY IS SOLD AT FORECLOSURE SALE FOR AN AMOUNT INSUFFICIENT TO SATISFY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE NOTE AND ALL INTEREST ACCRUED THEREON AND ALL OTHER AMOUNTS DUE ON OR PURSUANT TO THE NOTE AND/OR THE DEED OF TRUST, BORROWER AND GUARANTOR WILL BE LIABLE FOR THE DEFICIENCY TO THE EXTENT SET FORTH IN THE NOTE, THE DEED OF TRUST, AND/OR THE OTHER LOAN DOCUMENTS TO THE EXTENT PERMITTED BY LAW.**

As of the date hereof, the approximate amount of the principal obligation, including interest, secured by the Deed of Trust sought to be enforced and a description of the other expenses (such as legal expenses and selling costs) that may be charged against the sale proceeds are as follows:



NATHAN
SOMMERS
GIBSON
DILLON

Shepherd-Huldy Development I, LLC
January 14, 2025
Page 5

|  | Principal Balance | Accrued Interest through January 13, 2025 | Interest Per Diem After January 13, 2025 |
|---|---|---|---|
|  | $554,713.42 | $115,814.52 | $347.36 |

Late Fee Charge:    $2,456.10

Legal and Sale Expenses:    Estimated expenses through the date of foreclosure are $50,958.00.

Appraisal Cost:    $1,800.00

Therefore, the total amount owing in connection with the Note as of January 13, 2025, (inclusive of estimated expenses above) is $725,742.04 (collectively, the "Total Amount"). Borrower may contact me at the address and telephone number set forth in this letter to obtain a complete statement of the Total Amount and to arrange payment of the Total Amount. Demand is hereby made that Borrower pay to Lender the Total Amount now owed by Borrower to Lender that is secured by the Deed of Trust.

Borrower may prevent this foreclosure by paying to Lender before the foreclosure sale the Total Amount, which is now owed and secured by the Deed of Trust, plus interest accrued thereon as aforesaid until such date of payment. Payment must be made in cash or by cashier's check received by Lender or by me before conducting the foreclosure sale. Partial payments will be applied to the Total Amount but will not prevent the foreclosure sale. If Borrower mails payment and it is received after the sale, it will have been sent too late.

The undersigned, on behalf of Lender, is attempting to collect the indebtedness evidenced by the Loan Documents and any information obtained by the undersigned from Borrower shall be used for that purpose.

In addition, except to the extent that any party's liability is expressly limited by written contract or applicable law, each person and entity obligated to repay the indebtedness evidenced by the Loan Documents may be liable for attorneys' fees and expenses and other costs and expenses incurred by Lender in connection with the enforcement of its rights and remedies under the Loan Documents and any other document or instrument executed in connection therewith.

No communication, written or oral, that Borrower and/or Guarantor has had or may have with Lender concerning any modification, renewal, extension, or restructure of the Loan Documents, including without limitation any deed-in-lieu of foreclosure, waiver of deficiency, or



NATHAN
SOMMERS
GIBSON
DILLON

Shepherd-Huldy Development I, LLC
January 14, 2025
Page 6

agreed foreclosure, in any way modifies this notice or constitutes consent to the nonpayment of the entire principal sum of the Note and interest accrued thereon or a waiver by Lender of any default, event of default or any of Lender's rights and remedies in connection with the indebtedness owing by Borrower and/or Guarantor to Lender under the Loan Documents, and neither Borrower nor Guarantor is entitled to rely upon any oral statements made or purported to be made by or on behalf of Lender in connection with any alleged agreement by Lender to refrain from exercising any of its rights in connection with the Loan Documents. Any such waiver shall not be effective unless set forth in writing, duly executed by Lender. There are currently no modification, renewal, extension, or settlement agreements between Borrower and Lender with regard to the Loan Documents.

Thank you for your attention.

Sincerely,

C. Maxwell Rizzo

:jmk
Enclosures

**BANKRUPTCY: IF ANY PARTY WHO RECEIVES THIS LETTER IS A DEBTOR IN A BANKRUPTCY PROCEEDING SUBJECT TO THE PROVISIONS OF THE UNITED STATES BANKRUPTCY CODE (TITLE II OF THE UNITED STATES CODE) (A "DEBTOR" UNDER THE "CODE"), THIS LETTER IS MERELY INTENDED TO BE WRITTEN NOTICE THAT FORMAL DEMAND HAS BEEN MADE IN COMPLIANCE WITH THE LOAN DOCUMENTS AND APPLICABLE LAW. THIS LETTER IS NOT AN ACT TO COLLECT, ASSESS OR RECOVER A CLAIM AGAINST THAT DEBTOR, NOR IS THIS LETTER INTENDED TO VIOLATE ANY PROVISIONS OF THE CODE. THIS LETTER IS ALSO NOT AN ATTEMPT TO OBTAIN POSSESSION OR CONTROL OVER ANY PROPERTY THAT IS OWNED OR CLAIMED TO BE OWNED BY THAT DEBTOR. ANY AND ALL CLAIMS THAT LENDER ASSERTS AGAINST THAT DEBTOR WILL BE PROPERLY ASSERTED IN COMPLIANCE WITH THE CODE IN THAT DEBTOR'S BANKRUPTCY PROCEEDING. IN ADDITION, ALL OF LENDER'S CLAIMS, DEMANDS AND ACCRUALS REGARDING THE LOAN DOCUMENTS, WHENEVER MADE, AND WHETHER FOR PRINCIPAL, INTEREST OR OTHERWISE, ARE INTENDED TO COMPLY IN ALL RESPECTS, BOTH INDEPENDENTLY AND COLLECTIVELY, WITH ALL APPLICABLE USURY LAWS, AND ARE ACCORDINGLY LIMITED SO THAT ALL APPLICABLE USURY LAWS ARE NOT VIOLATED.**

**ACTIVE MILITARY DUTY: ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR**

Shepherd-Huldy Development I, LLC
January 14, 2025
Page 7



**YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

cc:     ***Via E-mail: ali@jetallcompanies.com,***
        ***Via Certified Mail No. 9314 8699 0430 0130 2227 41,***
        ***Return Receipt Requested and Via U.S. Mail***
        Mr. Ali Choudhri
        1708 River Oaks Blvd.
        Houston, Texas 77019
        w/enclosures

        ***Via E-mail: kmm@kmaddenlaw.com,***
        ***Via Certified Mail No. 9314 8699 0430 0130 2231 51,***
        ***Return Receipt Requested and Via U.S. Mail***
        Kevin M. Madden, Esq.
        Law Offices of Kevin Michael Madden, P.L.L.C.
        16310 State Highway 249, Unit 1304
        Houston, Texas 77064
        w/enclosures

        ***Via E-mail: david@greenbergcompany.com***
        Mr. David Greenberg
        Greenberg Finance, LLC
        5959 Richmond, Suite 440
        Houston, Texas 77057
        w/enclosures

4
APPT
W

RP-2024-120232
04/04/2024  RP1  $37.00

THE STATE OF TEXAS      §

COUNTY OF HARRIS      §

                       §

## APPOINTMENT OF SUBSTITUTE TRUSTEE

Date:                  April 4, 2024

Deed of Trust:

| | |
|---|---|
| Date: | May 14, 2019 |
| Borrower: | Shepherd-Huldy Development I, LLC |
| Trustee: | Salima Umatiya |
| Original Lender: | Galoostian Family Living Trust |
| Recorded as: | File No. RP-2019-207303 in the Official Public Records of Harris County, Texas |
| Secures: | Promissory Note (as modified by the First Extension Agreement, Second Extension Agreement, Third Extension Agreement, Fourth Extension Agreement and Fifth Extension Agreement, collectively, the "Note") in the original principal amount of $805,867.34 executed by Borrower and payable to the order of Lender, and all other obligations of Borrower to Lender |

Assignment ("Assignment"):

| | |
|---|---|
| Date: | June 8, 2021 |
| Assignor: | Galoostian Family Living Trust |
| Assignee: | Greenberg Finance, LLC |
| Recorded as: | File No. RP-2021-332073 in the Official Public Records of Harris County, Texas |

Guaranty Agreement ("Guaranty Agreement"):

| | |
|---|---|
| Date: | August 2, 2021 |
| Guarantor: | Ali Choudhri ("Guarantor") |

Reinstatement and Modification Agreement ("First Extension Agreement"):

| | |
|---|---|
| Date: | August 2, 2021 |
| Borrower: | Shepherd-Huldy Development I, LLC |
| Lender: | Greenberg Finance, LLC |
| Recorded as: | File No. RP-2021-454560 in the Official Public Records of Harris County, Texas |

Page 1

Second Modification and Extension Agreement ("Second Extension Agreement"):

| | |
|---|---|
| Date: | February 2, 2022 |
| Borrower: | Shepherd-Huldy Development I, LLC |
| Lender: | Greenberg Finance, LLC |
| Recorded as: | File No. RP-2022-69743 in the Official Public Records of Harris County, Texas |

Third Modification and Extension Agreement ("Third Extension Agreement"):

| | |
|---|---|
| Date: | January 31, 2023 |
| Borrower: | Shepherd-Huldy Development I, LLC |
| Lender: | Greenberg Finance, LLC |
| Recorded as: | File No. RP-2023-45412 in the Official Public Records of Harris County, Texas |

Fourth Modification and Extension Agreement ("Fourth Extension Agreement"):

| | |
|---|---|
| Date: | August 2, 2023 |
| Borrower: | Shepherd-Huldy Development I, LLC |
| Lender: | Greenberg Finance, LLC |
| Recorded as: | File No. RP-2023-344303 in the Official Public Records of Harris County, Texas |

Fifth Modification and Extension Agreement ("Fifth Extension Agreement"):

| | |
|---|---|
| Date: | February 2, 2024 |
| Borrower: | Shepherd-Huldy Development I, LLC |
| Lender: | Greenberg Finance, LLC |
| Recorded as: | File No. RP-2024-43834 in the Official Public Records of Harris County, Texas |

(collectively, the "Deed of Trust")

Property:   All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight ( 48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten-acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, save and except the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

Substitute Trustee:

|  | |
|---|---|
| Name: | C. Maxwell Rizzo |
| Mailing Address: | Nathan Sommers Gibson Dillon PC<br>1400 Post Oak Blvd., Suite 300<br>Houston, Texas 77056<br>Harris County, Texas |

The Deed of Trust provides that "Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee."

Greenberg Finance, LLC hereby designates and appoints C. Maxwell Rizzo as Substitute Trustee under the Deed of Trust to act under and by virtue of the Deed of Trust in the place and stead of Salima Umatiya, Trustee, and Mark J. Tormey, the prior Substitute Trustee.

Greenberg Finance, LLC hereby requests and directs the Substitute Trustee to exercise all of the rights and powers of the original Trustee under the Deed of Trust and to foreclose the lien of the Deed of Trust against the Property in accordance with its terms and the laws of the State of Texas.

*[Signature on Following Page]*

Page 3

EXECUTED effective as of the date set forth hereinabove.

GREENBERG FINANCE, LLC,
a Texas limited liability company



By:_____

David Greenberg, Manager

THE STATE OF TEXAS       §
                         §
COUNTY OF HARRIS         §

This instrument was acknowledged before me on this the **3** day of April, 2024, by David Greenberg, Manager of Greenberg Finance, LLC, a Texas limited liability company on its behalf.

_____
Notary Public in and for the State of Texas

ANNETTE WIERSCHEM
Notary Public, State of Texas
Comm. Expires 01-07-2026
Notary ID 464907-2

Upon Recording, Return To:

C. Maxwell Rizzo, Esq.
Nathan Sommers Gibson Dillon PC
1400 Post Oak Blvd., Suite 300
Houston, Texas 77056

FILED FOR RECORD

11:21:04 AM

Thursday, April 4, 2024

*Teneshia Hudspeth*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris County Texas

Thursday, April 4, 2024

*Teneshia Hudspeth*

COUNTY CLERK
HARRIS COUNTY, TEXAS

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

Pursuant to the authority conferred upon the undersigned substitute trustee by that Deed of Trust (the "Deed of Trust") dated May 14, 2019, executed by **SHEPHERD-HULDY DEVELOPMENT I, LLC** ("Borrower"), and Galoostian Family Living Trust, recorded under Clerk's File No. RP-2019-207303 in the Official Public Records of Harris County, Texas, as assigned to **GREENBERG FINANCE, LLC** ("Lender") by that certain Assignment ("Assignment") dated June 8, 2021, recorded under Clerk's File No. RP-2021-332073 in the Official Public Records of Harris County, Texas, modified by (i) that certain Reinstatement and Modification Agreement ("First Extension Agreement") dated August 2, 2021, recorded under Clerk's File No. RP-2021-454560 in the Official Public Records of Harris County, Texas, (ii) that certain Second Modification and Extension Agreement ("Second Extension Agreement") dated February 2, 2022, recorded under Clerk's File No. RP-2022-69743 in the Official Public Records of Harris County, Texas, (iii) that certain Third Modification and Extension Agreement ("Third Extension Agreement") dated January 31, 2023, recorded under Clerk's File No. RP-2023-45412 in the Official Public Records of Harris County, Texas, (iv) that certain Fourth Modification and Extension Agreement ("Fourth Extension Agreement") dated August 2, 2023, recorded under Clerk's File No. RP-2023-344303 in the Official Public Records of Harris County, Texas, and (v) that certain Fifth Modification and Extension Agreement ("Fifth Extension Agreement") dated February 2, 2024, recorded under Clerk's File No. RP-2024-43834 in the Official Public Records of Harris County, Texas, (the Deed of Trust, Assignment, First Extension Agreement, Second Extension Agreement, Third Extension Agreement, Fourth Extension Agreement, and Fifth Extension Agreement, collectively, the "Deed of Trust"), such Deed of Trust securing payment of that certain Promissory Note (as modified by the Assignment, First Extension Agreement, Second Extension Agreement, Third Extension Agreement, Fourth Extension Agreement, and Fifth Extension Agreement) (the "Note") in the original principal amount of $805,867.34 executed by Borrower and payable to the order of Lender, and all other obligations of Borrower to Lender, I will, as Substitute Trustee under the Deed of Trust, in order to satisfy the indebtedness secured thereby and at the request of Lender, default having been made in the payment thereof, sell that certain tract of real property and improvements ("Property") located in Harris County, Texas, as more particularly described by metes and bounds on Exhibit A attached hereto and made a part hereof for all purposes, on Tuesday, February 4, 2025, that being the first Tuesday of the month, at public auction to the highest bidder for cash, subject to the right of Lender to bid credit against the debt secured by the Deed of Trust, at Bayou City Event Center, 9401 Knight Rd., Houston, Texas 77045, as designated by the Commissioners' Court of Harris County, Texas, for sale of real property under a power of sale conferred by a deed of trust or other contract lien and as recorded in the Real Property Records of Harris County, Texas, not earlier than 10:00 o'clock a.m. Central Time, and not later than 4:00 o'clock p.m. Central Time, said sale to commence at a time no earlier than 10:00 o'clock a.m. Central Time and to be completed within three (3) hours thereafter on that day.

The conveyance of the Property shall be made subject to any and all liens, restrictions, covenants, conditions, encumbrances, and easements, if any, relating to the Property, but only to the extent that the same are still in force and effect, shown of record in the Real Property Records of Harris County, Texas, and relate to the Property, and the conveyance shall be made further subject to any and all unpaid ad valorem taxes and assessments on the Property.

Page 1

EXECUTED on the 14th day of January, 2025.

                                _____

                                **C. MAXWELL RIZZO, SUBSTITUTE TRUSTEE**

## EXHIBIT A

All that certain tract of land out of the northwest portion of the original ten acre Lot Forty-one (41) of the subdivision of Great Lot Forty-eight ( 48) of the Obedience Smith Survey in the City of Houston, Harris County, Texas, being the south one-half of a 100 by 135 foot tract conveyed by two deeds from Sallie A. Morgan and wife, and recorded in Volume 533, Page 582 and Volume 615, Page 136, of the Deed Records of Harris County, Texas, and being described as follows:

BEGINNING at a point in the west line of said ten-acre Lot Forty-one (41) located 152 feet south of the northwest corner of said Lot Forty-one (41);

THENCE east 135 feet to a point for corner;

THENCE south 50 feet to a point for corner;

THENCE west 135 feet to a point for corner;

THENCE north 50 feet to the place of beginning, save and except the west portion thereof conveyed by the City of Houston for widening Shepherd Drive by deed recorded in Volume 771, Page 630, of the Deed Records of Harris County, Texas; together with all improvements thereon situated.

Exhibit M1

## UNSWORN DECLARATION OF KEVIN M. MADDEN

I hereby testify as follows and sign this statement under the penalty of perjury and pursuant to Tex. Civ. Prac. & Rem. Code §132.001.

"My name is Kevin M. Madden and my date of birth is 03/13/1967. My business address is 16310 State Highway 249, Unit 1304, Houston, Texas 77064.

1.      The attached Exhibit "A" is a true and correct copy of emails sent to counsel for Greenberg Finance, LLC.

Executed in Harris County, Texas on February 3, 2025.

_/s/ Kevin Madden_
Kevin M. Madden

# Exhibit M2

 Outlook

---

## RE: Shepherd Huldy

**From** kmm kmaddenlaw.com <kmm@kmaddenlaw.com>

**Date** Mon 2/3/2025 12:22 PM

**To** Max Rizzo <mrizzo@nathansommers.com>; Iain Kennedy <ikennedy@nathansommers.com>

---

Sure.  I will let them know.

---

**From:** Max Rizzo <mrizzo@nathansommers.com>
**Sent:** Monday, February 3, 2025 12:21 PM
**To:** kmm kmaddenlaw.com <kmm@kmaddenlaw.com>; Iain Kennedy <ikennedy@nathansommers.com>
**Subject:** RE: Shepherd Huldy

Kevin, you can use $147,272.36 for today's payment to be paid to Greenberg Finance, LLC.

Thanks,
Max



## C. Maxwell Rizzo

Nathan Sommers Gibson Dillon PC
1400 Post Oak Boulevard, Suite 300
Houston, Texas 77056

**main**   713.960.0303
**direct**   713.892.4821
mrizzo@nathansommers.com
**Vcard** | **Bio** | **nathansommers.com**

THIS E-MAIL MESSAGE AND THE ATTACHMENTS HERETO, IF ANY, ARE INTENDED ONLY FOR USE BY THE SENDER'S INTENDED RECIPIENT(S). IF YOU ARE NOT THE SENDER'S INTENDED RECIPIENT OF THIS E-MAIL MESSAGE OR YOU RECEIVED THIS E-MAIL MESSAGE OR THE ATTACHMENTS TO IT IN ERROR, OR THIS E-MAIL MESSAGE OR SAID ATTACHMENTS CONTAIN LEGALLY PRIVILEGED OR CONFIDENTIAL INFORMATION AND YOU ARE NOT THE SENDER'S INTENDED RECIPIENT OF SUCH LEGALLY PRIVILEGED OR CONFIDENTIAL INFORMATION, THE DISSEMINATION, DISTRIBUTION, PUBLICATION, DISCLOSURE OR USE OF SAID E-MAIL MESSAGE, ATTACHMENTS AND INFORMATION ARE STRICTLY PROHIBITED AND YOU ARE INSTRUCTED TO IMMEDIATELY (A) NOTIFY THE SENDER BY TELEPHONE AT 713.960.0303 OF YOUR RECEIPT OF THIS E-MAIL MESSAGE AND SAID ATTACHMENTS, AND (B) DELETE THIS E-MAIL MESSAGE AND THE ATTACHMENTS TO IT, AND DESTROY ALL COPIES AND PRINTOUTS THEREOF.

---

**From:** kmm kmaddenlaw.com <kmm@kmaddenlaw.com>
**Sent:** Monday, February 3, 2025 12:04 PM
**To:** Iain Kennedy <ikennedy@nathansommers.com>

Cc: Max Rizzo <mrizzo@nathansommers.com>
**Subject:** RE: Shepherd Huldy

Iain:

20% as of June 15, 2025 would have been $148,287.35.  Can I just have them get a check for $150,000.00 and if it needs to be adjusted one way or the other we can do it on the next payment.  I just want to get the check cut asap.  It will be made out to "Greenberg Finance, LLC" correct.



Kevin Michael Madden, Attorney At Law
Law Offices of Kevin Michael Madden, P.L.L.C.
16310 State Highway 249, Suite 1304
Houston, Texas 77064
Tel: 281-888-9681 Fax: 832-538-0937
Website: Kmaddenlaw.com

This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed.  If you have received this email in error please notify the system manager.  This message contains confidential information and is intended only for the individual named.  If you are not the named addressee you should not disseminate, distribute or copy this e-mail.  Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system.  If you are not the intended recipient you are notified that disclosing , copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.  This e-mail and files transmitted with it may be subject to the attorney client or attorney work product privileges.

**From:** kmm kmaddenlaw.com
**Sent:** Monday, February 3, 2025 11:13 AM
**To:** Iain Kennedy <ikennedy@nathansommers.com>
**Cc:** Max Rizzo <mrizzo@nathansommers.com>
**Subject:** RE: Shepherd Huldy
**Importance:** High

Iain:

Shepherd Huldy accepts these  terms, subject, of course, to Greenberg passing the current foreclosure, though, as we stated, it can continue to post so it can immediately foreclose if any payments are missed.

Can you give the exact payment due today so they can get the check?

Thanks.





Kevin Michael Madden, Attorney At Law
Law Offices of Kevin Michael Madden, P.L.L.C.
16310 State Highway 249, Suite 1304
Houston, Texas 77064
Tel: 281-888-9681 Fax: 832-538-0937
Website: Kmaddenlaw.com

This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed.  If you have received this email in error please notify the system manager.  This message contains confidential information and is intended only for the individual named.  If you are not the named addressee you should not disseminate, distribute or copy this e-mail.  Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system.  If you are not the intended recipient you are notified that disclosing , copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.  This e-mail and files transmitted with it may be subject to the attorney client or attorney work product privileges.

**From:** Iain Kennedy <ikennedy@nathansommers.com>
**Sent:** Sunday, February 2, 2025 9:06 AM
**To:** kmm kmaddenlaw.com <kmm@kmaddenlaw.com>
**Cc:** Max Rizzo <mrizzo@nathansommers.com>
**Subject:** Re: Shepherd Huldy

Kevin,

David is willing to accept payments on this schedule:

20% of outstanding balance tomorrow, February 3, 2025

20% March 1, 2025 (or first business day thereafter)

20% April 1, 2025  (or first business day thereafter)

Balance (40%) May 1, 2025 (or first business day thereafter)

All payments by certified check or wire.

If this payment schedule is agreeable, I will put together a settlement agreement, to which any deal is subject to mutual agreement on the terms of same.

Thanks,
Iain

Iain L. C. Kennedy
Nathan Sommers Gibson Dillon PC
direct 713.892.4873
ikennedy@nathansommers.com

**From:** kmm kmaddenlaw.com <kmm@kmaddenlaw.com>
**Sent:** Saturday, February 1, 2025 8:17:31 PM

**To:** Iain Kennedy <ikennedy@nathansommers.com>
**Subject:** Re: Shepherd Huldy

Iain. SH proposes to pay Greenberg 5 percent of the payoff Monday then 5 percent in 30 days, 5 percent in 60 days and the balance in 90 days. Greenberg continues to post and can foreclose if any of the payments are not made. Please advise or let me know if there is a counter or another proposal. Thank you.

Kevin Madden

Sent from my T-Mobile 5G Device
Get Outlook for Android

**From:** kmm kmaddenlaw.com
**Sent:** Tuesday, January 28, 2025 12:11:20 PM
**To:** Iain Kennedy <ikennedy@nathansommers.com>
**Subject:** Shepherd Huldy

Iain:

Can you talk this afternoon with me and the Seller about proposals to pay off David?  I may be able to get the potential Buyer on the line as well. Please advise.



Kevin Michael Madden, Attorney At Law
Law Offices of Kevin Michael Madden, P.L.L.C
Midtown Plaza
5225 Katy Freeway, Suite 520
Houston, Texas 77007
Tel: 281-888-9681 Fax: 832-538-0937
Website: Kmaddenlaw.com

 **Outlook**

---

**RE: Shepherd Huldy**

---

**From** kmm kmaddenlaw.com <kmm@kmaddenlaw.com>
**Date** Mon 2/3/2025 11:13 AM
**To** Iain Kennedy <ikennedy@nathansommers.com>
**Cc** Max Rizzo <mrizzo@nathansommers.com>

Iain:

Shepherd Huldy accepts these terms, subject, of course, to Greenberg passing the current foreclosure, though, as we stated, it can continue to post so it can immediately foreclose if any payments are missed.

Can you give the exact payment due today so they can get the check?

Thanks.



Kevin Michael Madden, Attorney At Law
Law Offices of Kevin Michael Madden, P.L.L.C.
16310 State Highway 249, Suite 1304
Houston, Texas 77064
Tel: 281-888-9681 Fax: 832-538-0937
Website: Kmaddenlaw.com



This e-mail and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing , copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. This e-mail and files transmitted with it may be subject to the attorney client or attorney work product privileges.

---

**From:** Iain Kennedy <ikennedy@nathansommers.com>
**Sent:** Sunday, February 2, 2025 9:06 AM
**To:** kmm kmaddenlaw.com <kmm@kmaddenlaw.com>
**Cc:** Max Rizzo <mrizzo@nathansommers.com>
**Subject:** Re: Shepherd Huldy

Kevin,

David is willing to accept payments on this schedule:

20% of outstanding balance tomorrow, February 3, 2025

20% March 1, 2025 (or first business day thereafter)

20% April 1, 2025  (or first business day thereafter)

Balance (40%) May 1, 2025 (or first business day thereafter)

All payments by certified check or wire.

If this payment schedule is agreeable, I will put together a settlement agreement, to which any deal is subject to mutual agreement on the terms of same.

Thanks,
Iain

Iain L. C. Kennedy
Nathan Sommers Gibson Dillon PC
direct 713.892.4873
ikennedy@nathansommers.com

**From:** kmm kmaddenlaw.com <kmm@kmaddenlaw.com>
**Sent:** Saturday, February 1, 2025 8:17:31 PM
**To:** Iain Kennedy <ikennedy@nathansommers.com>
**Subject:** Re: Shepherd Huldy

Iain. SH proposes to pay Greenberg 5 percent of the payoff Monday then 5 percent in 30 days, 5 percent in 60 days and the balance in 90 days. Greenberg continues to post and can foreclose if any of the payments are not made. Please advise or let me know if there is a counter or another proposal. Thank you.

Kevin Madden

Sent from my T-Mobile 5G Device
Get Outlook for Android

**From:** kmm kmaddenlaw.com
**Sent:** Tuesday, January 28, 2025 12:11:20 PM
**To:** Iain Kennedy <ikennedy@nathansommers.com>
**Subject:** Shepherd Huldy

Iain:

Can you talk this afternoon with me and the Seller about proposals to pay off David?  I may be able to get the potential Buyer on the line as well. Please advise.



**Kevin Michael Madden, Attorney At Law**
Law Offices of Kevin Michael Madden, P.L.L.C.
Midtown Plaza
5225 Katy Freeway, Suite 520
Houston, Texas 77007
Tel: 281-888-9681 Fax: 832-538-0937
Website: Kmaddenlaw.com

ATTORNEYS & COUNSELORS

Exhibit N

# Greenberg & Company
Commercial Real Estate Services

## CHECK RECEIPT

Check received from _Ali Choudhri_ on this _3rd_ day of
_Feb_, 2024 in the amount of $ _150000.00_ for property
located at _2499 S Shepherd_ Houston, Texas.

Greenberg & Company

By: _Charlotte Greenberg_
Charlotte Greenberg

Exhibit O

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SHEPHERD-HULDY DEVELOPMENT | § | CASE NO.: 24-32146 |
| I, LLC, | § | |
| | § | CHAPTER 11 |
| DEBTOR. | | |

### SETTLEMENT AGREEMENT

Lender Greenberg Finance, LLC ("Greenberg Finance"), and Borrower Shepherd-Huldy

Development I, LLC ("Shepherd-Huldy") have reached the following agreement (the

"Agreement") effective as of February 3, 2025:

1.      In order to stay the foreclosure on the Property (as that term is defined below),

(a) scheduled for February 4, 2025: Shepherd-Huldy shall pay to Greenberg Finance in certified

check the following amount: $147,272.36, to be received no later than February 3, 2025, at 4:00

p.m.; (b) to be scheduled for March 4, 2025, Shepherd-Huldy shall pay to Greenberg Finance in

certified check the following amount: $147,272.36, to be received no later than March 3, 2025, at

4:00 p.m.; (c) to be scheduled for April 1, 2025, Shepherd-Huldy shall pay to Greenberg Finance

in certified check the following amount: $147,272.36, to be received no later than March 31, 2025,

at 4:00 p.m; and (d) to be scheduled for May 6, 2025, Shepherd-Huldy shall pay to Greenberg

Finance in certified check the following amount: balance remaining under the Note (as that term

is defined below) and Deed of Trust (as that term is defined below), to be received no later than

May 5, 2025, at 4:00 p.m. Shepherd-Huldy and Ali Choudhri ("Mr. Choudhri") acknowledge and

agree that, as of the date hereof, the amounts due under the Note and Deed of Trust is no less than

$736,361.79.

1

2.     Such amounts shall be paid in full and without set-off or counter-claim and free from any deduction or withholding whatsoever all amounts due under the real estate lien and security interest under a deed of trust granted by the Shepherd-Huldy in certain real property (the "Property"), being more particularly described in the Deed of Trust dated May 14, 2019 (as modified, amended, and/or reinstated, from time to time, the "Deed of Trust") and the Promissory Note (as amended, reinstated, and/or modified, from time to time, the "Note"), in the original principal amount of $805,867.34, with a maturity date of August 2, 2024.  Such amounts will be credited and applied as applicable to the amounts due to Greenberg Finance (including principal and interest accruing and expenses of Greenberg Finance) in such order as determined by Greenberg Finance.  Shepherd-Huldy agrees that such payoff will include all interest, penalties, late fees, and charges, including but not limited to attorney's fees incurred by Greenberg Finance, incurred through the date of the payoff as further provided in the Note and Deed of Trust. Shepherd-Huldy agrees that all past due principal and interest shall continue to bear interest until paid at the rate of eighteen percent (18.0%) per annum or the maximum rate of nonusurious interest allowed by law, or at the maximum rate set forth in the applicable contract or loan documents, as of the date hereof.

3.     Greenberg Finance will not oppose reopening the above captioned bankruptcy to effectuate reopening closing any sale that results in payment in full of all amounts due to Greenberg Finance.  Shepherd-Huldy agrees that it will not oppose an emergency motion for relief from the stay to effectuate this Agreement should a bankruptcy matter be reopened.

4.     Greenberg Finance may continue to post the property for foreclosure each month during the pendency of this Agreement, provided however that if payment due under this

Agreement is received timely, Greenberg Finance will not proceed with the foreclosure as set forth above.

5. Should Greenberg Finance fail to receive from Shepherd-Huldy the amounts owed under this Agreement, then Shepherd-Huldy shall be in immediate default of this Agreement (the "Event of Default"). No notice by Greenberg Finance to Shepherd-Huldy is required. To the extent any notice is delivered by Greenberg Finance to Shepherd-Huldy, such notice shall be deemed to be a courtesy only and shall not be required under this Agreement or any Loan Documents. Greenberg Finance is hereby authorized to foreclose on the Property at any time on or after the date of this Agreement and to exercise all other rights and remedies available under the Note, Deed of Trust, and other loan documents (collectively, the "Loan Documents") or applicable law. For the avoidance of doubt and to ensure clarity, Borrower is in default of the Note and the Note remains accelerated and all obligations under the Note and other Loan Documents remain immediately due and payable, it being understood that Greenberg Finance's agreement hereunder is solely to stay the scheduled (or to be scheduled) foreclosures upon timely receipt of payments as set forth above (not to extend or otherwise modify the payment terms of the Note).

6. Nothing in this Agreement is intended to waive any obligation Shepherd-Huldy has under the Agreed Order on Greenberg Finance's Motion for Relief from the Automatic Stay [Dkt. No. 83], other than as explicitly modified herein. Such provisions include, without limitation, that Shepherd-Huldy continues to agree to and consent that (a) Shepherd-Huldy and each of its insiders and/or affiliates (as such terms are defined in 11 U.S.C. § 101)—including without limitation Mr. Choudhri shall not interfere or attempt to interfere in any way with Greenberg Finance's foreclosure on the Property or with any other exercise of Greenberg Finance's rights and remedies under the Loan Documents or applicable law; (b) Shepherd-Huldy and each of its insiders and/or

affiliates (as such terms are defined in 11 U.S.C. § 101)—including without limitation Mr. Choudhri—are hereby prohibited from seeking an order enjoining the foreclosure from any state or federal court other than this Court at any time during the pendency of this action; and (c) Shepherd-Huldy is hereby prohibited from transferring the Property (or any portion thereof) absent further order of the Bankruptcy Court or express written consent from Greenberg Finance

7.      The United States Bankruptcy Court for the Southern District of Texas shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Agreement.

8.      Shepherd-Huldy's compliance with the terms of this Agreement, upon payment of all amounts due hereunder, shall constitute a full and final satisfaction of all obligations of the Shepherd-Huldy and its owners and insiders to Greenberg Finance related to the Property, the Deed of Trust, and the Note.

9.      By their signature below, Shepherd-Huldy and Mr. Choudhri affirm that this Agreement was not entered under duress or undue influence and that they have had the opportunity to consult with an attorney prior to agreeing to this Agreement.

*[Signature Page Follows]*

Agreed to this February 3, 2025

**GREENBERG FINANCE, LLC**:


By: _____

Name: David Greenberg

Title: Manager


**SHEPHERD-HULDY DEVELOPMENT I, LLC**:


By: _____

Name: _____

Title: _____


_____

Ali Choudhri